1

1           IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3   MALIBU MEDIA, LLC,              )  Docket No. 18 C 6447
                                    )
4                 Plaintiff,        )  Chicago, Illinois
                                    )  May 16, 2019
5            v.                     )  9:09 a.m.
                                    )
6   WILLIAM MULLINS,                )
                                    )
7                 Defendant.        )

8
              TRANSCRIPT OF PROCEEDINGS - Motion Hearing
9           BEFORE THE HONORABLE THOMAS M. DURKIN

10
    APPEARANCES:
11

12  For the Plaintiff:    MS. MARY K. SCHULZ
    (via telephone)       Media Litigation Firm PC
13                         1144 E. State Street
                           Suite A260
14                         Geneva, IL 60134

15
    For the Defendant:    MS. SUSAN MALTER
16                         Susan Malter Law
                           203 Brampton Lane
17                         Lake Forest, IL 60045

18
    Court Reporter:       LAURA R. RENKE, CSR, RDR, CRR
19                         Official Court Reporter
                           219 S. Dearborn Street, Room 1432
20                         Chicago, IL 60604
                           312.435.6053
21                         laura_renke@ilnd.uscourts.gov

22

23

24

25

1    (In open court.)

2         THE CLERK:  18 C 6447, Malibu Media v. Doe.  And I

3    need to get Ms. Schulz on the line.

4    (Clerk places telephone call.)

5         MS. SCHULZ:  This is Mary Schulz.

6         THE CLERK:  Hi, Ms. Schulz.  It's Sandy with Judge

7    Durkin calling on 18 C 6447, Malibu Media v. Doe.

8         THE COURT:  All right.  Good morning.  Let's have --

9         MS. SCHULZ:  Mary --

10        THE COURT:  -- everyone identify themselves for the

11   record, starting first with the person on the phone.

12        MS. SCHULZ:  Mary Schulz on behalf of Malibu Media.

13        MS. MALTER:  Good morning, your Honor.  Susan Malter

14   on behalf of William Mullins, the defendant.

15        THE COURT:  All right.  Good morning.

16        There's a fully briefed motion to dismiss.  I've read

17   the complaint over again and then read the memorandums in

18   support of the motion to dismiss, the response, and the reply.

19        I'm -- I'm puzzled.  In many of these cases -- and

20   I've had many of these cases -- when a defendant makes a very

21   forceful claim they're not the person that downloaded the -- in

22   this case pornography, the plaintiffs -- Malibu Media in this

23   case and in many other cases -- where it's both -- whatever the

24   medium is, whatever the movies are, there is often a careful

25   review by plaintiffs of whether or not the defendant is -- they

3

1  have their facts straight because my experience is that the

2  plaintiff -- and many cases with Malibu Media, they will drop

3  the case if there's a credible claim someone else downloaded

4  the movies.  Was that done in this case?

5              MS. MALTER:  No.

6              MS. SCHULZ:  Mary Schulz on behalf of Malibu Media.

7              Yes, your Honor, there was a full investigation.  And

8  that is our procedure.

9              THE COURT:  All right.

10             MS. MALTER:  Your Honor --

11             THE COURT:  Go ahead.

12             MS. MALTER:  -- if I may.  The procedure only gets so

13 far as to the -- at least what's been presented by the

14 plaintiff is only that an IP address is associated with the

15 downloads, but not specifically the defendant.

16             THE COURT:  Sure.  It's -- this is an easy question.

17 It -- you're not challenging the -- or are you? -- that the

18 IP address that they've identified is a correct one.

19             MS. MALTER:  It's possible.  We haven't gotten any

20 early discovery.  We submitted ours.  So we haven't seen any of

21 their data, so we have no idea whether -- you know, whether

22 their technology -- we don't know.

23             THE COURT:  All right.  Your client, according to

24 the -- the briefing, says "Not me."

25             MS. MALTER:  Absolutely.

4

1      THE COURT:  Does he have -- does he live with anyone?

2      MS. MALTER:  He lives with his wife.

3      THE COURT:  All right.  And he has, I assume, wireless

4  Internet?

5      MS. MALTER:  He has wireless.  He lives in a multiunit

6  building.  And he used to -- and I -- and next to the building

7  also, it's a set of -- he said a bunch of units that are all

8  close together.  It could be anyone who's using Internet.

9      He's since -- he received notice from Comcast.  They

10  used to have multiple Internet connections and Wi-Fi things.

11  He said they disconnected everything.  They upped their privacy

12  protection so nothing would happen.

13      But he's happy to make his computer available.  We

14  just haven't gotten to discovery yet.  We've shared --

15      THE COURT:  All right.  Well, does he have

16  password-protected Wi-Fi?

17      MS. MALTER:  Yes.

18      THE COURT:  Did he at the time of the allegations in

19  this complaint?

20      MS. MALTER:  I think so.

21      THE COURT:  All right.

22      MS. MALTER:  Oh, no.  I -- I'm not positive about --

23      THE COURT:  All right.

24      MS. MALTER:  I don't remember anymore.

25      THE COURT:  And the allegation is there were, what,

5

1    nine movies, or at least nine pieces of movies downloaded?

2            MS. MALTER:  Right.  He denies having downloaded any

3    such movies or any of those movies.

4            THE COURT:  All right.  Well, that's really a question

5    that is reserved for summary judgment, not on a motion to

6    dismiss.

7            I read your brief.  I know the Ninth Circuit has said

8    you need more than just an allegation that a person who is

9    associated with an IP address downloaded the movies.  We don't

10   know if he downloaded the movies.  We know someone did using

11   that IP address.  That's the plausible allegation of the

12   complaint.

13           The Ninth Circuit is not the Seventh Circuit.  Judge

14   Ellis dismissed a similar case.  You quoted -- you noted that.

15   And even she noted in her opinion there's a split of authority.

16   There's a number of case -- number of district courts that have

17   found that the allegations in a complaint such as this which

18   plausibly allege that an IP address downloaded either the total

19   or pieces of a copyrighted movie, that's a plausible allegation

20   to survive a motion to dismiss.

21           MS. MALTER:  He hasn't yet shown that for sure.  We --

22   there's nothing that -- well, we haven't seen any evidence.

23   But we're not sure that anything's been seen that has been

24   downloaded.

25           THE COURT:  Well, I understand that.  But this is --

6

1    and, quite frankly, if the evidence -- evidence, not

2    allegations -- evidence supports that, summary judgment's going

3    to get granted for you.  If the -- if there's a factual dispute

4    at summary judgment, then we'll go to trial.

5            MS. MALTER:  Okay.

6            THE COURT:  But --

7            MS. MALTER:  You'd like to see more evidence.  You'd

8    like to see --

9            THE COURT:  Well, I --

10           MS. MALTER:  -- you'd like to see details.

11           THE COURT:  -- I don't look at evidence at the

12   pleadings stage.  I look at the plausibility of the complaint.

13   This complaint -- a complaint such as this has been upheld

14   numerous times by courts.  Some courts have said no.  Some

15   courts have dismissed complaints on summary judgment when a

16   client such as yours comes in, plausibly alleges that he had --

17   that he's not the one who downloaded it and there's no evidence

18   to contradict it.

19           If it turns out that he says, "I didn't download it,"

20   and they have nine movies downloaded to that IP address and

21   it's password-protected and a variety of other things, that

22   will be a jury to decide.  Do they believe your client, or do

23   they believe the allegations of the complaint?

24           But I can't dismiss this complaint at this stage

25   because they've plausibly alleged that the person associated --

1   or that -- associated with that IP address downloaded the

2   movie.  I think the best cite for that is the *Patrick*

3   *Collins v. Osburn* case at -- case out of Maryland:  "[I]t takes

4   no great imagination to see how evidence that a file was

5   downloaded by a certain IP address could support a plausible

6   claim that the file was downloaded by the subscriber at that

7   IP address."  I --

8           MS. MALTER:  Your Honor, I --

9           THE COURT:  -- I agree with that.

10          MS. MALTER:  -- I understand what you're saying.

11          Our concern has been in general -- this is my 12th

12  case like this, mostly for indigent people.

13          THE COURT:  Mm-hmm.

14          MS. MALTER:  I mean, I came out of retirement and

15  reactivated to be able to handle cases like this.

16          THE COURT:  Sure.

17          THE CLERK:  Excuse me.

18          MS. MALTER:  Oh.

19          THE CLERK:  I just got a message from -- she said

20  she's -- her cell phone dropped.  So I need to call her back.

21          MS. MALTER:  Oh.

22          THE COURT:  Okay.

23          THE CLERK:  I don't know if this is her trying to call

24  or this is Mr. --

25          THE COURT:  Let's go off the record for a minute.

8

1      (Off-the-record discussion.)

2           COURT REPORTER:  Do you want this off the record?

3           THE COURT:  Let's go back on the record.

4           THE CLERK:  Okay.  Can you hear us okay?

5           MS. SCHULZ:  Yes.  Thank you.  I'm sorry.

6           THE CLERK:  All right.  Thank you.

7           THE COURT:  I don't know when you dropped off,

8    Ms. Schulz, but the gist of what I'm saying is that I believe a

9    plausible complaint has been -- plausible claim has been filed.

10   I'm surprised, if there's an adamant denial of downloading --

11   you can't accidently down this -- do this.

12           MS. MALTER:  Right.

13           THE COURT:  This is not something someone bumps into

14   and accidently does a mouse click, and all of a sudden they're

15   in the middle of a lawsuit.

16           This -- my understanding of the technology, the

17   BitTorrent technology and the efforts to join the swarm and

18   then download the files back into a movie are intentional acts

19   that can't be done without some thought and conduct.

20           There's a split of authority.  There's no real split

21   of authority.  There's a Ninth Circuit case that would -- if

22   you were in California, you might get this complaint dismissed,

23   or in the Ninth Circuit.  A number of other district courts

24   have found both ways.

25           I believe there's a plausible complaint here.  But

1    I'm -- I'm really surprised that given -- that this has reached

2    the stage it has.  Would your client be willing to -- I suppose

3    it would end up being a deposition.  But is there any other

4    evidence you can provide to the plaintiff that would show your

5    client was not the person involved?

6              We've had situations where grandmothers have been

7    named -- and clearly they're not downloading pornography -- and

8    it turns out there's a teenage grandson or nephew that's in the

9    house, and they've done it.

10             MS. MALTER:  My client sent me records of being at

11   work at the time.  I didn't think it was appropriate to include

12   that in -- in the -- in this motion.

13             THE COURT:  You're right.

14             MS. MALTER:  And he has his computer.  He's happy to

15   turn his computer over.  But we -- we would like to be able to

16   see the initial disclosures from the plaintiff as well to see.

17             I mean, part of the problem with this, absolutely the

18   federal rules suggest exactly what you're saying in terms of

19   the order of steps.  But all of the cases that I've handled and

20   seen and then -- and read about and talked with other

21   attorneys, there isn't evidence.

22             And the whole point is people are so afraid -- for the

23   most part, an attorney charges about $10,000 for litigation in

24   IP.  So I -- this is only my very first case with Malibu Media.

25   I've dealt with the other attorneys in the Chicago area.

1    But it's all been much, much cheaper to settle, and so

2    a settlement is arranged regardless of -- even when people

3    are -- even when people know themselves not to have done

4    anything, to pay $10,000 and spend money on legal time makes it

5    impossible.

6    So it would be nice for somehow -- I don't know how

7    the rules committee works.  But cases like this really hurt

8    someone who hasn't done anything because you can just -- in my

9    other cases, I know that the people didn't do this either.

10   Some of them were old women.  Some were people who didn't use

11   the Internet.  One guy lived in -- you know, none of my cases

12   so far.

13   I know that some people do this, and it's a terrible

14   thing.  But somehow the way these cases work really put -- put

15   too much expense on defendants to have to -- I mean, I don't

16   charge very much because I'm -- I think this is so horrible

17   that this is going on, and so I'm trying to help.  But -- and

18   I'm happy to come back and do the next step.

19   But somehow maybe for this, if there was earlier

20   initial disclosures in cases like this where, I mean, the

21   possibility -- it's theoretically possible, but -- I'm sorry.

22   I have it in my brief.  It just seems -- it's disappointing

23   because of the expenses involved, that people normally

24   wouldn't -- so you really don't know what's happening in most

25   of the cases that are being dismissed when people are paying

1   $500 or $400 to not have to come into a case, not necessarily

2   because they've done something wrong.

3          THE COURT:  I think -- and, Ms. Schulz, you can either

4   confirm or deny this.  But I think Malibu Media has dropped

5   cases when there's plausible information presented to them

6   outside the court context --

7          MS. MALTER:  Oh, we haven't --

8          THE COURT:  -- that it's in --

9          MS. MALTER:  -- been asked for any.

10          THE COURT:  Well, let me finish.

11          MS. MALTER:  Oh.

12          THE COURT:  (Continuing) -- plausible information

13   presented to them outside the court context that the named

14   defendant either couldn't have done it, is unlikely to have

15   done it either because of age or access by someone who is more

16   likely a copier or infringer, other factors.

17          Ms. Schulz, has Malibu Media done that?

18          MS. SCHULZ:  Absolutely, your Honor.

19          And your example of the -- the owner of the IP address

20   being an elderly woman with a teenage son in the house is -- is

21   the example I give to why we conduct an investigation.

22          And Malibu Media makes a great deal of effort in that

23   case to never amend the complaint to name just the subscriber

24   because they're a subscriber, but rather because we believe

25   that the person that we name is the infringer.

1    And I have had many cases where the subscriber is --

2    is obviously or -- or convinces us that they are not the

3    infringer and we don't amend the complaint to name the

4    subscriber.  We, however, do name the person that we believe is

5    the subscriber.

6              THE COURT:  Did you --

7              MS. SCHULZ:  And --

8              THE COURT:  Did you have such a discussion in this

9    case before you amended the complaint?

10              MS. SCHULZ:  I -- I did not conduct the investigation.

11   And I do not know what information was available to us from the

12   subscriber prior to the complaint being amended.

13              But I can assure the Court that we didn't just name

14   the subscriber because we could, but rather because we had a

15   good-faith belief that the subscriber was, in fact, the

16   infringer.  And we follow Rule 11, obviously.

17              THE COURT:  Well, Ms. Malter, you mentioned there's

18   a -- in your briefs quite a bit that this is a potential for

19   abuse, that -- you say there's knowingly false statements in

20   the complaint and that there's no real remedy.

21              I'll tell you the remedy.  If there are knowingly

22   false statements in the complaint that are determined if we go

23   further on this litigation, I'll award fees.  I'm entitled to

24   do that under Rule 11.  Ms. Schulz just mentioned Rule 11, and

25   she understands what the obligations are of an attorney who

1    brings a case against someone and forces them to defend a case

2    if there are knowingly false representations in a complaint.

3              And so you're not remediless, although your client, of

4    course, is going to have to defend it.  He's in federal court.

5    He's fortunate to have an attorney who's -- wants to defend it

6    for him because many people don't have attorneys in these

7    cases.

8              And what I'd suggest you do is do early discovery.

9    Exchange -- make disclosures.  Turn over your client's computer

10   if that's something they think they can use to determine

11   whether or not he's the one that was involved in this, although

12   I don't think -- well, I don't know enough about their review

13   of it and what your client has on the computer that would

14   elucidate the issues.

15             But, you know, have your client be deposed.  You take

16   a dep or two of the people who are, you know, saying that it's

17   him.  And if there's a fact issue, I'll give you an early trial

18   date.

19             There's enough here to plausibly allege, because it's

20   his IP address, that he's the one who downloaded it.  If -- and

21   I'm telling you if there's -- if it's not password-protected or

22   there's a -- he can present evidence that other people have

23   hacked into his computer of some kind -- in some way, I'm

24   confident Ms. Schulz is going to look at that and, you know,

25   credibly evaluate it.

1      If you can't convince them, then you've got to

2   convince a jury.

3      MS. MALTER:  Okay.

4      THE COURT:  Or me on summary judgment.

5      But this is not the -- I'm denying the motion to

6   dismiss for all those reasons.  There's a plausible complaint

7   here, and the only controlling authority is Ninth Circuit

8   authority, not Seventh Circuit authority.  So there's a split.

9   I happen to believe this meets the test under *Iqbal* and *Twombly*

10  to support a plausible claim.

11     MS. MALTER:  Your Honor, could I -- can I ask?  I'm

12  not sure I understood Ms. Schulz's explanation of what the

13  investigation was.  Will that be part of discovery then too?

14     THE COURT:  Yeah.

15     Ms. Schulz, I assume you're going to let counsel

16  know -- and this is something you ought to do just to see if

17  you can resolve the case.  Let counsel know what it is that

18  convinced you and your client to name him when you amended the

19  complaint because I know you start --

20     MS. SCHULZ:  Yes.

21     THE COURT:  -- as a John Doe.  You end up amending a

22  complaint and name someone when you become certain that it's

23  the person who downloaded it or at least believe it's the

24  person who downloaded it and usually have conversations with

25  the IP address owner.  But if Ms. Malter's not familiar with

15

1  what you did there, I think you need to tell her.

2          MS. SCHULZ:  Understand, your Honor.  I will find out

3  what information I can from my client with regard to their --

4  their investigation and their belief.  And, obviously -- I hate

5  discovery, so I'm happy to do things informally if it resolves

6  the case.

7          MS. MALTER:  I'll --

8          THE COURT:  Well --

9          MS. MALTER:  Oh.

10          THE COURT:  Well, here's what -- oh, go ahead.  What

11  were you going to say?

12          MS. MALTER:  Your Honor, there was some confusion

13  about the dates, I think, maybe on my part with the MIDPP.

14  We -- is it -- when does it -- this -- the count begin?

15          THE COURT:  It begins when an answer is due.  And

16  because I'm denying the motion to dismiss today, an answer is

17  due.  I'm going to give you 45 days, an extended period, to

18  file the answer.

19          MS. MALTER:  Okay.

20          THE COURT:  And what I'm going to have is a status in

21  30 days.  And taking Ms. Schulz at her representation she hates

22  discovery, I'm going to let you both engage in informal

23  discovery.  Provide anything to each other that might help

24  resolve this.  Have a discussion about what they -- why they

25  think your client did what they allege he did.

1          And then when you come back in 30 days, if it turns

2     out you can't resolve it, the -- well, what I'm going to do is

3     suspend your obligation under MIDP and to file an answer until

4     that 30-day status.

5          MS. MALTER:  Okay.

6          THE COURT:  On that date, if you can't resolve it,

7     I'll give you a period of time to answer.  That will kick in

8     the mandatory disclosures.  And you can start with written

9     discovery and potentially oral discovery at that point.

10         MS. MALTER:  Okay.

11         THE COURT:  So we'll give you a date in 30 days.  And,

12    Ms. Schulz, let's make that a date you can be here.  So --

13         MS. SCHULZ:  Your Honor -- okay.

14         THE COURT:  Well, we'll give you a date first.  You

15    tell me if you can be here.

16         THE CLERK:  June 19th.

17         MS. SCHULZ:  Okay.

18         THE CLERK:  June 19th.

19         MS. SCHULZ:  Yes, your Honor.

20         THE COURT:  Okay.

21         MS. SCHULZ:  I will be there.

22         THE COURT:  All right.

23         And, Ms. Malter, does that work for you?

24         MS. MALTER:  Yes.

25         THE COURT:  Okay.  Let's do that.  If you resolve the

1  case, no need for anybody to appear.  Or if it's just a short

2  status to say -- to give me a short report, if you both want to

3  call in -- I know you come in from the north suburbs.  So does

4  Ms. Schulz -- happy to do it by phone.  I do that with all

5  parties.  But I -- if we're going to have a substantive

6  discussion about things, then it's best people be here.

7            MS. MALTER:  Okay.

8            THE COURT:  Okay.

9            MS. SCHULZ:  Thank you, your Honor.

10            THE COURT:  Anything else at your end, Ms. Schulz?

11            MS. SCHULZ:  No.  Thank you.

12            THE COURT:  Ms. Malter, anything else?

13            MS. MALTER:  No.  Thank you, your Honor.

14            THE COURT:  All right.  Thank you all.  Okay.

15        (Concluded at 9:29 a.m.)

16                    C E R T I F I C A T E

17     I certify that the foregoing is a correct transcript of the

18  record of proceedings in the above-entitled matter.

19

20  */s/ LAURA R. RENKE*                    *June 12, 2019*
    LAURA R. RENKE, CSR, RDR, CRR

21  Official Court Reporter

22

23

24

25