**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MALIBU MEDIA, LLC,

           PLAINTIFF,

    v.

WILLIAM MULLINS,

           DEFENDANT.

No. 18-cv-06447

Judge Thomas M. Durkin

**MEMORANDUM ORDER AND OPINION**

Malibu Media, LLC ("Malibu") brought this action against William Mullins ("Mullins") for copyright infringement. R. 12. Mullins moved to dismiss Malibu's claim, and also filed a counterclaim seeking declaratory relief. Malibu voluntarily dismissed its claim with prejudice, and Mullins' counterclaim was later dismissed as moot. Now before the Court is Mullins' motion for attorneys' fees and costs. R. 88; R. 91. For the following reasons, Mullins' motion is granted in part and denied in part.

**Background**

This case began as a copyright infringement matter but has regrettably devolved into a bitter dispute over attorneys' fees. Malibu is a movie company that produces adult films. On September 21, 2018, Malibu filed a complaint under the Copyright Act, 17 U.S.C. § 101 *et seq.*, against John Doe alleging that an unknown subscriber assigned to IP address 73.176.168.82 illegally downloaded, copied, and distributed eleven Malibu movies. *See* R. 1. Malibu later learned through a third-party subpoena that the unknown subscriber was William Mullins, and subsequently

1

amended its complaint to name him, rather than "John Doe," as the defendant. *See* R. 12.

Mullins moved to dismiss the complaint. R. 15. He conceded that he was the subscriber assigned to the IP address at issue, but denied infringing Malibu's works and claimed that others had access to his Wi-Fi. *See* R. 15 at 7-8. At a status hearing, the Court asked counsel for Malibu whether the company conducts pre-filing investigations before naming individual defendants in copyright infringement suits. R. 34 at 11. Counsel represented that Malibu does conduct such investigations, but that she did not know "what information was available to us from the subscriber" before filing the amended complaint. *Id.* at 12. She nevertheless assured the Court "that we didn't just name [Mullins] because we could, but rather because we had a good-faith belief that [he] was, in fact, the infringer." *Id.* The Court ultimately denied Mullins's motion to dismiss, concluding that Malibu had stated a plausible claim for relief, even if it was not clear from the pleadings who used his IP address to download and distribute the movies. *See id.* at 13. The Court instructed both parties to engage in initial discovery, and encouraged counsel for Malibu to share the findings from her client's pre-filing investigation. *See id.* at 13-15.

Mullins subsequently answered Malibu's complaint and filed a counterclaim seeking declaratory relief. *See* R. 33. The counterclaim alleged that Mullins had not infringed any of Malibu's works, and requested a declaration stating the same. *Id.* At a status hearing a few months later, counsel for Mullins reported that certain information related to Malibu's pre-filing investigation had not yet been turned over.

*See* R. 47 at 3. She pointed to specific digital files which, according to her, would show whether Malibu had a good-faith basis for filing its complaint against Mullins. *Id.*[1] In response, counsel for Malibu pointed to an email she previously sent Mullins' counsel in which she explained the findings of Malibu's investigation. *Id.* at 6. According to that email, Malibu's investigator had discovered—in addition to the eleven Malibu movies discussed in the amended complaint—another 70 downloads from Mullins' IP address that were "age-appropriate to Mullins and to [his] household." *Id.* at 6-7. This information, however, did not satisfy Mullins's counsel because she wanted specific digital files related to the pre-filing investigation. The Court gave the parties 90 days to continue discovery. *See id.* at 12-13.

A few weeks later, Malibu moved to dismiss its own claim as well as Mullins' counterclaim with each party bearing its own fees and costs. *See* R. 43; R. 44. Malibu moved to dismiss its claim because the time and expense needed "to bear out [Mullins'] infringer status" outweighed any potential recovery. *See* R. 44 at 2. The Court dismissed that claim with prejudice, but declined to dismiss the counterclaim because Mullins still had a right to clear his name of any wrongdoing. *See* R. 53 at 4. To help bring the matter to a close, the Court ordered Malibu to turn over the digital files from the pre-filing investigation, and suggested that Malibu draft a statement declaring that Mullins did not infringe Malibu's works. *Id.* at 6-7.

---

[1] Counsel for Mullins later explained that the files in question are colloquially known as PCAP and reference files. *See* R. 62 at 3. According to counsel, PCAP files contain the raw data showing the transmission of information from an IP address to a monitoring system. *Id.*

Malibu filed that statement. It declared that after learning of exculpatory information in June 2019, Malibu "believes that the infringement was done by someone other than Mullins." R. 56. Malibu reached this conclusion after learning that Mullins had not updated his internet password for over ten years, shared that password with neighbors and guests, and owned a Wi-Fi system that reached nearby condominiums. *See id.* The statement was not to the satisfaction of Mullins' counsel, however. Convinced that Malibu filed the amended complaint in bad faith, counsel continued to push for discovery and asked that the Court again order Malibu to turn over the digital files that supposedly formed the basis of the amended complaint. *See* R. 54; R. 60. The Court issued that order at a status hearing a few weeks later. R. 62 at 4-5.

In a turn of events, Malibu's attorney then moved to withdraw her representation as counsel. R. 64. She explained that she could no longer appear on Malibu's behalf after having "demanded from my client and given them a deadline for the production of the documents that Mr. Mullins' attorneys have sought. I have not received either those documents nor any reason that they cannot or should not be produced." R. 69 at 5. The Court granted counsel's motion, but not without warning Malibu that it will need to turn over the requested files or explain why it has not. *See* R. 69 at 7-8; R. 75 at 6. Nearly a year has passed since that warning and Malibu has still refused to share the files. *See* 92-1 at 9.

4

After the Court dismissed Mullins' counterclaim as moot, his attorneys filed this motion for fees and costs.[2]

## Analysis

### I. Whether to Award Fees

Under the Copyright Act, "the court may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. "Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). When a court dismisses a copyright case with prejudice, the defendant in such a suit is the prevailing party for purposes of fee-shifting under § 505. *Riviera Distribs., Inc. v. Jones*, 517 F.3d 926, 927 (7th Cir. 2008). There is a "strong presumption" that a defendant who prevails against a copyright claim is entitled to fees. *Assessment Tech. of Wis., LLC v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004). "This is no less true when a case is dismissed because the plaintiff

---

[2] Mullins' motion states that the Court should also consider sanctions under 28 U.S.C § 1927 and Federal Rule of Civil Procedure 11. Section 1927 provides that an attorney who "unreasonably and vexatiously" multiplies court proceedings may be required to satisfy the costs, expenses, and attorneys' fees reasonably incurred as a result of their conduct. There is little reason to think that § 1927 applies here, because attorneys for Malibu have not "unreasonably and vexatiously" multiplied court proceedings. Furthermore, a sanction imposed under Rule 11 is meant "to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). For reasons stated in this opinion, awarding attorneys' fees pursuant to the Copyright Act achieves that goal by deterring similar situated plaintiffs from filing infringement claims against individual defendants absent a good-faith belief that the defendant committed the infringement.

'threw in the towel'—that is, where the dismissal is on the plaintiff's own motion." *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. 2008).

Among the nonexclusive factors a court should consider when deciding whether to award fees are "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n.19 (the *Fogerty* factors). While these factors help guide a court's analysis, the two most important considerations are "the strength of the prevailing party's case and the amount of damages or other relief the party obtained." *Assessment Techs. of WI.,* 361 F.3d at 436. Further, "substantial weight" should be given to the reasonableness of the losing party's position, but courts still "must take into account a range of considerations" in light of the Copyright Act's essential goals. *Kirtsaeng v. John Wiley & Sons,* Inc., 136 S. Ct. 1979, 1988 (2016). "That means in any given case a court may award fees even though the losing party offered reasonable arguments (or, conversely, deny fees even though the losing party made unreasonable ones)." *Id*. That also means that a court may order fee-shifting because of a "party's litigation misconduct." *Id*. at 1988-89.

Malibu does not dispute that Mullins prevailed on the infringement claim. But Malibu does argue that the *Fogerty* factors weigh against awarding fees. For the most part, the Court disagrees.

***Frivolous and Objective Unreasonableness***. Malibu contends that its claim was neither frivolous nor objectively unreasonable. According to Malibu, the amended

complaint advanced the plausible theory that Mullins, the only adult male living in his home, downloaded and distributed Malibu's movies using the IP address assigned to him. Malibu arrived at this theory after supposedly conducting a pre-filing investigation into Mullins and his IP address.

At first blush, Malibu's claim does not seem frivolous. Malibu owned copyrighted movies, learned that someone using the IP address 73.176.168.82 downloaded those movies, retained an investigator to discover other activity attributable to the IP address, and served a third-party subpoena to uncover Mullin's identity.

But due to decisions Malibu and its counsel made subsequently, the analysis does not end there. First, counsel admitted at a hearing that she did not know what information from Mullins was available to Malibu prior to filing the amended complaint. *See* R. 34 at 12.[3] This is especially troubling because counsel assured the Court that Malibu only names defendants in copyright infringement cases when "we ha[ve] a good-faith belief that the subscriber [is], in fact, the infringer." *Id*. But what gives the Court even greater pause is Malibu's continued failure to share with Mullins and his counsel the digital files from Malibu's pre-filing investigation. For nearly a year, Mullins has repeatedly asked Malibu for those files because, according to Mullins, they would show whether Malibu had a good-faith basis for naming him as

---

[3] "**The Court**: Did you have such a discussion in this case before you amended the complaint? **[Counsel]**: I – I did not conduct the investigation. And I do not know what information was available to us from the subscriber prior to the complaint being amended." R. 34 at 12.

the defendant. Inexplicably, Malibu has rebuffed those requests, failing to turn over the information despite several Court orders to do so. *See* R. 53 at 6-7; R. 62 at 4-5; R. 69 at 6-7.

Malibu's continued unwillingness to disclose this information casts doubt over the validity of its infringement claim. As the Court said at the January 27, 2020 status hearing, "my suspicion is raised when documents which would prove that the case was brought in good faith aren't being turned over. It's that simple." *See* R. 69 at 8. The Court cannot now conclude, nearly a year later, that Malibu's claim was neither frivolous nor objectively unreasonable.

Against this, Malibu points the finger at Mullins, contending that he is the party that has withheld information. R. 96 at 6-8. According to Malibu, Mullins should have come forward with exculpatory information sooner than he did so that Malibu would know that multiple people had access to his Wi-Fi. The problem with this argument is that it fails to explain why Malibu has continued to withhold documents supposedly showing that it had a good-faith basis for naming Mullins. No reasonable explanation has been offered, not even in response to Malibu's motion for fees.[4]

---

[4] In the parties' May 2020 status report, R. 82, counsel for Malibu indicated that COVID-19 had contributed to Malibu's inability to produce information to substantiate its good-faith basis for suing Mullins. But as the Court noted in its order dismissing the counterclaim as moot, that representation warranted little sympathy as Malibu had been directed to produce the information well before COVID-19 began. See R. 84 at 2 n.2.

Furthermore, even if all the exculpatory information available to Mullins was not shared until June 2019, Mullins' counsel did share *some* exculpatory information before that date. At the first status hearing a month earlier, Mullins' counsel offered to turn over Mullins' computer for inspection and explained that Mullins lived in a building "with a bunch of units that are all close together." *See* R. 34 at 4. Counsel further explained that Mullins and his wife made changes to their Wi-Fi after receiving a notice from their provider, and also increased their privacy protections to prevent others from using their Internet connection. *See id.* What is more, Mullins' motion to dismiss the infringement claim—which was initially filed in February 2019—said that Mullins shared his Wi-Fi with guests as well as family and friends. R. 20-1 at 7. While Malibu is correct that it was not under any obligation to dismiss the case at that point, Malibu cannot assert that Mullins and his counsel waited until June 2019 before sharing exculpatory information.

For the reasons stated, the Court has significant reservations about the frivolous and reasonable nature of Malibu's infringement claim, and finds that those factors weigh in favor of Mullins.

*Motivation*. Malibu next argues that fees are inappropriate because there are no facts in the record to support a finding that it had improper motivations in filing its complaint. Mullins disagrees, arguing that Malibu employs a "sue-then-settle" strategy by which it seeks to settle lawsuits because it expects to lose money if they were to go to trial. But Mullins makes this argument with little to no evidentiary support. He relies on an expert report filed in a different case involving a different

copyright holder, and encourages the Court to apply the report's findings to Malibu. The Court declines the invitation.

But that does not prevent the Court from recognizing that Malibu has been publicly criticized for being a prolific litigant. As one court recently found, Malibu filed 7,183 cases nationwide from 2012 to 2018. *See Strike 3 Holdings, LLC v. Doe*, 351 F. Supp. 3d 160, 163 (D.D.C. 2018). Here in the Northern District of Illinois, a cursory review of public records shows that Malibu filed hundreds of copyright infringement cases during the same time span. This Court alone saw eight different cases filed by Malibu in 2018. All of this is not to say that Malibu's motivations in filing this case, or any other, have been misplaced. Nothing in the record leads to that conclusion. But the Court cannot consider these figures without wondering what motivates Malibu's penchant for litigation—an interest in protecting its copyrights or using litigation as a profit center. Certainly most people who risk being identified in lawsuits as alleged porn downloaders are likely to simply settle the case as a means of avoiding public ridicule and embarrassment. This Court is not the first, nor likely the last, to pose these questions. *See, e.g.*, *Malibu Media, LLC v. Duncan*, 2020 WL 567105, at *3 (S.D. Tex. Feb. 4, 2020) (expressing concern over Malibu's so-called "litigation-as-a-business strategy" and noting that others have labeled the company a "copyright troll"); *Malibu Media, LLC v. Mantilla*, 2020 WL 6866678, at *5 (D. Conn. Nov. 20, 2020) ("[I]t appears from the sheer number of lawsuits filed by Malibu Media in this Court and across the nation that there is good reason to doubt the extent to which Malibu Media's business model is premised on sales of copyrighted material

as distinct from litigation income."); *Malibu Media, LLC v. John Does 1 through 10*, 2012 WL 5382304, at *4 (C.D. Cal. June 27, 2012) ("The federal courts are not cogs in [Malibu's] copyright-enforcement business model."); *Malibu Media, LLC v. Doe*, 2020 WL 6043946, at *2 (N.D.N.Y. Oct. 13, 2020) ("Malibu Media's action in this case appears consistent with many of the accusations levied against it by other courts, especially as it relates to strong-arming nuisance settlements under the threat of embarrassing litigation.").

At bottom, the motivation factor leans in favor of Malibu because the record does not support a finding otherwise. But for the reasons stated, the Court's conclusion is colored with skepticism.

***Considerations of Compensation and Deterrence***. The final factors weigh in favor of awarding fees because doing so may deter Malibu and similarly situated plaintiffs from bringing copyright claims against individual defendants without a good-faith belief that the defendant committed the infringement. And while Malibu continues to argue that its infringement claim was brought in good faith, as discussed, it also has repeatedly refused to turn over specific information from its pre-filing investigation confirming that is true. Malibu's counsel withdrew her representation for this very reason (among others). *See* R. 69 at 5. This is exactly the kind of behavior that should be deterred, especially to the extent it undermines the predictable operation and effectiveness of the Copyright Act's protections.

Malibu also contends that Mullins should not be compensated because he undertook the risk of incurring attorneys' fees. But that is not a basis for denying his

11

motion. Mullins retained counsel in order to mount a successful defense. And he did so only after Malibu named him in the amended complaint. The final *Fogerty* factor therefore weighs in Mullins' favor.[5]

***Additional Considerations***. Beyond the *Fogerty* factors, the Seventh Circuit instructs courts to assess the strength of the prevailing party's case and the amount of damages or other relief the party obtained. *See Assessment Techs. of WI.*, 361 F.3d at 436.[6] Here, the merits of the infringement claim were not completely reached because Malibu voluntarily dismissed it with prejudice. The Court had an opportunity to review the amended complaint when Mullins moved for dismissal and found that Malibu had stated a plausible claim for relief. But after some minimal discovery, Malibu filed a statement rescinding "its previous assertion that William Mullins committed any infringement of works as set forth in the amended complaint" and concluding that the "infringement was done by someone other than Mullins." *See* R. 56 at 3. The Court can reasonably infer from this that Mullins would have had a strong case if the proceedings continued.

Further, the Seventh Circuit has stated that when the prevailing party in a copyright case is the defendant, "who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong." *Assessment Techs.*

---

[5] To the extent Malibu argues that Mullins should not receive *all* his attorneys' fees, that is separate from the question of whether he should receive any in the first place.

[6] Notably, neither party briefed these issues even though the Seventh Circuit has described them as the "most important considerations in determining whether to award attorneys' fees in a copyright case." *Id*.

*of WI.*, 361 F.3d at 437. That is because, without the prospect of receiving attorneys' fees, the defendant "might be forced into a nuisance settlement or deterred altogether from exercising his rights." *Id*. Here, Mullins was not under pressure to enter into a nuisance settlement after Malibu moved to dismiss its own claim. But the motion said nothing about whether Malibu still believed that Mullins downloaded and distributed eleven pornographic movies.[7] Those embarrassing allegations still appeared on the public docket without any correction or revision having been issued. Mullins certainly had every right to exercise his defense to a successful conclusion. And without the availability of attorneys' fees, he may have been deterred from doing so.

Having considered the "totality of circumstances" in this case, *Kirtsaeng*, 136 S. Ct. at 1985, the Court finds that awarding attorneys' fees in Mullins' favor is appropriate. The *Fogarty* factors weigh in favor of such an award as do the other considerations discussed in this opinion. The Court reiterates its belief that at first glance this case does not seem to be a likely candidate for a fee award. Someone using the IP address 73.176.168.82 infringed Malibu's copyrights. Malibu later learned that Mullins was the subscriber assigned to that address. Malibu then brought an amended complaint naming Mullins as the defendant, and the Court found that Malibu had stated a plausible claim for relief. Nothing about those events is noteworthy. But what separates this case from others is that Malibu has consistently refused to cooperate with Court orders requiring it to turn over certain pre-filing

---

[7] Malibu later clarified in a statement of non-infringement that it did not believe that Mullins infringed its copyrighted movies. *See* R. 56. But that statement came months after Malibu voluntarily moved to dismiss its claim.

investigation files that would purportedly show whether the company had a good-faith basis for suing Mullins. Malibu's refusal not only constitutes misconduct for which fee-shifting is justified, *see Kirstaeng*, 136 S. Ct at 1989 (noting that a court may award fees under the Copyright Act "because of a party's litigation misconduct, whatever the reasonableness of his claims or defenses"), but also throws into doubt the reasonableness of the infringement claim itself. Malibu was slow to drop that claim and has yet to disclose the good-faith basis for the lawsuit despite being ordered to do so. Attorneys' fees will be awarded.

## II. Fee Award

Mullins has submitted a proposed fee and cost calculation of $64,172. *See* R. 92-1 at 14. This figure accounts for the hours billed by his three attorneys minus voluntary reductions. Malibu makes four main objections to the proposed award. First, Malibu objects to the fees related to Mullins' counterclaim because Mullins was not the prevailing party. *See* R. 91-5 at 4. The Court agrees. A litigant "prevails" for the purpose of fee-shifting statutes when it obtains a "material alteration of the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001). In the context of the fee-shifting provision of the Copyright Act, a "judgment in a party's favor has such an effect." *Riviera*, 517 F.3d at 928. Here, the Court dismissed Mullins' counterclaim as moot, so no judgment was made in his favor. Mullins is therefore not the "prevailing party" of the counterclaim and no fees will be awarded as to that claim.

Malibu argues next that the Court should not award fees related to Mullins'

motion to dismiss Malibu's infringement claim because the Court denied that motion.

But as the best the Court can tell, Malibu provides no basis for this argument.

Further, a party who "loses interim rulings en route to ultimate success" may still

recover fees related to those interim rulings. *Alliance To End Repression v. City of*

*Chicago*, 356 F.3d 767, 770 (7th Cir. 2004). Malibu's argument is thus rejected.

Malibu also objects to any fee incurred after November 12, 2019, the date on

which the infringement claim had been dismissed with prejudice and a statement of

non-infringement had been filed. *Id*. The Court agrees with this objection but extends

the date to November 14, 2019, which is the day the Court held a status hearing to

discuss those same issues. By the end of that hearing, it was clear that Mullins had

"prevailed" on the infringement claim for purposes of 17 U.S.C. § 505. In fact, the

Court remarked, "I don't know what Mr. Mullins's motivation is to continue this in

light of the fact that Malibu Media has said unequivocally . . . [that] he didn't do it."

R. 60 at 9. The proceedings following that hearing focused on Mullins' counterclaim

and ongoing discovery requests. And while those requests concerned the good-faith

nature of Malibu's infringement claim, the claim itself had already been dismissed

and there was little question that Mullins had prevailed. Put simply, awarding fees

incurred after the November 14, 2019 hearing would be excessive and unreasonable,

and therefore inappropriate.

Malibu's last objection is that certain fees are inadequately described on the

attorneys' time sheets. While it is true that vague entries can support a reduction in

15

awarded fees, *Design Basics, LLC v. Heller & Sons, Inc.*, 2019 WL 4200614, at \*7 (N.D. Ind. Sept. 3, 2019), the Seventh Circuit has instructed courts to read time sheet entries in context, not isolation, *Berberena v. Coler*, 753 F.2d 629, 634 (7th Cir. 1985). Applying that instruction here, the Court finds that it can evaluate some of the contested entries by considering the context in which they were made. For example, two challenged entries read: "Lexis research and writing" and "research on REDACTED." See R. 91-5 at 23. While those entries are vague and exceedingly brief, the entries that surround them suggest that counsel was working on discovery-related matters and briefing materials. Other entries, however, are impermissibly vague. For example, an entry dated October 29, 2019 reads: "RESEARCH on REDACTED." *Id*. at 25. Counsel made no other entries that week and it is not clear to the Court why counsel's research topics need to be redacted, especially when no communications with the client were involved.

Accordingly, the Court instructs counsel for Mullins to prepare a new fee schedule that is in keeping with these findings. The schedule should not include any fees dated after November 14, 2019, other than the fees incurred as a result of preparing for this fee and cost motion and reply brief. The revised schedule should also not include fees incurred as a result of Mullins' counterclaim.

Once a new schedule is available, the parties are strongly encouraged to find common ground and determine whether they can arrive at a mutually agreeable dollar amount. No fees for that endeavor will be awarded. If no agreement can be made, the Court will decide the appropriate amount to award. It is in the parties'

16

interests, however, to bring this dispute to a swift and amicable conclusion as this case should have been resolved long ago.

## Conclusion

For all these reasons, the Court grants Mullins' motion for attorneys' fees and costs in an amount yet to be determined that takes into account the limits identified here. R. 88; R. 91. A status hearing is scheduled for February 16, 2021, at which time the parties shall advise the Court on whether a revised fee and cost schedule has been agreed upon.

ENTERED:

_Thomas M Durkin_

_____

Honorable Thomas M. Durkin
United States District Judge

Dated:  January 13, 2021

17