```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3   MALIBU MEDIA, LLC,               )
                                      )    Docket No. 18 6447
 4                   Plaintiff,       )
                                      )    Chicago, Illinois
 5        vs.                         )    July 23, 2021
                                      )    9:25 a.m.
 6   WILLIAM MULLINS,                 )
                                      )
 7                   Defendant.       )

 8
            TRANSCRIPT OF TELEPHONIC PROCEEDINGS - Status
 9           BEFORE THE HONORABLE THOMAS M. DURKIN

10

     APPEARANCES:
11
     For the Plaintiff:     MR. JOEL ALEXANDER BERNIER
12                          Boroja, Bernier & Associates
                            49139 Schoenherr,
13                          Shelby Township, Michigan  48315

14
     For the Defendant:     MR. J. CURTIS EDMONDSON
15                          Law Offices of J. Curtis Edmondson
                            Weil Building,
16                          Hillsboro, Oregon  97124

17

18

19

20

21

22                      ELIA E. CARRIÓN
                     Official Court Reporter
23                  United States District Court
              219 South Dearborn Street, Room 1432,
24                   Chicago, Illinois 60604
                        (312) 408-7782
25                Elia_Carrion@ilnd.uscourts.gov
```

1    APPEARANCES (Continued:)

2
     For the Defendant:        MR. JOSEPH A. STEWART
3                              The Peacock Law Group
                               150 North Michigan Avenue, Suite 800,
4                              Chicago, Illinois  60601

5
     Also Present:            Ms. Colette Pelissier
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      (Proceedings had telephonically:)

2          THE CLERK:  The next case is 18 CV 6447, Malibu Media

3   versus Doe.

4          Could I please have anyone speaking on behalf of

5   Malibu Media state their names.

6          MR. BERNIER:  For the record, Joel Bernier appearing

7   on behalf of Malibu Media, LLC.

8          MS. PELISSIER:  And I'm present as well

9   [unintelligible].

10         THE COURT:  I couldn't hear that.  Please state it

11  again.

12         MS. PELISSIER:  I'm sorry.  This is

13  Colette Pelissier.  I'm Joe's client for Malibu Media, and I'm

14  the owner of Malibu Media [unintelligible].

15         THE COURT:  I am having a lot of difficulty hearing

16  the female voice I just heard.  Slow down.  I don't know if

17  you're on a speakerphone or not.  If you are, please try to

18  get off of it.

19         MS. PELISSIER:  Your Honor, good morning.  Can you

20  hear me now?

21         THE COURT:  This is better but slow down.

22         MS. PELISSIER:  Okay.  Thank you so much.

23         THE COURT:  Who is this?

24         MS. PELISSIER:  This is Colette Pelissier,

25  P-E-L-I-S-S-I-E-R.

1    THE COURT:  Okay.

2    MS. PELISSIER:  I'm the owner of Malibu Media.

3    THE COURT:  All right.

4    THE CLERK:  And anyone appearing on behalf of the

5 defendant?

6    THE COURT:  Well, I think -- well, is there anyone

7 here on behalf of Mr. Mullins?

8    MR. EDMONDSON:  Good morning, Your Honor.

9 Curt Edmondson here on behalf of Mr. Mullins, but I believe

10 Joe -- Joseph Stewart is the one that's brought the motion.

11 But if he's not here, I'm willing to proceed.  I've read the

12 pleadings.

13    THE COURT:  Mr. Stewart, are you on the line?  Hmm.

14 Well, I'd like you to get him on the line if you can't.  This

15 is his motion, and I'm sure he's aware of this.

16    MR. STEWART:  Judge.  Judge, I'm sorry.  Joe Stewart

17 on behalf of Mr. Mullins.  I'm having some technical

18 difficulties with my phone.  I apologize.

19    THE COURT:  That's all right.  Okay.  Well, I'm glad

20 you're on because it's your motion, so.

21    MR. STEWART:  Yes.

22    THE COURT:  All right.  Well, to renew -- review the

23 bidding on this, we have an emergency motion for leave to

24 amend a motion for a rule to show cause that was filed by the

25 judgment creditor, Mr. Mullins, being represented by

1  Mr. Stewart, that emergency motion is granted.  You're given
2  leave to amend your rule to show cause, so that's the
3  operative document we're working off of.

4          MR. STEWART:  Thank you.

5          THE COURT:  And we also have a motion to withdraw
6  filed by Mr. Bernier, and Ms. Pelissier is the third-party
7  representative of the corporate citation respondent.

8          To review the facts, in January -- on January 13th, I
9  granted Mullins's motion for attorneys' fees and costs and
10  instructed the parties to try and reach an agreement on the
11  amount that should be awarded.  On February 16th at a status
12  hearing, Mullins's attorney said that he made an offer to
13  settle the fees amount, but that Malibu made a significantly
14  less counteroffer.  I basically said enough was enough, and I
15  granted judgment in the amount that Mullins had offered.

16          On February 17th, a judgment order was entered in the
17  amount $46,235.45, not including prejudgment interest.
18  Mr. Stewart filed his appearance on April 9th, on behalf of
19  Mr. Mullins.

20          On April 19th the judgment order was amended to
21  include the prejudgment interest.  On April 20th a citation to
22  discover assets was issued to Malibu.  On May 13th Malibu
23  filed a motion to continue the debtor's examination scheduled
24  for May 12, 2021, and for an extension of time to produce and
25  permit inspection and copying of documents pursuant to the

1 citation to discover assets.

2 On May 18th an order was entered giving Malibu until
3 June 9th of 2021 to produce the documents requested in the
4 citation and until June 16, 2022, to appear for the debtor's
5 exam. That didn't happen.

6 And then on July 13th, Mr. Bernier filed his motion
7 to withdraw. On July 16th, Mullins filed his motion for a
8 rule to show cause directed to Ms. Pelissier. And then
9 finally on July 22, Mullins filed his amended motion.

10 So I'll start first with Mr. Stewart, what are you
11 looking for?

12 MR. STEWART: Well, Your Honor, I think that we have
13 moved for an order for Ms. Pelissier to show cause and to be
14 able to specifically on a date certain to produce documents
15 and appear for examination with penalties for failure to do
16 so. We believe that there might be a contest about that issue
17 before. We think based on the new information we've learned
18 over the past few days, what was provided to the Court in the
19 amended motion, the finding of criminal contempt against
20 Ms. Pelissier for the very same conduct that is at issue in
21 the rule to show cause makes it clear beyond any doubt that
22 Ms. Pelissier never had any intention of complying with the
23 citation, and all of her efforts up to now have been
24 counterfeit, including that -- that completed rider, whatever
25 that document was that Mr. Bernier passed on, passed on

1   literally.  He said, "I'm passing this on to you" as though he
2   found it by -- from some guy in the corner, some information
3   hey, do you want to know some information about Malibu Media's
4   assets?

5           Judge, the playbook in a case like this is that the
6   corporate defendant either pays the judgment, stops doing
7   business, or turns over documents and shows why they can't pay
8   the judgment.  And Ms. Pelissier and -- and Mr. Bernier have
9   combined together, done neither of those two things.  They've
10  neither paid the judgment nor have they produced the
11  documents.

12          And we think that before it was arguable whether this
13  was, you know, some sort of neglect or what have you, but I
14  think it's very clear from the record that we've made that
15  this was an intentional act by Ms. Pelissier to hinder, delay,
16  and to frustrate my clients with recovery of their judgment,
17  and that Mr. Bernier, knowingly or unwittingly or wittingly
18  assisted her in this.

19          And so now we're asking not only for the rule to show
20  cause be granted, but we think that you should consider,
21  Judge, that that California state judge tried to do things the
22  easy way, if you read over his opinion that we attached to the
23  amended motion.  And in that the judge explained how over a
24  period of nine months he attempted to work with Ms. Pelissier
25  to get the very same records that we're seeking right now.

1          And was forced to prefer criminal contempt charges

2 against Ms. Pelissier.  And even -- the judge explained even

3 after he preferred those charges against her he gave her an

4 opportunity to purge the contempt by producing the documents.

5 She still did not do that.  And -- and then at sentencing, he

6 gave her the easy way do community service or spend eight days

7 in jail.  Ms. Pelissier --

8          MS. PELISSIER:  Please.

9          MR. STEWART:  So, Judge, I'm -- when you're ruling on

10 this matter, I would -- I would ask you to consider that.  The

11 last thing I would ask you to consider is this:  I've been

12 doing this work for a long time.  An old gentleman told me

13 when I first started doing this work, "Joe, look, when you get

14 up the morning and you try to think of things good to do,

15 because other people that you're collecting money from, they

16 get up in the morning and they figure out who they can chisel

17 and nickel from."  And that's what we're encountering, Judge,

18 with Ms. Pelissier.

19          She has a history of simply stripping her creditors,

20 and her north star, Judge, points towards avoiding her debts.

21 You've got to convince her that her north star is pointing

22 towards a jail cell 'cause that's the only way she will turn

23 around.

24          So we're requesting that you grant all the relief

25 that we've requested in the amended motion, and then

1  additionally, that there be a presumption that Malibu Media

2  has the assets to pay this judgment, and with a failure to

3  disclose assets raises the presumption that they're

4  deliberately not paying the judgement to force costs on my

5  client.  Thank you.

6           THE COURT:  All right.  Mr. Bernier.

7           MS. PELISSIER:  Please, I hope I'm allowed to speak

8  to this at some point.

9           THE COURT:  I'll hear first from Mr. Bernier, then

10  I'll hear from Ms. Pelissier.

11           MS. PELISSIER:  Thank you so much.

12           MR. BERNIER:  Thank you, Your Honor.  I'm the local

13  counsel for Malibu Media to do copyright matters in the

14  Detroit area.  I came on in this particular case in 2020.  And

15  it was already nearly concluded, and the original attorney had

16  withdrawn.  So I stepped in and the matter ended as you

17  specified.

18           Once it did, when April came around, April of this

19  year, I did explain to Mr. Stewart that I'm probably not going

20  to stick around on this case.  I don't have a local counsel in

21  Chicago.  I talked to my client about finding a local counsel,

22  and they have not.

23           By the time the citation was given to me to give to

24  Mr. Stewart by my clients, I had been asking for

25  documentation, I had been asking for -- you know, are these

1   truthful responses?  And all the indications I received from

2   my client were these are truthful responses to the citation.

3   But that -- that brought up more conversations between my

4   client and I -- I was asking about local counsel, what's going

5   on with this, so we came to an agreement where I was

6   discharged.

7          The postcollection matter, Your Honor.  I would

8   never, ever intentionally do the things Mr. Stewart has

9   implied that I've done.  I take my professional responsibility

10  ethics more seriously than anything else in my practice.

11         Judge, I also own a guardianship agency for our

12  county here in Macomb, and I don't know if Mr. Stewart

13  understands the damage that that could cause.  The county

14  appoints us people who are deemed legally incapacitated, to

15  take care of, basically.  So I just like to put that out

16  there.

17         Judge, when -- the client has a right to discharge

18  me.  I -- I -- I'm not a collections attorney either or a

19  collections defense attorney --

20         MS. PELISSIER:  Joel, I would like to attest to how

21  well you've been doing and how much you've tried to get this

22  to work, and I think when I explain the situation, it will

23  bring credit to everyone, and I can explain what -- he's a

24  stand-up attorney.  He has been really trying to make this

25  work.  I honestly don't know -- I'd like to explain everything

1   to the Court, and you would involve --

2   THE COURT:  Ms. Pelissier, hang on.  Let Mr. Bernier

3   finish and then I'll give you a chance to talk.

4   Finish what you were going to say, Mr. Bernier.

5   MR. BERNIER:  Judge, the past month on this matter

6   has been an absolute nightmare.  And I'm not blaming my client

7   for anything.  There does seem to be problems.  I had no idea

8   about the litigation in other parts of the country.

9   I was aware Ms. Pelissier had a personal matter in

10  southern California.  I've never represented Ms. Pelissier in

11  her personal or individual capacity, but I've represented

12  Malibu Media as an LLC in copyright matters.  That's what I

13  do.  I do copyright, criminal defense, and family law.

14  And yes, so I did say I passed on the information,

15  and that -- that was the language I used because, as I said, I

16  was clear that I probably wouldn't be sticking around on this

17  case.

18  And, Judge, I -- I've never been berated over the

19  telephone the way Mr. Stewart has.  We could have

20  conversations like a normal -- you know, like normal

21  professional attorneys, as we should.  So I -- I -- you know,

22  some of the language I -- I may have used over the phone such

23  as passed on the information probably isn't the best choice of

24  words.  In fact, it's not the best choice of words, and I

25  would apology to Mr. Stewart.  I didn't mean to get off on the

1   wrong foot with him, but this is a postjudgment matter, Judge.

2   I'm in Detroit.  My client has discharged me.  I'm not trying

3   to interfere with Mr. Mullins's collection efforts in any way

4   whatsoever.

5          I would just ask the Court to grant my discharge.

6   Ms. Pelissier, I spoke to her before we came on, has explained

7   to me she does have a personal attorney.  She has contact

8   information that she could provide the Court as well.

9          Thank you, Your Honor.

10         THE COURT:  All right.  Ms. Pelissier, anything you

11  want to say?

12         MS. PELISSIER:  Yes, please, and very much so.

13         Okay.  So, Your Honor, I do recall this matter, and I

14  think it goes all the way back to 2013, '14, or '15, I'm not

15  sure I was -- I actually tried to look up on Lexis to find the

16  actual docket, and I believe that there were actually three

17  attorneys in this case, and what happened is that we were

18  transitioning attorneys.  They promised evidence of PCAPs,

19  which now I'm involved in a computer programming business, and

20  we used to -- we actually only got into this copyright

21  litigation, actually really against our will.  An attorney

22  called us and said you need to protect your copyright --

23         THE COURT:  Slow down, please.  I can't understand

24  you when you speak too quickly.

25         MS. PELISSIER:  Okay.  I'll try to talk slower.

1     We were contacted by an attorney in around 2010 and

2   he said, you know, you need to protect your copyrights and --

3   or -- or you're not going to be able to do business.  And my

4   husband and I, at the point he was heading Malibu Media as

5   well as he had another company, and he's mostly interested in

6   programming.  He really was against getting involved in

7   anything legal to protect our copyright.

8     But we tried every software, everything.  Nothing

9   seemed to work with BitTorrent.  They were -- we were having

10  800,000 thousand films a month stolen, and so as far as being

11  able to guard our company, which we worked 24 hours a day, I

12  was previously in real estate and I grew up -- I was actually

13  forced to go the Olympics in show jumping.

14    I've been working since I was 12 years old since

15  5:00 A.M., I was a very hard worker.  When the real estate

16  market started dropping, my husband was a photographer, and we

17  had an idea to maybe make beautiful erotica, not like I told

18  my nephew [unintelligible] that was pretty disgusting.  And so

19  we said maybe what we'll do is we'll show the wedding ring to

20  people --

21          THE COURT:  Ms. Pelissier.

22          MS. PELISSIER:  [Unintelligible].

23          THE COURT:  I'm going to interrupt you.  Hang on a

24  second.  Ma'am.  Ma'am.  You've got to listen to me for a

25  minute.  I have to interrupt you for a minute.

1    I don't need to know about the business model of
2  Malibu Media.  I don't need to know how the company started.
3  There was a citation to discover assets, which means you need
4  to sit down with a court reporter with Mr. Stewart asking
5  questions of you while you're under oath -- hang on -- while
6  you're under oath and, also, produce to him the documents
7  called for in that citation.

8    This case is over as far as Mr. Mullins is concerned,
9  other than the fact he wants to get the judgment amount, which
10  is approaching $50,000.  If you can pay it, you should pay it,
11  but what I intend to do today is set this down on a date that
12  Mr. Stewart gives me for you to appear in Chicago in an
13  office -- or, frankly, we can do it in the courtroom.  I'll
14  find you a courtroom here.  That might be simpler.  Where you
15  will sit for a deposition and a citation.

16    If you fail to appear for that, without agreement
17  from Mr. Stewart, then I'll issue a warrant for your arrest.
18  It's that simple.  It's that simple.

19    MS. PELISSIER:  Your Honor, I'd be happy to.  May
20  I -- Your Honor, I'd be happy to do that.  May I please
21  explain?

22    There is -- I've never been in a litigation
23  personally.  There is -- I had a lease on a property I told
24  you --

25    COURT REPORTER:  Slow down.

1           THE COURT:  Ma'am -- we can't -- you may not realize

2  this, there's a court reporter here -- you've got to stop.

3           MS. PELISSIER:  [Unintelligible].

4           THE COURT:  Ma'am.

5           COURT REPORTER:  Stop.

6           THE COURT:  Please stop.  There's a court reporter

7  here in my courtroom.  She is trying to take down what you

8  say.  You are speaking so fast that she can't take down what

9  you're saying, and I can't understand you.  So that's why I

10  interrupted you before because what you were saying were

11  things that are not relevant to what the issue is today --

12           MS. PELISSIER:  Okay.

13           THE COURT:  -- which is simply you coming to Chicago

14  to sit down for a citation, in effect a deposition.  Not

15  delaying it, not failing to appear, but sitting down --

16           MS. PELISSIER:  I understand.

17           THE COURT:  -- and answering questions under oath

18  from Mr. Stewart and bringing documents --

19           MS. PELISSIER:  Okay.

20           THE COURT:  -- with you.

21           Are you willing to do that?

22           MS. PELISSIER:  Yes, I would be willing to do that.

23  May I please explain the background so I know who Mr. Stewart

24  is talking to and why this is getting out of hand?

25           THE COURT:  No, I -- I'm -- I rarely do this.  But

1    I'm not going to give you the opportunity to do that.  If you
2    want to do that send me --

3             MS. PELISSIER:  So important.  It's so important,
4    Your Honor.  I could go to jail and I've not done anything
5    wrong.  There's a default judgment entered against me --
6             COURT REPORTER:  Slow down.
7             MS. PELISSIER:  Okay.  Okay.  They're asking me to
8    produce documents that I do not own nor have I created.
9    There's a company that posed as Malibu Media, and I'm in a
10   very big litigation with them.  They actually went to collect
11   on our default judgment.  They made a Malibu Media bank
12   account.  I was not -- I went to the bank, and I was not able
13   to get the account records.  This attorney, he's actually
14   working -- I have on my -- on my home -- on May 20th -- I own
15   the title to my home, which we saved for ten years to buy --
16   on May 20th, I was forcibly evicted from my home during COVID
17   and have been displaced from the home because these attorneys
18   are all corroborating, and they -- I have my Ring cam -- my
19   phone ring, and on the Ring cam there is this man, Mr. Cenlar
20   [phonetic], who's a convicted felon for selling 55 military
21   helicopters, and if you look him up he's also being sued by
22   Engel & Engel with the lawyers he told me to use --

23            COURT REPORTER:  I don't understand what you're
24   saying.

25            MS. PELISSIER:  Okay.  So he has bringing me --

1   brought to me court ten times for debtor's exams.  I've
2   provided him everything.  He's trying to hold me in contempt
3   for two bank statements that were from -- like my husband and
4   I were 18 years old.  One bank statement that has the name of
5   my ex-husband's wife and one bank statement that is the --
6   that is the property of the people that are working with the
7   same attorney.  Mr. Barteau [phonetic], his in-house counsel,
8   has now hired a very, very, like, hardcore debt collector
9   who's already involved in debt collection.
10          I've been evicted from that home that I own.  I'm on
11  title.  I pay the monthly FHA mortgage, which is a lot of
12  money, and I'm now staying in a condo that I have had since I
13  was 18 years old, and -- this is kind of stupid, but that date
14  [unintelligible], my dog that I had for 19 years passed away
15  an hour before they came, so, I was, obviously, upset.  I
16  mean, I know it's stupid.  It's not the dog ate my homework.
17  This just actually happened.
18          COURT REPORTER:  You need to slow down.
19          THE COURT:  Elia, just put unintelligible.  That's
20  all we can do.
21          MR. STEWART:  Judge, this is Joe Stewart --
22          MS. PELISSIER:  I'm not [unintelligible] any debt.
23  What Mr. Stewart is saying sounds like it came directly from
24  Mr. Barteau, and he's actually telling me that I'm going to go
25  to jail.  I can't provide the statements.  I don't have them.

1      So he actually just sent me an offer to pay $900,000

2  or go to jail.  And I don't know what to do because he also

3  had all of my personal and business accounts frozen and that

4  the judge ordered that that was not constitutional.  He

5  couldn't do that.  And at the same time, other -- this other

6  attorney he's working with is trying to get the deed to my

7  house, and then I did a little bit more research and I found

8  out that they own a company, SCI Financial Services, where

9  they have a plan that they actually plan to dispose of the

10  assets.

11      They charge a 10 percent late fee per month so they

12  get 120 percent interest.  They make a product placement

13  management, and I never been involved in a litigation until

14  this --

15      MR. STEWART:  Judge, this is Joe Stewart.  May I

16  interrupt?  May I interrupt?

17      THE COURT:  You may, Mr. Stewart.

18      Ms. Pelissier, let's let Mr. Stewart talk for a

19  moment.

20      MR. STEWART:  Well, Your Honor, it's -- I don't -- I

21  think that what Ms. Pelissier is saying here right now is I

22  think irrelevant to what we're -- what's at issue right now --

23  excuse me.

24      This is Joe Stewart.

25      The issue right now are -- in any supplemented

1   proceeding are the assets of the judgment debtor.  The

2   judgment debtor in this case is Malibu Media, and right now,

3   as was suggested in our amended motion, the entire -- all the

4   assets, all the income from Malibu Media is being diverted to

5   Ms. Pelissier's husband.  She doesn't have to respond to that

6   right now, but I want to let her know, and I think the Court

7   should know, that we're going to get a transcript of what

8   Ms. Pelissier said right now and all the things and we're

9   going to find out what the assets are of the judgment debtor.

10          If it turns out that over these past three months the

11  judgment debtor has had sufficient assets to pay this

12  judgment, and Ms. Pelissier has called us all to the courtroom

13  by her intransigence.  We -- we will seek further fees in this

14  case, Your Honor, and we will seek Ms. Pelissier to be held in

15  contempt because what she's doing right now is she's being

16  totally obstreperous.  She's talking about things that have

17  nothing to do with the collection of this judgment.

18          THE COURT:  Hang on.

19          Mr. Stewart, that's fine.

20          Ms. Pelissier, I don't want to hear anymore.

21          I actually have a sentencing of someone who is in

22  jail starting in about ten minutes.  And I don't want to

23  trivialize this case, but I want to let you know the serious

24  types of cases this Court hears.

25          All you're being asked to do, Ms. Pelissier, is come

1   in and sit down and it's going to take place in this

2   courthouse.

3         Mr. Stewart, I'll give you a courtroom, because if

4   there's problems during the citation, you can come directly to

5   me.  I'll likely be on trial, but I'll talk to you at a break.

6         What date do you want that citation to occur,

7   Mr. Stewart?  Ms. Pelissier apparently is going to be going to

8   an LA county jail for eight days, so you can't do it during

9   the days she's in jail.  Set a date.

10         MR. STEWART:  I'll do it 28 days from now,

11   Your Honor.

12         THE COURT:  What date is that, Emily?

13         MS. PELISSIER:  [Unintelligible] proper and he waited

14   four months until I left and filed the UD, which I didn't even

15   know what that was.  I guess it was retaliatory

16   [unintelligible].

17         THE COURT:  All right.  I can't understand you,

18   ma'am.  I cannot understand you.  My court reporter can't get

19   this down.  You're speaking way too fast.  Hang on.

20         MS. PELISSIER:  After I left the property, he filed

21   an unlawful detainer.  It was dismissed.  I didn't even know

22   what unlawful detainer was, but I had let him know that there

23   was mold after I had spent so much money remodeling the

24   property, and then he said he wanted me to leave the property,

25   so I left the property.  If he had told me he was going to

1  file for future rent of half a million dollars, I obviously

2  would've stayed, but he put in writing, but he never let me

3  bring that into court because then he got another default.

4          THE COURT:  This is not -- this is not relevant.  All

5  I want to do is set a date in 28 days.

6          Emily, a date in 28 days.

7          Hang on.  Hang on.  Please stop talking.

8          Go ahead.

9          THE CLERK:  28 days from today is August 20th.

10          THE COURT:  August what?

11          THE CLERK:  20th.

12          THE COURT:  August 20th.

13          Hang on, Ms. Pelissier.  You need to stop talking and

14  you need to listen.  Do you understand that?

15          August 20th.  August 20th at 9 o'clock Central you

16  will appear in my courtroom.

17          Which is 1441?

18          THE CLERK:  Yes.

19          THE COURT:  We're in 1441 at 219 South Dearborn.

20  You're going to be sent a notice of this, but whether you get

21  that notice or not, you need to be in this courtroom on

22  August 20th, Room 1441 at 9 o'clock.

23          If you're not here, I'll issue a warrant for your

24  arrest.  You can either fly United to come to -- hang on.  I'm

25  not done talking.

1          You can either fly United to come to Chicago or any

2    other airline of your choice, or I'll issue a warrant for your

3    arrest and the U.S. Marshals will arrest you where you reside

4    and you'll be taken to Chicago for what is a simple matter of

5    sitting down to have your -- have questions asked of you about

6    your assets.

7          MS. PELISSIER:  I understand.

8          THE COURT:  Because there's a debt of $50,000 that

9    your company owes Mr. Mullins.  You've engaged in litigation

10   against Mr. Mullins that was improper.  I awarded attorneys'

11   fees -- stop, ma'am.  You're done talking.  I'm talking.

12   Stop.

13         You will appear on that date.  If you reach an

14   arrangement with Mr. Stewart, either yourself or through an

15   attorney to change that date, that's fine.  But absent any

16   agreement to change that date, you will appear in this

17   courtroom at 9 o'clock on August 20th, and if you don't, I

18   will issue a warrant for your arrest.

19         Do you understand that?  That's a yes or no.

20         MS. PELISSIER:  [Unintelligible.]

21         THE COURT:  That is a yes or no.

22         MS. PELISSIER:  Yes, Your Honor.

23         THE COURT:  All right.  You will bring with you the

24   documents called for by --

25         MS. PELISSIER: [Unintelligible.]

1      THE COURT:  Hang on.  I'm not done talking.

2          You will bring with you the documents called for by

3  Mr. Stewart.  If you don't have those documents, you can

4  explain that in the citation proceeding in your deposition.

5  If you do have those documents and you don't bring them with

6  you, it'll be brought to my attention when you come to this

7  courtroom, and the consequences will again be something where

8  I may hold you in contempt.

9          Gather the documents he calls for, called for if you

10  have them.  If you don't have them, he's going to ask you

11  where they are and when you last had them and your answers

12  need to be truthful because you'll be under oath.

13          Mr. Bernier, there's a request in this revised motion

14  for documents from you.  You need to comply with that.  I'm

15  not going to grant your motion to withdraw until those

16  documents have been provided.

17          Anything else we need to discuss today?  First,

18  Mr. Stewart.

19          MR. STEWART:  No, Your Honor.  Well, the remaining

20  relief that we requested in the amended motion, the -- the

21  order to exclude time on the order to the -- Ms. Pelissier's

22  attorneys throughout the country for them to produce the same

23  records, payments that they made to them for the work that

24  they've done for her, and the source of those payments.

25          THE COURT:  Well, the motion to extend time under the

1   citation is granted.

2          MR. STEWART:  Okay.

3          THE COURT:  The order requiring Ms. Pelissier and

4   Malibu Media's lawyers in Florida, Texas, California to

5   disclose the source and amount of their fee payments over the

6   last three years, I don't know how I can compel lawyers who

7   are not in front of me to do that.

8          Ms. Pelissier is before me.  I have compelled her.

9   You should issue subpoenas to those attorneys.  And if they

10  refuse to comply with those, you can come in on a motion to

11  enforce the subpoena.

12         As to the -- I believe that covers everything.  And

13  Mr. Bernier is here, comply with the order, you've seen the

14  motion.  There's a request for nonprivileged documents from

15  you.  You need to turn those over to Mr. Stewart.

16         Anything else, Mr. Stewart?

17         MR. STEWART:  No thank you, Your Honor.

18         THE COURT:  Anything else, Mr. Bernier?

19         MR. BERNIER:  No, Your Honor.

20         MS. PELISSIER:  Yes.

21         THE COURT:  I'm sorry?

22         MR. BERNIER:  Nothing further, Your Honor.

23  Thank you.

24         MR. STEWART:  One more thing.

25         THE COURT:  Hang on.

1    MR. STEWART:  Excuse me.  Ms. Pelissier has to be
2  ordered to put in an address and phone number where she can be
3  contacted for notice purposes, and there's no phone number on
4  record for her.
5    THE COURT:  All right.  Ms. Pelissier, give us your
6  phone number.  Be accurate.  You're on the record, and you're
7  talking to a federal judge.
8    What is your phone number for purposes of contacting?
9    MS. PELISSIER:  My personal mobile phone number is
10  310-702-6008.  That's my mobile phone number.
11    My attorneys:  310-899-3300; Murphy Rosen and
12  David Rosen, Joanne Rosen, Paul Murphy.
13    THE COURT:  All right.  Did you get all that,
14  Mr. Stewart?
15    MR. STEWART:  Roger, Your Honor.
16    THE COURT:  All right.  And what's your address,
17  Ms. Pelissier?  Where are you currently living?
18    MS. PELISSIER:  You can use -- you can use 101 -- I'm
19  sorry.  It's 101 Wilshire Boulevard, Suite 13000 in
20  Santa Monica.
21    THE COURT:  Is that where you're living?
22    MS. PELISSIER:  That's my attorney's address, and he
23  oversees -- they oversee the documents because I'm completely
24  displaced right now.  These people are trying to sell my
25  home --

1    THE COURT:  What is your -- you must be living
2  somewhere.  What is the address where you're living?
3    MS. PELISSIER:  That's our home where we live, our
4  address, our primary residence is 11802 Ellice Street in
5  Malibu, California 90265.
6    And this is where they had a commissioner, even
7  though she said "We're not discussing title," and this
8  attorney somehow got -- he actually filed a -- he filed a
9  petition that was for cause because of COVID and they came
10  in -- eight officers with guns looking for drugs or guns or
11  anything, of course, they found nothing.  And I was so sad
12  about the dog we left our house.  We've been displaced in a
13  hotel.
14    I want Your Honor to know we have not filed a case or
15  anything against anyone for copyright infringement in two
16  years.  Nor have we been shooting.  I've been paying my team.
17  I've not taken COVID relief.  I've made sure to pay everyone
18  on my team because they need to pay their rent and they need
19  to live.
20    And I have these attorneys harassing me because -- I
21  actually have the cam where Mr. Cenlar, Mr. Barteau,
22  [unintelligible] other attorneys for Malibu Media and we'll
23  get [unintelligible] get -- like, you're making all royalties,
24  you don't even make royalties, and we can't even update the
25  site because we're not even with our computers that are in our

1  garage at our house that anybody have access to.

2          THE COURT:  All right.

3          MS. PELISSIER:  And the Genova Capital is trying to

4  steal the house was at the house with Mr. Cenlar, who is

5  Barteau's client, who is trying to sue me for a million

6  dollars because I found mold in his property when I paid him

7  up front every month and spent almost $1 million

8  [unintelligible] --

9          THE COURT:  All right.  All right.  Ms. Pelissier,

10  I'm -- I'm changing the date because I -- I have another

11  matter on the 20th.  We're going to make this August 23rd at

12  9 o'clock.  So the order is now August 23rd, it's a Monday.

13  Be in Chicago, be in this courtroom; and, Mr. Stewart, be here

14  with a court reporter, and I'll find a place for you to take

15  this citation.

16          If you have an attorney, that attorney can be there

17  with you, Ms. Pelissier, if you'd like.  You have a right to

18  an attorney, attorney can be there.

19          I realize there's a lot of things apparently going on

20  in your life -- hang on.  Let me talk 'cause we're about

21  done -- there's a lot of things going on in your life --

22          MS. PELISSIER:  Your Honor, and that's usually more

23  than enough for two attorneys' bills, one was six; one was

24  three, and I guess the other one was much more and it didn't

25  seem reasonable, and the judge -- I don't even know what the

1   matter was, but it wasn't by fault of us.  I don't want to
2   cause financial hardship.  We have probably 20 million in
3   default judgments.  Just I don't collect because I don't
4   believe in punishing [unintelligible] --

5          THE COURT:  Okay.  Thank you, ma'am, thank you.
6   August 23rd -- listen to me.  And then we're going to be
7   completing this hearing because, as I said, I have another
8   matter, which actually involves someone who is in jail.

9          August 23rd at 9 o'clock, Room 1441, the federal
10  building in Chicago.  Be here or a warrant will be issued for
11  your arrest --

12         MS. PELISSIER:  [Unintelligible].

13         THE COURT:  -- August 23rd at 9 o'clock.

14         Now, now, the -- the -- all of this derives from the
15  fact that your company owes Mr. Mullins close to $50,000
16  because he had to spend a lot of money on attorney's
17  defending what ended up being an improper lawsuit brought by
18  your company.  If you solve that problem, you can by simply
19  paying that amount to -- and talk to Mr. Stewart about that.

20         But absent that, he's entitled, as is Mr. Mullins's
21  client, more than him, he's entitled to find out what assets
22  you have and making sure that if those assets are being in
23  some way sheltered or moved to somewhere else, he will then
24  take the deposition of your husband or some other party so he
25  can attempt to locate the relatively small amount of $50,000,

1  which will put a stop to this entire proceeding.

2          All right.  We're done.  Thank you, all.

3          MS. PELISSIER:  Thank you, Judge.

4          THE COURT:  Thank you very much.

5       (Proceedings concluded at 9:59 a.m.)

6                      CERTIFICATE

7     I certify that the foregoing is a correct transcript from

8  the record of proceedings in the above-entitled matter.

9  */s/ Elia E. Carrión*          *30th day of July, 2021*

10 *Elia E. Carrión*                        *Date*
   *Official Court Reporter*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25