UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, ) | |
| ) | |
| Plaintiff-Judgment Debtor/ ) | |
| Citation Respondent, ) | |
| ) | |
| v. ) | |
| ) | No. 18 C 6447 |
| WILLIAM MULLINS, ) | |
| ) | Judge Thomas M. Durkin |
| Defendant-Judgment Creditor, ) | |
| and ) | |
| ) | |
| COLETTE PELISSIER, ) | |
| ) | |
| Third-party representative of ) | |
| the corporate citation respondent. ) | |

**JUDGMENT CREDITOR'S OMNIBUS**
**MOTION FOR A TURNOVER ORDER AND**
**OTHER DECLARATORY AND INJUNCTIVE RELIEF**

Judgment creditor, William Mullins, through the Peacock Law Group, pursuant to Fed. R. Civ. P. 69 and Ill. S. Ct. R. 277(h), moves the court for a turnover order, and for other declaratory and injunctive relief arising from misconduct relating to the court's Asset Restraining Order. Dkt 117. In support of his motion, Mullins states:

**BACKGROUND COMMON TO ALL REQUESTS**

1.      The court entered a $48,656.73 *attorney's fees* judgment for prevailing defendant William Mullins pursuant to the Copyright Act 17 U.S.C. § 505. Malibu Media opposed an award of fees. The district court premised its award on the fact

that Malibu Media "repeatedly refused to turn over specific information" undergirding its claims, and that rendered plaintiff's complaint frivolous and objectively unreasonable. The court found and ordered a monetary award to both to compensate Mullins' injury, defending a meritless claim, and inversely to deter Malibu Media (who has filed thousands of such lawsuits as the one Mullins was forced to defend). Dkt. 99. The court's judgment unfortunately did not deter Malibu Media from continuing to be sphinxlike and unresponsive in the face of court process.

2.      Malibu Media ignored Mullins' demand for payment of the judgment. Dkt. 110 at p. 7. Mullins then obtained a citation to discover assets, designating Colette Pelissier as the corporate representative of Malibu Media, and Mullins served Malibu Media with the citation on April 20, 2021. *Id*. (exhibit reproducing the demand, refusal, and consequent citation to discover assets served by agreement).

3.      Over the course of the next four months—May through August 2021—Pelissier (on behalf of the judgment debtor) proceeded to carry a series of "dodges" to make it appear as though Malibu Media was cooperating with Mullins' asset investigation. However, Pelissier was actively undermining that investigation by not providing any documents and by diverting Malibu Media's assets to her husband Brigham Field's business, ZO Digital, LLC.

4.      Despite Malibu Media and Pelissier intransigence, Mullins uncovered Malibu Media's asset diversion and via an ex parte motion (Dkt. 115) obtained a restraining order from the district court. Dkt. 117. The restraining order was directed to Malibu Media, ZO Digital, and Epoch.com, LLC. Epoch was believed to

process credit transactions for Malibu Media's website, X-Art.com and paying them to ZO Digital. The order further restrained the "X-Art.com Proceeds,"[1] and required the enjoined parties to produce specified documents (by August 30, 2021) and answer specified interrogatories (by September 13, 2021). Dkt. 117, Asset Restraining Order, ¶¶ G and K.

5.    As required by the court's Asset Restraining Order, Epoch provided documents and sworn answers to interrogatories, but Malibu Media and ZO Digital have not provided documents and have not provided sworn answers to interrogatories in the period the Asset Restraining Order allowed.

### *The non-answers provided by Malibu Media and ZO Digital*

6.    ZO Digital moved to vacate the Asset Restraining Order. Dkt. 120. Mullins responded to that filing. Dkt. 123. The court has yet to rule on ZO Digital's Motion. Mullins addressed ZO Digital's attack on the court's restraining order and showed that ZO Digital claimed no ownership interest in either the X-Art.com copyright material or ownership in the X-Art.com Proceeds. Mullins Response at pp. 7-8. Mullins further demonstrated that ZO Digital is a mere unsecured creditor to Malibu Media and in any case ZO Digital's claim, should it choose to make one, is subordinate to Mullins' status as a judgment lien creditor. *Id.*

7.    Regarding Malibu Media, since being served with Asset Restraining Order on August 14, 2021, Pelissier "ditched" the debtor examination the district

---

[1] "X-Art Proceeds" is a term under the court's asset restraining order defined as "the proceeds of X-Art.com's website's commercial activity." Dkt. 117 at ¶ 5.

court had ordered her to attend on August 23, 2021. *See* Dkt. 123, Mullins' Response at p. 3 (describing the subterfuges Pelissier used to avoid testifying). One of Pelissier's subterfuges was to "file" a dilatory extension motion on behalf of Malibu Media, claiming it needed time to find an attorney. *Id*. at pages 23-35 (the "motion" Pelissier emailed to Mullins but did not file with the court). As to the allegation that it was diverting assets, Pelissier's "motion" states that "neither I nor Malibu Media have hidden, nor diverted assets . . . ." *Id*. at 33. However, Pelissier does not address or try to explain the fact that despite having <u>no</u> ownership interest in either the X-Art.com copyright material or in the X-Art.com Proceeds, ZO Digital nonetheless collects 100% of those proceeds.

### ***Epoch's Answer***

8.     In its sworn answer, Epoch states that when served with the Asset Restraining Order and with respect to "any account connected with X-Art.com," it possessed "a merchant processing account denominated in Epoch's books and records as account number M-392148 in the name of ZO Digital…" and under the applicable contract had been paying <u>ZO Digital</u> weekly (on Thursdays). Exhibit A, Epoch's Amended Answer at p. 1. Epoch's answer further states that, through September 21, 2021, it "has restrained a total of $22,062.19." *Id*.

9.     Epoch produced documents showing that from about 2013 to 2017, that same merchant account (M-392148) was in the name of <u>Malibu Media</u> and that previous contract specified Epoch was to make the weekly payments to a Malibu Media-denominated bank account at Bank of America.

10.     The documents further confirm that on March 3, 2017, Malibu Media made a 100% assignment of its Epoch contract rights to ZO Digital; the 2017 assignment/contract specified a ZO Digital-denominated bank account at Wells Fargo Bank into which Epoch was to make the weekly deposits. The 2017 contract does not specify the consideration for the assignment only that it was "[f]or good and valuable consideration, the receipt of which is hereby acknowledged."

11.     Both in the documents it produced and as confirmed by Epoch, from 2017 until August 14, 2021, when it was served with the Asset Restraining Order, there was no change in the identified depository bank (Wells Fargo) or identified bank account owner (ZO Digital) into which Epoch deposited the weekly X-Art.com net proceeds. Email from Epoch's Chief Compliance Officer to the undersigned dated 8/18/21.

12.     Epoch's books and records did not indicate the existence of any party, including Epoch, that claimed a lien in or otherwise asserted a security interest against the X-Art.com Proceeds. No party filed a claim (lien or otherwise) against X-Art.com Proceeds in the time allotted by the court. Dkt. 117, Asset Restraining Order, ¶¶ G and K.

13.      Epoch's books and records indicate that between February 17, 2021, when this court entered its judgment, and August 14, 2021, when it was served with the restraining order, Epoch paid ZO Digital a total of $125,397.07 (net of fees and

charges) from the X-Art.com Proceeds.[2]  Moreover, from the time Mullins served Malibu Media with a citation to discover assets—April 20, 2021, and a judgment lien arose as a matter of law on all Malibu Media assets, Epoch paid ZO Digital $83,210.64 (which is a subset of the previously stated $125,397.07 and which Epoch paid out from 4/22/21 through 8/12/21).  *Id.*

14.    ZO Digital received, post-citation, $83,210.64 in funds encumbered by Mullins' judgment lien and to which Mullins had and has a superior interest.

## REQUESTS AND DISCUSSION

### Request One — Declaratory Relief as to the X-Art.com Proceeds

15.    In his motion seeking a restraining order, Mullins asserted that the X-Art.com Proceeds were the property of Malibu Media, and he supported the factual assertion with citations to sworn testimony by Colette Pelissier and Brigham Field. Third Declaration of Counsel, ¶¶9-14 (Dkt. 115 at p. 18).  On that record, the court granted the restraining order finding that there was good reason to believe that Mullins would likely succeed on the merits of its assertion that the X-Art.com Proceeds belonged to Malibu Media.  Dkt. 117, Asset Restraining Order at ¶¶ 7-10.

16.    Neither Malibu Media nor ZO Digital contested the fact that the X-Art.com Proceeds are Malibu Media's property.  Both Pelissier (on behalf of Malibu Media) and Field (on behalf of ZO Digital) submitted and/or filed pleadings in this

---

[2] Exhibit B, Epoch's Amended Declaration of Custodian of Records, including a summary spreadsheet showing the gross receipts and net payouts from Epoch to ZO Digital.  The $125,397.07 figure quoted in the text is the sum of lines from February 18, 2021, to August 12, 2021.

matter *after* being served with the court's Asset Restraining Order. *See* ZO Digital's Motion to Vacate or alternatively for an extension of time (Dkt. 120)) and Malibu Media's "motion to continue or extend time." Dkt. 123, pages 23-35 (Pelissier emailed the "motion" to the undersigned (rather than filing with the court). Neither filing contested the fact that the X-Art.com Proceeds are Malibu Media's property, and therefore Malibu Media and Zo Digital both conceded the issue.[3]

17.    The documents provided by Epoch support the conclusion that the X-Art.com Proceeds are Malibu Media's property. *See supra* ¶¶ 9-11. From about 2013 to 2017, the merchant account for X.Art.com, and the direction to pay its net revenue, were both in the name of Malibu Media consistent with Pelissier and Field's prior sworn statements regarding ownership of the website copyrighted material. The March 2017, assignment of 100% of the website's revenue from Malibu Media to ZO Digital did not discuss or provide for a change in ownership; and, as indicated in the previous paragraph, neither Pelissier nor Field has even suggested the 2017 agreement represented a change in the ownership of X.Art.com or the revenue stream it generated.

18.    Based on the foregoing, Mullins requests that the district court make the following declaratory rulings:

>    a.    From at least 2013 until the present, Malibu Media has been the fee simple owner of both the copyrighted material offered via the X-Art.com website and the resulting X-Art.com Proceeds.

---

[3] In citation proceedings, "'a frivolous motion buys the movant no time.'" *Divane v. Krull Elec. Co.*, 194 F.3d 845, 849 (7th Cir. 1999) (*quoting Resolution Tr. Corp. v. Ruggiero*, 994 F.2d 1221, 1227 (7th Cir. 1993).

    b.  Since it served Malibu Media with a citation to discover assets on April 20, 2021, Mullins acquired an execution lien on the X-Art.com Proceeds, including the net proceeds Epoch pays under its contract with the owner of the merchant processing account denominated in its records as account number M-392148.

    c.  Since April 20, 2021, Mullins' execution lien has been and is a priority lien in and on the X-Art.com Proceeds because no other party has asserted a lien or other claim against the X-Art.com Proceeds.

19.    Mullin further asks the court to grant injunctive relief set out below based on these declarations of legal rights.

### Request Two — In re Epoch.com, LLC

20.    Epoch's sworn answer and documents indicate that under its contract governing the processing of X-Art.com Proceeds, it is obligated to pay "on a weekly basis the Net Client Payment as that term is defined in the applicable contract." Exhibit A, p. 1. Exhibit B (spreadsheet showing weekly draws). They further indicate that Epoch accumulated five weekly payments through September 16, 2021, that total $22,062.19. Ex. B.

21.    Consequently, based on the foregoing and the findings requested in Part One, Mullins seeks an order requiring that Epoch turn over to Mullins the accumulated net weekly payments and thereafter on a weekly basis the prior week's "Net Client Payment" until such time as the judgment, and any amended judgment, is paid in full. Along with each remittance, Epoch should identify the account's gross revenue, and all fees and withholdings that resulted in the "Net Client Payment."

22. The undersigned has agreed with his client to receive the funds Epoch turns over to Mullins.

23. Consequently, Mullins seeks an order that Epoch issue payments to: "The Peacock Law Group Client Trust Fund Account" and tender such payments in the manner set forth in paragraph I of the court's Asset Restraining Order and do so within five business days of coming due under the contract.

24. Mullins does not waive and thus reserves all other claims he may have against Epoch, including, but not limited to, a claim for the recovery of at least approximately $14,603.19 in funds to which Mullins claims a superior lien and a claim for tortious interference with Mullins' court-ordered recovery rights (both of which Mullins previously conveyed in writing to Epoch).

**Request Three — In re ZO Digital**

25. Since the entry of judgment (2/17/21) and the initiation of supplementary proceedings (4/20/21), ZO Digital has received a total of $125,397.07 of which $83,210.64 was and is subject to Mullins' judgment lien. *Supra* ¶¶ 13-14.

26. Since it was served with the Asset Restraining Order on August 14, 2021, ZO Digital, a designated "Enjoined Party" (Dkt. 117 at ¶ A) under the court's restraining order, appeared through Brigham Field. Dkt 120 at p. 1 (identifying Field as the "third part representative" of Zo Digital). Field, on behalf of ZO Digital, submitted a dilatory motion to vacate the restraining order, but Field otherwise:

      a. failed to produce required documents (*id*. at G) including documents relating to the X-Art.com Proceeds, the Epoch.com, LLC merchant

account, the CoinPayments merchant account,[4] and the Wells Fargo Bank account into which Epoch has deposited over $125,000 of money identified in the restraining order as the kind of X-Art.com Proceeds subject to restraint.  Dkt. 117 at ¶ 5

b. failed to file a required sworn answer (*id*. at K), including identifying X-Art.com Proceeds in its possession at Wells Fargo Bank and at CoinPayments.

c. failed to retain counsel willing to file an appearance in this matter.

27. Based on the foregoing Mullins seeks a declaration that ZO Digital is in default of multiple obligations under the asset restraining order.

28. Because of its default, Mullins asks the court to enjoin ZO Digital from further making any objection in these proceedings unless and until ZO Digital: (1) appears by an attorney; (2) restores all diverted funds, making those funds available for the satisfaction of Mullins' judgment; (3) produces all documents specified in the asset restraining order; and (4) files a sworn answer as specified in the asset restraining order.

29. Mullins further requests that the court specifically find and declare that ZO Digital's failure to obey this court's order to produce documents and restrain funds has injured Mullins.  On September 10, 2021, Mullins in writing warned ZO Digital that its defaults in producing documents and filing a sworn answer would subject it

---

[4] CoinPayments was a company identified as processing crypto-currency payments for X-Art.com and thus being "Proceeds," but the CoinPayments ***account*** (presumably in Malibu Media or ZO Digital's name) alone was identified as subject to restraint.  CoinPayments is not "Enjoined Party" as it is domiciled in Estonia (counsel wrongly identified it as Lithuanian). Dkt. 117 at ¶¶ 5 and A.

10

to entry of a conditional judgment under Illinois law for the unpaid judgment amount, as requested in the following paragraph.

30.     To remedy the injury caused by ZO Digital's disobedience, Mullins requests that the court:

a. Enter a conditional judgment against ZO Digital for the unpaid judgment amount.[5]

b. issue a rule to show cause why Brigham Field, as the designated representative of ZO Digital should not be held in contempt of court for failing to produce documents and submit an answer identifying the funds ZO Digital has restrained.

c. Order that on or before a date certain Field on behalf of Zo Digital turn over to the Clerk of Court to hold in escrow an amount equal to the funds on deposit at the ZO Digital Wells Fargo account on August 14, 2021, when ZO Digital was served with the Asset restraining Order.

d. Order that on or before a date certain Field on behalf of Zo Digital turn over to Mullins all documents identified in and responsive to the court's restraining order.

e. Order ZO Digital barred from further objection until it has remedied the defaults as requested here and above (¶28).

---

[5] Under the law, to remedy a default, the district court has authority to enter a conditional judgment against a third-party that fails to appear and/or answer a garnishment. Subsequent process is then sent to the garnishee ordering it to show cause why the judgment should not be made final. *See Anthony Marano Co. v. A. Stallone, Inc.,* No. 00 C 8019, 2002 U.S. Dist. LEXIS 24656, at *19 (N.D. Ill. Dec. 23, 2002) (relying upon 735 Ill. Comp. Stat. § 5/12-706 (providing "court may enter a conditional judgment against the garnishee for the amount due upon the judgment against the judgment debtor")).

11

### Request Four — In re Malibu Media

31.     At all times relevant to this matter, Malibu Media had the financial means to satisfy the district court's $48,656 judgment.  Rather than pay, Malibu Media chose to <u>not</u> cooperate in the captioned supplemental proceedings by producing <u>no</u> documents, twice failing to appear for a debtor examination, and a third time failing to appear despite the court ordering Pelissier to do so or face arrest.  Malibu Media deliberately failed on multiple occasions to disclose documents related to the Epoch merchant account for X-Art.com and documents showing that it was diverting X-Art.com Proceeds to ZO Digital.  Malibu Media has thus hindered, delayed, and interfered with these proceedings.

32.     Since the entry of judgment and the initiation of supplementary proceedings, Malibu Media deliberately failed on multiple occasions to thwart the weekly transfer of the X-Art.com Proceeds to ZO Digital.  Malibu Media allowed $83,210.64 to be diverted despite such transfers being specifically prohibited by the citation to discover assets Mullins served on Malibu Media and subject to his judgment lien.

33.     Since the entry of judgment and the initiation of supplementary proceedings, Malibu Media fired its counsel of record and has not obtained a substitute, thus disabling itself from litigating in this district court.  *See United States v. Hagerman*, 545 F.3d 579 (7th Cir. 2008) (LLC litigates in district court *only* with an attorney).

34.     Based on the foregoing, Mullins seeks a declaration that Malibu Media is in default of multiple obligations under the citation to discover assets.

35.     Because of its default, Mullin asks the court to enjoin Malibu Media from further making any objection in these proceedings unless and until Malibu Media: (1) appears by an attorney; (2) restores all diverted funds, making those funds available for the satisfaction of Mullins' judgment; (3) produces all documents specified in the rider to the citation to discover assets; and (4) makes Pelissier available for a debtor examination at a time convenient to all parties.

**Request Five — In re Attorney's Fees**

36.     Pursuant to Local Rule 54.3(C),[6] Mullins requests that the court provide a briefing schedule and a short procedure for Mullins to present a motion for legal fees that would also seek to amend the existing judgment in accord with any allowance of additional fees.  Pursuant to Fed R. Civ. P 54(d)(2)(C), Mullins further requests that he be allowed to bifurcate his presentation, moving first for a finding of legal liability and then, if successful, providing the court with a submission on the value of those legal services.

---

[6] Local Rule 54.3 entitled "Attorney's Fees and Related Non-taxable Expenses" provides in part:

> "A motion may be filed seeking instructions from the court where it appears that the procedures set forth in this rule ["Attorney's Fees and Related Non-taxable Expenses cannot be followed within the time limits established by the rule [FRCP Rule 54(d)(2) re attorney's fee] or by order of court because of . . . (3) other disputes between the parties that cannot be resolved after good faith attempts."

N.D. Ill. Loc., R 54.3

37.     Because this motion merely seeks to establish a procedure for the establishment of fees, Mullins will not belabor the point: Malibu Media could have paid the court's judgment months ago but engaged in bad faith tactics in this supplemental proceeding that have been documented by the undersigned in three sworn declarations. Malibu Media forced Mullins to extraordinary lengths, including obtaining a restraining order, without which he would have recovered nothing.

38.     Mullins is prepared to argue at least two legal bases for fees. First as an extension of the law and logic of court's memorandum opinion awarding Mullins fees as a prevailing defendant under the Copyright Act.  Dkt. 99 (relying upon 17 U.S.C. § 505).  It makes no sense to award fees for frivolous filing made pre-judgment, if the "judgment debtor" can thwart that judgment by continuing to act in bad faith, make frivolous and dilatory filings, and hide assets subject to the court's judgment, lien, and process.  Malibu Media's continued intransigence and bad faith effectively "taxed" Mullins and co-counsel whose reimbursement is net of the time, effort, and expenses they must unnecessarily spend to achieve recompense in these proceedings.

39.     Second, "a court may award attorneys' fees as part of the penalty under §5/2-1402(f)(1)."[7] *W. Bend Mut. Ins. Co. v. Belmont State Corp*., 712 F.3d 1030, 1035

---

[7] In relevant part 2-1401(f)(1) provides:

The court may punish any party who violates the restraining provision of a citation as and for a contempt, or if the party is a third party may enter judgment against him or her in the amount of the unpaid portion of the judgment and costs allowable under this Section, or in the amount of the value of the property transferred, whichever is lesser.

735 Ill. Comp. Stat. Ann. 5/2-1402(f)(1).

(7th Cir. 2013) (*citing Mid-American Elevator Co. v. Norcon, Inc.*, 287 Ill. App. 3d 582, 591, 679 N.E.2d 387, 223 Ill. Dec. 202 (1996)).  Pelissier violated the restraining provision of the Malibu Media citation by repeatedly allowing the weekly transfers to her husband's company after being served with the citation.

40.    Mullins has throughout these supplemental proceedings advised the district court and advised Malibu Media that the latter's misconduct forced Mullins' counsel to expend tens of thousands of dollars in billable hours to achieve a result the law expected and demanded.  Without the court ordering a quick and efficient means to determine liability and assess fees, Mullins will be that much further injured.

WHEREFORE, for the reasons set forth above, the judgment creditor requests that the court grant the specified relief in each of the five parts.

Respectfully submitted,

THE PEACOCK LAW GROUP

By: s/ Joseph A. Stewart
    JOSEPH A. STEWART
    Principal Attorney
    161 North Clark Street, Suite 1600
    Chicago, Illinois 60601
    (312) 741-1070
    joseph.stewart@thepeacocklawgroup.com

**Table of Exhibits**
**A**    Epoch's Amended Answer
**B**    Epoch's Amended Declaration of Custodian/Spreadsheet

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MALIBU MEDIA, LLC,  )
                    )
    Plaintiff-Judgment Debtor,  )
                    )  No. 18 C 6447
    v.  )
                    )  Judge:  Judge Thomas M. Durkin
WILLIAM MULLINS  )
                    )
    Defendant-Judgment Creditor.  )

### AMENDED ANSWER OF THIRD PARTY TO ASSET RESTRAINING ORDER

I, Adriana Dulic, the Chief Compliance Officer of respondent, Epoch.com, LLC, state under penalty of perjury as follows:

The respondent is a limited liability company organized under the laws of the State of Wyoming.  On August 14, 2021, respondent was served with the Asset Restraining Order (henceforth ARO).  With respect to the merchant accounts (connected with X-art.com), on the day respondent was served with the ARO, respondent had in its possession or control the following property: a merchant processing account denominated in Epoch's books and records as account number M-392148 in the name of ZO Digital that under the applicable contract requires Epoch among other things to pay ZO Digital on a weekly basis the Net Client Payment as that term is defined in the applicable contract.  Through September 21, 2021, has restrained a total of  $22,062.19.

1.    **Financial Accounts**

**Account 1**                **Account 2**

Account type: Merchant Processing Account    Account type:_____

Account No.: M-392148    Account No.:_____

Amount: weekly payout of net proceeds    Amount: $_____

Amount withheld: $22,062.19    Amount withheld: $_____



# EXHIBIT A

2.    **Safety Deposit Box**

Box No.:    N/A

Owners other than the judgment debtor:

3.  Detail other personal property in the respondent's possession or control:
_____N/A

.

4.   Are there prior garnishments or other court-ordered withholdings which are presently in effect including, but not limited to child support and alimony?
Yes ____ No X̲

If the answer is yes, describe below.

.

5.   Does the respondent have custody, control or possession of any property, other than accounts, safety deposit boxes or other personal property, now owed or to be paid in the future, in which the judgment debtor has an interest?
Yes ___ No X̲

If yes, please describe below (continue on additional sheets if necessary):

6.   Check and complete the applicable line below if you deny that you hold property subject to this ARO.

_____   The respondent has the following objections, defenses, or set-offs to the United States' right to apply Respondent's indebtedness to defendant to the United States' claim:

_____   On the date the respondent was served with the ARO, Respondent was not indebted or under liability to the Judgment-Debtor, and/or did not have in its possession or control any assets, income or other property belonging to respondent, or in which the Judgment-Debtor has an interest.

7.  The original Answer must be delivered in person or sent by first-class mail to the Peacock Law Group, 161 North Clark Street, Suite 1600, Chicago, IL, 60601.

8.  The Respondent mailed a copy of this Answer by first-class mail to:

(A)  Malibu Media, LLC, at 11802 Elice Street, Malibu, CA, 90265

## <u>VERIFICATION</u>

Pursuant to 28 U.S.C. 1746, I verify under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of September 2021.

_____

Adriana Dulic

UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC<br><br>             v.<br><br>WILLIAM MULLINS | CASE NUMBER: 18 C 6447 |

AMENDED DECLARATION OF CUSTODIAN OF RECORDS

I, Adriana Dulic, hereby declare under penalty of perjury that the following statements are true and correct to the best of my knowledge and belief:

1.     I am a duly authorized custodian of records in the employ of Epoch.com, LLC, with authority to certify said records.

2.     The accompanying records, bates-stamped "E-0001 through E-00033," are the originals or true copies of records made and kept in the regular scope and course of my employer's regularly conducted activity and constitute all of the records called for in the citation heretofore served in this matter.

3.     The entries contained in the original records were prepared by persons having actual knowledge thereof, or with information transmitted by a person with actual knowledge, at or near the times of the occurrences of the matters which they purport to describe.

4.     Regarding the accounting records Mullins seeks, Epoch offers the attached summary in the form of a spreadsheet, which accurately summarizes the content of voluminous records Epoch keeps in the ordinary course of its business (per Fed. R. Evid. 803(6)) that cannot be conveniently examined in court. Pursuant to Federal Rules of Evidence 1006, Epoch will, to the extent reasonably possible, make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place.

SIGNED AND EXECUTED this 22nd day of September 2021.

_____

Name:  Adriana Dulic
Custodian of Records for Epoch.com, LLC


EXHIBIT B

| MC | Gross Sales | Chargebacks | Credits | Processing Fees | Chargeback Fees | Credit Fees | Reserves | Wire Fees | Card Renewal | Payment Amount | Payout Date | Payment Method |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| M-392148 | 5,488.50 | (119.90) | (68.95) | (806.34) | (25.00) | (2.00) | - | (30.00) | (250.00) | 4,186.31 | 02/04/21 | Wire Payout |
| M-392148 | 7,535.25 | (109.90) | (219.85) | (1,104.42) | (25.00) | (3.00) | - | (30.00) | (250.00) | 5,793.08 | 02/11/21 | Wire Payout |
| M-392148 | 5,331.60 | (99.95) | (99.95) | (783.72) | (12.50) | (1.00) | - | (30.00) | (250.00) | 4,054.48 | 02/18/21 | Wire Payout |
| M-392148 | 5,352.60 | - | - | (784.28) | - | - | - | (30.00) | (250.00) | 4,288.32 | 02/25/21 | Wire Payout |
| M-392148 | 7,706.90 | - | (99.95) | (1,128.01) | - | (1.00) | - | (30.00) | (19.23) | 6,428.71 | 03/04/21 | Wire Payout |
| M-392148 | 5,975.00 | - | (79.90) | (873.94) | - | (2.00) | - | (30.00) | (19.23) | 4,969.93 | 03/11/21 | Wire Payout |
| M-392148 | 5,731.40 | - | (139.65) | (835.73) | - | (7.00) | - | (30.00) | (19.23) | 4,699.79 | 03/18/21 | Wire Payout |
| M-392148 | 5,788.00 | - | (104.90) | (850.07) | - | (2.00) | - | (30.00) | (19.23) | 4,781.80 | 03/25/21 | Wire Payout |
| M-392148 | 5,786.00 | (79.90) | - | (848.32) | (25.00) | - | - | (30.00) | (19.23) | 4,783.55 | 04/01/21 | Wire Payout |
| M-392148 | 5,230.95 | - | (99.95) | (768.74) | - | (1.00) | - | (30.00) | (19.23) | 4,312.03 | 04/08/21 | Wire Payout |
| M-392148 | 4,640.50 | (29.95) | - | (681.00) | (12.50) | - | - | (30.00) | (19.23) | 3,867.82 | 04/15/21 | Wire Payout |
| M-392148 | 5,765.89 | (99.95) | - | (850.16) | (12.50) | - | - | (30.00) | (19.23) | 4,754.05 | 04/22/21 | Wire Payout |
| M-392148 | 5,403.50 | - | - | (787.67) | - | - | - | (30.00) | (19.23) | 4,566.60 | 04/29/21 | Wire Payout |
| M-392148 | 5,816.45 | - | (29.95) | (853.76) | - | (1.00) | - | (30.00) | (19.23) | 4,882.51 | 05/06/21 | Wire Payout |
| M-392148 | 6,417.50 | - | - | (944.73) | - | - | - | (30.00) | (19.23) | 5,423.54 | 05/13/21 | Wire Payout |
| M-392148 | 5,538.25 | - | (29.95) | (809.23) | - | (1.00) | - | (30.00) | (19.23) | 4,648.84 | 05/20/21 | Wire Payout |
| M-392148 | 6,001.55 | - | - | (881.69) | - | - | - | (30.00) | (19.23) | 5,070.63 | 05/27/21 | Wire Payout |
| M-392148 | 5,617.80 | - | - | (820.11) | - | - | - | (30.00) | (19.23) | 4,748.46 | 06/03/21 | Wire Payout |
| M-392148 | 6,646.05 | (39.95) | - | (973.74) | (12.50) | - | - | (30.00) | (19.23) | 5,570.63 | 06/10/21 | Wire Payout |
| M-392148 | 6,724.55 | (99.95) | (39.95) | (988.32) | (12.50) | (1.00) | - | (30.00) | (19.23) | 5,533.60 | 06/17/21 | Wire Payout |
| M-392148 | 5,973.15 | - | - | (874.48) | - | - | - | (30.00) | (19.23) | 5,049.44 | 06/24/21 | Wire Payout |
| M-392148 | 6,385.80 | (79.95) | - | (937.65) | (12.50) | - | - | (30.00) | (19.23) | 5,306.47 | 07/01/21 | Wire Payout |
| M-392148 | 4,888.50 | (19.00) | (150.00) | (716.26) | (12.50) | (1.00) | - | (30.00) | (19.23) | 3,940.51 | 07/08/21 | Wire Payout |
| M-392148 | 5,213.65 | - | - | (760.45) | - | - | - | (30.00) | (19.23) | 4,403.97 | 07/15/21 | Wire Payout |
| M-392148 | 6,149.05 | - | - | (899.93) | - | - | - | (30.00) | (19.23) | 5,199.89 | 07/22/21 | Wire Payout |
| M-392148 | 6,553.95 | - | - | (964.00) | - | - | - | (30.00) | (19.23) | 5,540.72 | 07/29/21 | Wire Payout |
| M-392148 | 4,981.65 | - | (199.90) | (729.17) | - | (2.00) | - | (30.00) | (19.23) | 4,001.35 | 08/05/21 | Wire Payout |
| M-392148 | 5,531.45 | - | (99.95) | (811.84) | - | (1.00) | - | (30.00) | (19.23) | 4,569.43 | 08/12/21 | Wire Payout |
| M-392148 | 5,419.65 | (199.90) | - | (795.10) | (25.00) | (1.00) | - | - | (19.23) | 4,379.42 | 08/19/21 | On hold pursuant to court order. |
| M-392148 | 4,747.90 | - | - | (700.10) | - | - | - | - | (19.23) | 4,028.57 | 08/26/21 | On hold pursuant to court order. |
| M-392148 | 4,457.85 | (64.90) | - | (656.94) | (25.00) | - | - | - | (19.23) | 3,691.78 | 09/02/21 | On hold pursuant to court order. |
| M-392148 | 6,481.45 | - | - | (951.04) | - | - | - | - | (19.23) | 5,511.18 | 09/09/21 | On hold pursuant to court order. |
| M-392148 | 5,358.80 | - | (99.95) | (787.38) | - | (1.00) | - | - | (19.23) | 4,451.24 | 09/16/21 | On hold pursuant to court order. |