9UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
|     Plaintiff-Judgment Debtor/ Citation Respondent, | ) ) ) |
|     v. | ) ) |
| WILLIAM MULLINS, | )   No. 18 C 6447 ) |
|     Defendant-Judgment Creditor, and | )   Judge Thomas M. Durkin ) ) |
| COLETTE PELISSIER, | ) ) |
|     Third-party representative of the corporate citation respondent. | ) ) |

**ORDER ON OMNIBUS
MOTION FOR TURNOVER ORDER AND
<u>OTHER DECLARATORY AND INJUNCTIVE RELIEF</u>**

    This matter is before the court on judgment creditor William Mullins' Omnibus Motion for Turnover Order, *etc*. Dkt 125. The court previously issued an asset restraining order (Dkt. 117), and the Omnibus Motion seeks permanent relief in the form of a turnover order from assets found in the possession of Epoch.com, LLC. Epoch is withholding from payment what the court's restraining order defines as "X-Art.com Proceeds." Pursuant to the restraining order, Malibu Media and ZO Digital were also required to produce documents and restrain X-art.com Proceeds, but they failed to do so. The Omnibus Motion seeks a declaration of rights, a turnover order, and further injunctive relief, including a procedure for the award of statutory

penalties. Epoch filed an appearance, but Malibu Media, Zo Digital, Colette Pelissier, and Brigham Field neither filed an appearance through counsel nor appeared individually at the October 8, 2021, hearing, despite one week's notice. Dkt. 127 (certificate of service). Being fully advised by the motion and the arguments of counsel at a hearing that was held on October 7 and October 8, 2021,

THE COURT HEREBY FINDS THAT:

The court entered a $48,656.73 judgment for prevailing defendant William Mullins pursuant to the Copyright Act 17 U.S.C. § 505. Malibu Media opposed an award of fees. The district court premised its award on the fact that Malibu Media "repeatedly refused to turn over specific information" undergirding its claims, and that rendered plaintiff's complaint frivolous and objectively unreasonable. The court found and ordered a monetary award to both to compensate Mullins' injury, defending a meritless claim, and inversely to deter Malibu Media (who has filed thousands of such lawsuits as the one Mullins was forced to defend). Dkt. 99. The court's judgment unfortunately did not deter Malibu Media from continuing to be sphinxlike and unresponsive in the face of court process.

Malibu Media ignored Mullins' demand for payment of the judgment. Dkt. 110 at p. 7. Mullins then obtained a citation to discover assets, designating Colette Pelissier as the corporate representative of Malibu Media, and Mullins served Malibu Media with the citation on April 20, 2021. *Id.* (exhibit reproducing the demand, refusal, and consequent citation to discover assets served by agreement).

Over the course of the next four months—May through August 2021—Pelissier (on behalf of the judgment debtor) proceeded to carry out a series of "dodges" to make it appear as though Malibu Media was cooperating with Mullins' asset investigation. However, Pelissier was actively undermining that investigation by not providing any documents and by diverting Malibu Media's assets to her husband Brigham Field's business, ZO Digital, LLC.

Mullins uncovered Malibu Media's asset diversion and via an ex parte motion (Dkt. 115) obtained a restraining order from the district court. Dkt. 117. The restraining order was directed to Malibu Media, ZO Digital, and Epoch.com, LLC. Epoch processes credit transactions for Malibu Media's website, X-Art.com and paying them to ZO Digital. The order further restrained the "X-Art.com Proceeds"—defined as "the proceeds of X-Art.com's website's commercial activity" (*id.* at ¶ 5)—and required the enjoined parties to produce specified documents and specified interrogatories. *Id.* at ¶¶ G and K.

As required by the court's Asset Restraining Order, Epoch provided documents and sworn answers to interrogatories, but Malibu Media and ZO Digital have not provided documents and have not provided sworn answers to interrogatories in the period the Asset Restraining Order allowed.

ZO Digital moved to vacate the Asset Restraining Order. Dkt. 120. Mullins addressed ZO Digital's attack on the court's restraining order and showed that ZO Digital claimed no ownership interest in either the X-Art.com copyright material or ownership in the X-Art.com Proceeds. Mullins Response, Dkt. 123 at pp. 7-8. Mullins

3

further demonstrated that ZO Digital is in any case a subordinate claimant to Mullins' status as a judgment lien creditor. *Id*.

Regarding Malibu Media, since being served with Asset Restraining Order on August 14, 2021, Pelissier "filed" a dilatory extension motion on behalf of Malibu Media, claiming it needed time to find an attorney. *See* Dkt. 123, Mullins' Response at p. 3 (describing Pelissier's efforts to avoid testifying) and at pages 23-35 (the "motion" Pelissier emailed to Mullins but did not file with the court). As to the allegation that it was diverting assets, Pelissier's "motion" states that "neither I nor Malibu Media have hidden, nor diverted assets . . . . " *Id*. at 33. However, Pelissier does not address or try to explain the fact that despite having no ownership interest in either the X-Art.com copyright material or in the X-Art.com Proceeds, ZO Digital nonetheless collects 100% of those proceeds.

In its sworn answer, Epoch states that when served with the Asset Restraining Order and with respect to "any account connected with X-Art.com," it possessed "a merchant processing account denominated in Epoch's books and records as account number M-392148 in the name of ZO Digital..." and under the applicable contract had been paying ZO Digital weekly (on Thursdays). Exhibit A, Epoch's Amended Answer at p. 1. Epoch's answer further states that, through September 21, 2021, it "has restrained a total of $22,062.19." *Id*.

Epoch produced documents showing that from about 2013 to 2017, that same merchant account (M-392148) was in the name of Malibu Media and that previous

4

contract specified Epoch was to make the weekly payments to a Malibu Media-denominated bank account at Bank of America.

The documents further confirm that on March 3, 2017, Malibu Media made a 100% assignment of its Epoch contract rights to ZO Digital; the 2017 assignment/contract specified a ZO Digital-denominated bank account at Wells Fargo Bank into which Epoch was to make the weekly deposits. The 2017 contract does not specify the consideration for the assignment only that it was "[f]or good and valuable consideration, the receipt of which is hereby acknowledged."

Both in the documents it produced and as confirmed by Epoch, from 2017 until August 14, 2021, when it was served with the Asset Restraining Order, there was no change in the identified depository bank (Wells Fargo) or identified bank account owner (ZO Digital) into which Epoch deposited the weekly X-Art.com net proceeds.

Epoch's books and records did not indicate the existence of any party, including Epoch, that claimed a lien in or otherwise asserted a security interest against the X-Art.com Proceeds. No party filed a claim (lien or otherwise) against X-Art.com Proceeds in the time allotted by the court. Dkt. 117, Asset Restraining Order, ¶¶ G and K.

Epoch's books and records indicate that between February 17, 2021, when this court entered its judgment, and August 14, 2021, when it was served with the restraining order, Epoch paid ZO Digital a total of $125,397.07 (net of fees and charges) from the X-Art.com Proceeds. Moreover, from the time Mullins served Malibu Media with a citation to discover assets—April 20, 2021, and a judgment lien

5

arose as a matter of law on all Malibu Media assets, Epoch paid ZO Digital $83,210.64 (which is a subset of the previously stated $125,397.07 and which Epoch paid out from 4/22/21 through 8/12/21). *Id.* ZO Digital received, post-citation, $83,210.64 in funds encumbered by Mullins' judgment lien and to which Mullins had and has a superior interest.

**ACCORDINGLY, IT IS HEREBY DECREED AND ORDERED that the judgment creditor's Omnibus Motion is GRANTED and specifically ORDERED that:**

**Declaratory Relief as to the X-Art.com Proceeds**

1. In his motion seeking a restraining order, Mullins asserted that the X-Art.com Proceeds were the property of Malibu Media, and he supported the factual assertion with citations to sworn testimony by Colette Pelissier and Brigham Field. Third Declaration of Counsel, ¶¶9-14 (Dkt. 115 at p. 18). On that record, the court granted the restraining order finding that there was good reason to believe that Mullins would likely succeed on the merits of its assertion that the X-Art.com Proceeds belonged to Malibu Media. Dkt. 117, Asset Restraining Order at ¶¶ 7-10.

2. Neither Malibu Media nor ZO Digital contested the fact that the X-Art.com Proceeds are Malibu Media's property. Both Pelissier (on behalf of Malibu Media) and Field (on behalf of ZO Digital) submitted and/or filed pleadings in this matter *after* being served with the court's Asset Restraining Order. *See* ZO Digital's Motion to Vacate or alternatively for an extension of time (Dkt. 120)) and Malibu Media's "motion to continue or extend time." Dkt. 123, pages 23-35 (Pelissier emailed

6

the "motion" to the undersigned (rather than filing with the court). Neither filing contested the fact that the X-Art.com Proceeds are Malibu Media's property, and therefore Malibu Media and Zo Digital both conceded the issue. In citation proceedings, "'a frivolous motion buys the movant no time.'" *Divane v. Krull Elec. Co.*, 194 F.3d 845, 849 (7th Cir. 1999) (*quoting Resolution Tr. Corp. v. Ruggiero*, 994 F.2d 1221, 1227 (7th Cir. 1993).

    3.    The documents provided by Epoch support the conclusion that the X-Art.com Proceeds are Malibu Media's property. *See supra* ¶¶ 9-11. From about 2013 to 2017, the merchant account for X.Art.com, and the direction to pay its net revenue, were both in the name of Malibu Media consistent with Pelissier and Field's prior sworn statements regarding ownership of the website copyrighted material. The March 2017, assignment of 100% of the website's revenue from Malibu Media to ZO Digital did not discuss or provide for a change in ownership; and, as indicated in the previous paragraph, neither Pelissier nor Field has even suggested the 2017 agreement represented a change in the ownership of X.Art.com or the revenue stream it generated.

    4.    Based on the foregoing, the district court finds, declares, and rules as follows:

    a. Throughout all times relevant to this dispute up to the present, Malibu Media has been the fee simple owner of both the copyrighted material offered via the X-Art.com website and the resulting X-Art.com Proceeds.

    b. Since it served Malibu Media with a citation to discover assets on April 20, 2021, Mullins acquired an execution lien on the X-

7

        Art.com Proceeds, including the net proceeds Epoch pays under its contract with the owner of the merchant processing account denominated in its records as account number M-392148.

    c. Since April 20, 2021, Mullins' execution lien has been and is a priority lien in and on the X-Art.com Proceeds because no other party is known to have asserted a lien or other claim against the X-Art.com Proceeds.

5. The court grants the injunctive relief set out below based on the foregoing declarations of legal rights and as specified below.

**In re Epoch.com, LLC**

6. Epoch's sworn answer and documents indicate that under its contract governing the processing of X-Art.com Proceeds, it is obligated to pay "on a weekly basis the Net Client Payment as that term is defined in the applicable contract." Exhibit A, p. 1. Exhibit B (spreadsheet showing weekly draws). They further indicate that Epoch accumulated five weekly payments through September 16, 2021, that total $22,062.19. Ex. B.

7. Consequently, given the funds it holds belong to Malibu Media and are subject to Mullins' judgment lien, Epoch shall turn over to Mullins the accumulated net weekly payments, which Epoch reports is $35,194.40 through October 7, 2021. Thereafter, on a weekly basis, Epoch shall continue to withhold the prior week's "Net Client Payment" pursuant to the Asset Restraining Order. Beginning October 14, 2021, Epoch shall identify the account's gross revenue, and all fees and withholdings that resulted in the "Net Client Payment" in a report emailed to the judgment

creditor's counsel each week within 5 business days of October 14, 2021, and within 5 days of each Thursday thereafter.

8. Epoch shall issue payments to: "The Peacock Law Group Client Trust Fund Account" and tender such payments in the manner set forth in paragraph I of the court's Asset Restraining Order and do so within five business days of coming due under the contract.

**In re ZO Digital**

9. Since the entry of judgment (2/17/21) and the initiation of supplementary proceedings (4/20/21), ZO Digital has received a total of $125,397.07 of which $83,210.64 was and is subject to Mullins' judgment lien. Omnibus Motion, ¶¶ 13-14.

10. Since it was served with the Asset Restraining Order on August 14, 2021, ZO Digital, a designated "Enjoined Party" (Dkt. 117 at ¶ A) under the court's restraining order, appeared through Brigham Field. Dkt 120 at p. 1 (identifying Field as the "third part representative" of Zo Digital). Field, on behalf of ZO Digital, submitted a dilatory motion to vacate the restraining order, but Field otherwise:

> a. failed to produce required documents (*id*. at G) including documents relating to the X-Art.com Proceeds, the Epoch.com, LLC merchant account, the CoinPayments merchant account, and the Wells Fargo Bank account into which Epoch has deposited over $125,000 of money identified in the restraining order as the kind of X-Art.com Proceeds subject to restraint. Dkt. 117 at ¶ 5

  b. failed to file a required sworn answer (*id.* at K), including identifying X-Art.com Proceeds in its possession at Wells Fargo Bank and at CoinPayments.

  c. failed to retain counsel willing to file an appearance in this matter.

11. Based on the foregoing ZO Digital is in default of multiple obligations under the asset restraining order. ZO Digital's Motion to Vacate or alternatively for an extension of time (Dkt. 120) is denied for the reasons set forth at the October 8, 2021, hearing.

12. Because of its default, ZO Digital is barred from further making any objection in these proceedings unless and until ZO Digital: (1) appears by an attorney; (2) restores all diverted funds, making those funds available for the satisfaction of Mullins' judgment; (3) produces all documents specified in the asset restraining order; and (4) files a sworn answer as specified in the asset restraining order.

13. The court further finds and declares that ZO Digital's failure to obey this court's order to produce documents and restrain funds has injured Mullins.

14. To remedy the injury caused by ZO Digital's disobedience, the court orders that:

  a. A conditional judgment in the amount of $51,333 is entered against ZO Digital. Fed. R. Civ. P 69; 735 Ill. Comp. Stat. § 5/12-706 (providing "court may enter a conditional judgment against the garnishee for the amount due upon the judgment against the judgment debtor")).

    b. A rule is issued to Brigham Field, as the designated representative of ZO Digital, to show cause why he should not be held in contempt of court for failing to produce documents and submit an answer identifying the funds ZO Digital has restrained. If Field fails to show cause and fails to comply with paragraph 14.c., the court shall hold Field in civil contempt of court.

    c. Field, on behalf of Zo Digital, shall turn over to the Clerk of Court to hold in escrow an amount equal to the funds on deposit at the ZO Digital Wells Fargo account on August 14, 2021, when ZO Digital was served with the Asset restraining Order. Field shall deposit such funds on or before October 22, 2021.

    d. Field, on behalf of Zo Digital, shall turn over to Mullins all documents identified in and responsive to the court's restraining order. Field shall turn over those documents on or before October 22, 2021.

    e. ZO Digital is barred from further objection until it has remedied the defaults set out in this order.

**In re Malibu Media**

15. At all times relevant to this matter, Malibu Media had the financial means to satisfy the district court's $48,656 judgment. Rather than pay, Malibu Media chose to not cooperate in the captioned supplemental proceedings by producing no documents, twice failing to appear for a debtor examination, and a third time failing to appear despite the court ordering Pelissier to do so or face arrest. Malibu Media deliberately failed on multiple occasions to disclose documents related to the Epoch merchant account for X-Art.com and documents showing that it was diverting

X-Art.com Proceeds to ZO Digital.  Malibu Media has thus hindered, delayed, and interfered with these proceedings.

16.     Since the entry of judgment and the initiation of supplementary proceedings, Malibu Media deliberately failed on multiple occasions to thwart the weekly transfer of the X-Art.com Proceeds to ZO Digital.  Malibu Media allowed $83,210.64 to be diverted despite such transfers being specifically prohibited by the citation to discover assets Mullins served on Malibu Media and subject to his judgment lien.

17.     Since the entry of judgment and the initiation of supplementary proceedings, Malibu Media fired its counsel of record and has not obtained a substitute, thus disabling itself from litigating in this district court.  *See United States v. Hagerman*, 545 F.3d 579 (7th Cir. 2008) (LLC litigates in district court *only* with an attorney).

18.     Based on the foregoing, Malibu Media is in default of multiple obligations under the citation to discover assets.

19.     Because of its default, Malibu Media is barred from further making any objection in these proceedings unless and until Malibu Media: (1) appears by an attorney; (2) restores all diverted funds, making those funds available for the satisfaction of Mullins' judgment; (3) produces all documents specified in the rider to the citation to discover assets; and (4) makes Pelissier available for a debtor examination at a time convenient to all parties. Furthermore, at a July 23, 2021, hearing, this court ordered Colette Pelissier to appear in person for the Malibu Media

citation examination and warned, "If you fail to appear [in Chicago] for that [citation examination], without agreement from Mr. Stewart, then I'll issue a warrant for your arrest. It's that simple." Pelissier without just cause failed to appear. The court orders the issuance of a body attachment order for the arrest of Colette Pelissier, but suspends that order for 14 days, until the next court status date of October 22, 2021, at 10:00 a.m. At that time the court shall review Brigham Field's and ZO Digital's compliance with the court's Asset Restraining Order and determine whether the suspension should remain in place or whether the court will vacate the suspension and order execution of the body attachment order to arrest Pelissier.

**In re Attorney's Fees**

20. Pursuant to Local Rule 54.3(C), Mullins requests that the court provide a briefing schedule and a short procedure for Mullins to present a motion for legal fees that would also seek to amend the existing judgment in accord with any allowance of additional fees. Pursuant to Fed R. Civ. P 54(d)(2)(C), Mullins further requests that he be allowed to bifurcate his presentation, moving first for a finding of legal liability and then, if successful, providing the court with a submission on the value of those legal services.

21. Mullins is prepared to argue at least two legal bases for fees. First as an extension of the law and logic of court's memorandum opinion awarding Mullins fees as a prevailing defendant under the Copyright Act. Dkt. 99 (relying upon 17 U.S.C. § 505). It makes no sense to award fees for frivolous filing made pre-judgment, if the "judgment debtor" can thwart that judgment by continuing to act in bad faith, make

frivolous and dilatory filings, and hide assets subject to the court's judgment, lien, and process. Malibu Media's continued intransigence and bad faith effectively "taxed" Mullins and co-counsel whose reimbursement is net of the time, effort, and expenses they must unnecessarily spend to achieve recompense in these proceedings.

22. Second, as a penalty for Pelissier's violation of the transfer prohibition of the citation. *W. Bend Mut. Ins. Co. v. Belmont State Corp.*, 712 F.3d 1030, 1035 (7th Cir. 2013) (*citing Mid-American Elevator Co. v. Norcon, Inc.*, 287 Ill. App. 3d 582, 591, 679 N.E.2d 387, 223 Ill. Dec. 202 (1996)). Pelissier violated the restraining provision of the Malibu Media citation by repeatedly allowing the weekly transfers to her husband's company after being served with the citation.

23. . The judgment creditor has a good faith basis to seek additional fees, as set forth in the court's oral rulings on the Omnibus Motion. The court will provide further direction as to any fee petition at a later date.

24. As provided in the law and as stated in the order itself, the injunctions of the court's Asset Restraining Order remain in effect; those injunctions are only modified as specifically provided by this turnover order, and otherwise those injunctions remain in full force until vacated.

25. This matter is set over for a telephonic status hearing on October 22, 2021, at 10:00 a.m. with details as provided by minute order. Dkt. 132.

ENTERED:

*Thomas M Durkin*

Date: October 12, 2021          JUDGE THOMAS M. DURKIN