IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MALIBU MEDIA, LLC,                          )
                                            )   Docket No. 18 C 6447
    Plaintiff-Judgment Debtor/          )
    Citation Respondent,                )   Chicago, Illinois
                                            )
        vs.                         )   October 22, 2021
                                            )   10:27 a.m.
WILLIAM MULLINS,                            )
                                            )
    Defendant-Judgment Creditor,        )
                                            )
        and                         )
                                            )
COLETTE PELISSIER,                          )
                                            )
    Third-party representative of       )
    the corporate citation              )
    respondent.                         )

TRANSCRIPT OF TELEPHONIC PROCEEDINGS - Status
BEFORE THE HONORABLE THOMAS M. DURKIN

APPEARANCES:

For the Plaintiffs:    MR. JOSEPH A. STEWART
                        The Peacock Law Group
                        150 North Michigan Avenue, Suite 800
                        Chicago, Illinois  60601

ALSO PRESENT:           MS. COLETTE PELISSIER

                     MR. BRIGHAM FIELD

ELIA E. CARRIÓN
Official Court Reporter
United States District Court
219 South Dearborn Street, Room 1432,
Chicago, Illinois 60604
(312) 408-7782
Elia_Carrion@ilnd.uscourts.gov

1              (Proceedings had telephonically:)

2              THE CLERK:  The next case is 18 CV 6447, Malibu Media

3    versus Mullins.

4              Could I please have the attorney speaking on behalf

5    of Mr. Mullins state their name.

6              MR. STEWART:  This Joe Stewart on behalf of

7    Mr. Mullins.

8              THE CLERK:  And --

9              MS. PELISSIER:  This is Colette Pelissier -- this is

10   Colette Pelissier on behalf of myself and Malibu Media.

11             And, Brigham, are you on?

12             MR. FIELD:  Yes, this is Brigham Field --

13             MS. PELISSIER:  And Brigham is on as well on behalf

14   of himself and --

15             THE COURT:  Hang on.  Is Mr. Hefter on behalf of

16   Epoch?

17             MR. STEWART:  No, Your Honor, I spoke with Mr. Hefter

18   yesterday and he did not feel it necessary to appear.

19             THE COURT:  I agree.

20             MS. PELISSIER:  He should be appearing.

21             THE COURT:  Well -- all right.  But he's not on.  And

22   that's fine.

23             MR. STEWART:  He's not on the phone as far as I know.

24             THE COURT:  All right.  All right.  There's been a

25   judgment of $48,000 in this case plus interests and that will

1  be added to the attorneys' fees.  There have been some funds

2  collected through Epoch.  What is the current amount due, not

3  counting attorneys' fees, Mr. Stewart, given collections of

4  Epoch?

5        MR. STEWART:  Yes, Your Honor.  To make it easier for

6  the Court, I just about an hour ago I sent Emily an email with

7  a summary of my report that I can give you right now.

8        THE COURT:  Yeah, I haven't seen it.  I've been --

9        MR. STEWART:  Okay.  I'll just -- along the lines of

10  that that I've submitted, Epoch complied with the Court's

11  turnover order, THE 35,000 has been tendered and deposited now

12  in my client's trust fund account.  At this time they reported

13  under the Court's order that it's continued to restrain money

14  and it has two additional weekly draws from the X-Art.com

15  website activity that resulted in another $7,453 restrained,

16  which brings the total amount either turned over and/or

17  restrained at about 42,647.  My estimate of the judgment right

18  now with interest and costs is about 52,500.

19        And further estimate that it'll take two or three

20  more weekly draws bringing us either to November 4th or

21  November 12th by the time the original judgment will be

22  eclipsed.

23        MS. PELISSIER:  I would like to speak to that when I

24  have a chance, Your Honor, please.

25        THE COURT:  I'll give you a chance in a moment.

1    MS. PELISSIER:  Thank you.

2    THE COURT:  And then, Mr. Stewart, what's the

3  estimate at this point of the attorneys' fees that you have

4  accrued and Mr. Mullins has either paid or is obligated to

5  pay?

6    MR. STEWART:  The attorney fees, Your Honor, I

7  estimate as of last Monday, just a few days ago, about 45,000,

8  give or take 5.  I have a spreadsheet that I'm working on that

9  is relatively up to date.  I need to refine my hours on that

10  to make sure that that accurately reflects, but right now the

11  estimate's about 45,000 in fees.  And not including all the

12  penalties that we intend on seeking.

13    THE COURT:  Okay.  All right.

14    Then -- all right, Ms. Pelissier, you can respond.

15    MS. PELISSIER:  Yes.

16    MR. STEWART:  Your Honor -- excuse me, Your Honor.

17  Before either Ms. Pelissier or Mr. Field speaks, I want to

18  remind the Court that pursuant to the Court's most recent

19  order on August -- I'm sorry -- on October 12th, it's Document

20  No. 133, the Court barred both Malibu Media and ZO Digital

21  from objecting in these proceedings without having an

22  attorney, and I just --

23    MS. PELISSIER:  I'll speak to that --

24    (Indiscernible crosstalk.)

25    COURT REPORTER:  Don't interrupt.

1    THE COURT:  Hang on.  Hang on.  Everyone, stop.

2  Stop.  Stop.  I'm the judge.  Stop, everyone.

3    MS. PELISSIER:  Yes.

4    THE COURT:  We have to proceed one at a time or I'm

5  going to terminate these proceedings today.  Everyone

6  understands that?

7    Right now Mr. Stewart is speaking; he can finish

8  speaking.  I'll give everyone else a chance to speak as long

9  as they're saying things that are relevant to the proceedings

10  we have today, but my court reporter cannot take down multiple

11  people talking at the same time.  So right now --

12    MS. PELISSIER:  -- (unintelligible) Your Honor.

13    THE COURT:  -- I'll hear from Mr. Stewart.

14    Finish talking, Mr. Stewart.

15    MR. STEWART:  Thank you for that courtesy,

16  Your Honor.

17    With regard to the Court's most recent order, again

18  it is Document No. 133, both ZO Digital and Malibu Media

19  because of its prior misconduct in this case was barred from

20  further objection until they retained an attorney.  They're

21  both LLCs and they're both required by law to be represented

22  in this court by an attorney.  I understand the Court is

23  trying to manage objections, and I realize that, I will add to

24  this that -- that there's a -- ZO Digital, and I have this in

25  my report, email report to the Court, ZO Digital hired and

1    fired an attorney at the beginning of this week, a very

2    competent attorney from everything I can see because it made a

3    calculation that it didn't need an attorney at this point.

4            I also was contacted this prior week by attorneys

5    seeking to represent Malibu Media, though, an email inquiry to

6    them showed that they at least demonstrated that they were not

7    going to actually represent Malibu Media.

8            So I understand that your -- the Court has to manage

9    these nonattorney objections.  I want to emphasize that I have

10   tried, you know, to make orderly proceedings in this case and

11   I've done a lot of work prior to these hearings to make these

12   proceedings orderly and -- I'll just leave it at that.

13   Thank you.

14           THE COURT:  All right.  Before I hear from

15   Ms. Pelissier or Mr. Field, I've made clear in the past --

16   I've made clear in the past, and it is the law, that

17   artificial entities, LLCs, corporations, have to be

18   represented by attorneys.  You can't represent them *pro se*.

19   Individuals can speak *pro se*, but artificial entities cannot.

20           So I'll hear first from, I assume, Ms. Pelissier or

21   is Mr. Field going first.

22           MS. PELISSIER:  Yes, please.  Your Honor, first I

23   would like to let the Court know that the reasons that we have

24   not been able to retain counsel for the LLCs in Chicago is

25   because I will -- I can correct -- I can't (unintelligible) --

1  I'll look for the temporary restraining order was so

2  all-inclusive to Malibu Media, ZO Digital, myself, Brigham,

3  anyone with knowledge of the order that they could not accept

4  payment for Malibu Media without themselves being in criminal

5  contempt of the Court.  So actually, everyone who works for me

6  has not been able to take -- be able to be paid in months.

7        Mr. Stewart sent out maybe 500 to -- over 500 emails

8  to everyone I know and everyone ZO or Malibu or my husband

9  would know saying that I've been in criminal contempt of

10 court, which is a lie.  I'm not in criminal contempt of court

11 anywhere, nor have I been, that we owe these debts, and I

12 believe that he's violated almost every fair debt collection

13 law in -- written.

14       I mean, for instance, false and misleading

15 statements.  He's catch-22 where we cannot spend any money of

16 our own or Malibu Media's or run our business nor hire any

17 attorneys because we cannot use money to hire an attorney,

18 which is the problem I had for now weeks we've been trying to

19 handle this and we're almost getting divorced over it.  My

20 husband wanted to bring an attorney today that would file a

21 restraining order.  I said I feel that Judge Durkin is a very

22 reasonable man and that he --

23             COURT REPORTER:  Slow down.

24             MS. PELISSIER:  -- that he would want us --

25             COURT REPORTER:  Slow down.

1      MS. PELISSIER:  That Judge Durkin would prefer we
2   pay --
3      THE COURT:  Stop.  Stop.  Stop.  Please.  Please stop
4   for a minute.
5      My court reporter, if you want to have an accurate
6   transcript, if anyone does, you need to slow down --
7      MS. PELISSIER:  Yes, sir.  I'm sorry.  It's extremely
8   stressful.
9      THE COURT:  -- because she cannot -- well, stressful
10  or not you have to slow down.
11     MS. PELISSIER:  I understand.  I'm sorry, Your Honor.
12     THE COURT:  If you speak too quickly and my court
13  reporter can't get it down so there's no record --
14     MS. PELISSIER:  I'm sorry.
15     THE COURT:  -- so it does no one any good to speak
16  too quickly.  So take your time.
17     MS. PELISSIER:  I understand, Your Honor.
18     Okay.  So we have been stuck in a catch-22 where
19  Mr. Stewart has -- the first I knew of this case was with
20  Mr. Mullins.  We've not heard anything from Mr. Mullins or
21  that Mr. Mullins is getting anything from this -- these
22  proceedings.  Mr. Mullins did infringe on the videos.  There
23  was a default in discovery or where they (unintelligible)
24  Epoch was even doing more and Mr. Stewart came in,
25  (unintelligible) Mr. Mullins brought him in or that

1    Mr. Mullins agreed to this, so I'm not sure what this money
2    Mr. Stewart is looking for, but we have offered to pay him
3    multiple times in writing.  I've offered to pay him by
4    phone calls.  He's hung up on me at least five times.
5    Whenever I offered to pay him in full, he just hangs up the
6    phone.
7         And the restraining order is -- I don't know if
8    you've seen in any of his motion orders, I can't really tell
9    what it is, usually in California we have a 30-day notice
10   motion or *ex parte*, and I understand now it was the court in
11   Chicago, the federal courts, seven-day notice.  We did not
12   receive notice, first I want to apologize, but it appears we
13   did not receive notice of that.
14        Mr. Stewart has called before and told us of
15   hearings.  We were not made aware of the hearing on the 8th or
16   we would have definitely been on the phone.  Just by checking
17   the docket, I was aware of this hearing.
18        And so my husband who's so upset because his company
19   Zo, which has nothing to do with Malibu.  Mr. Stewart got
20   ahold of Epoch's general counsel and called them and,
21   you know, basically scared them, said they would go to jail if
22   they didn't pay this or that, and they're withholding money.
23   And our relationship with them is now on edge, and I'm sure
24   that's why they're not on the phone right now because they're
25   withholding money from the wrong company, but my husband wants

1　to -- we don't want to intermingle our companies, but my
2　husband just wants this done.

3　　　　　And Mr. Stewart seems like he doesn't want it over.
4　He wants to keep dragging this out for some reason asking --
5　when we've been offering to pay since Day 1.

6　　　　　Even the first time, he said, well, I have Epoch
7　restraining money.  I said, you don't need to do that,
8　Mr. Stewart, we're willing to pay you right now, and he hangs
9　the phone up.  So -- and then the catch-22 where we don't want
10　to violate the Court's restraining order so we're doing
11　everything we can.  Our businesses are losing money.  We are
12　losing -- losing our business contacts.  He's been emailing
13　all of them, he's calling all of them.  He's trying to work
14　with lawyers who are trying to shake us down in California now
15　restraining money -- in Texas -- (unintelligible) everything
16　in Texas, and we're not even filing cases because I didn't
17　want to cause hardship during COVID.

18　　　　　So I'm just imploring to Your Honor to help set this
19　straight.  I feel Mr. Stewart has really lost a lot of good --
20　good faith of myself.  And my husband, he just does not want
21　to be part of this and is willing to pay whatever.
22　Mr. Stewart is capitalizing on that fact even though ZO, his
23　company, does not owe anything.

24　　　　　If you look -- we haven't been able to shoot
25　anything, We haven't been able to produce anything, we haven't

1    been able to pay anyone.  Our web hosting is about to be shut

2    off, so -- but we are not allowed to pay this judgment.  And

3    the last time -- I don't know if you saw Mr. Stewart's

4    response -- we can send it in to the court -- he rejected our

5    offer of -- to pay in full with interest and whatever, he

6    rejected it.  He said out of his hands, basically, would not

7    consider.

8         And, so, this to me, I don't feel that we have to

9    negotiate a different settlement agreements before, and I just

10   don't feel this is normal.  This is a 17-page order/motions

11   where everything is getting passed around to the public and

12   information that should be sealed, we should have an attorney

13   to be sealing this information and be handling this properly.

14        It's just -- we can't hire a lawyer because we're

15   restrained from doing that.  So it's a big catch-22 for us,

16   and we just want it to be settled, and it's -- not take any

17   more of the Court's time or resources, and then -- so I don't

18   understand why we can't do that.

19        THE COURT:  Mr. Field, did you want to speak?

20        MR. FIELD:  Certainly, Your Honor.  Thank you very

21   much.

22        I just would like to say that on behalf of

23   ZO Digital, ZO Digital was enjoined in this matter wrongfully.

24   It occurred on the basis that ZO Digital somehow receives

25   income from Malibu Media or income that somehow belongs to

1  Malibu Media, but that is absolutely false.  ZO Digital

2  receives income from the X-Art website as a partner in X-Art,

3  and we have evidence to support that, which we have submitted

4  in a declaration, which I've just emailed to Emily and the

5  Court prior to this call and to Mr. Stewart.

6         So we'd like to present that evidence if possible or

7  have Your Honor have a chance to see it.  Since 2017,

8  you know, long before this matter even existed ZO --

9  ZO Digital has been, you know, receiving income in exchange

10 for extensive services that it provides to the X-Art website,

11 not to Malibu Media.  We're partners in this, and so ZO is, as

12 I said, has been wrongfully enjoined.

13        The result has been -- has been, you know, really

14 hurtful to our company and to our employees and our staff.

15 I'm unable to make payments.  We typically pay every week, but

16 we're not able to do that, and we've had to reduce down to

17 partial payments and we lost several of our staff.

18        We also have been unable to pay our web hosting

19 bills, and we're on the verge of having our website cutoff as

20 a result of that.  We're in negotiations with the web hosting

21 company to try to, you know, work with us during this time.

22 It's been extremely difficult.  They want to get paid just

23 like everyone does, which is only fair.

24        And in terms of the settlement offers, I do want to

25 add, though, what Ms. Pelissier was saying, that we have made

1  several full price offers to pay the judgment, and those

2  offers have been rejected both orally and in writing via email

3  by Mr. Stewart, which I agree he's highly unusual when I

4  believe that the Court wishes the judgment to be paid

5  promptly.  That is exactly what we would like to be part of,

6  getting that done.

7          And in closing I would say that also the fact I

8  haven't been actually served with any documents in this

9  matter.  I know that I've received some emails after the fact

10  but that never was actually served to me, so I've been playing

11  catchup as we go here, and I've made efforts to find counsel

12  to represent ZO Digital and been a little unsuccessful in that

13  partially because of the quagmire that Ms. Pelissier pointed

14  out where we're not certain whether we're restrained from

15  spending funds to hire the attorney or whether we're allowed

16  to do that, so that's made it a little bit complicated.

17          And just in closing, I guess I would say going back

18  to the offer, I realize that, you know, a good deal of our

19  funds have been restrained by Epoch, and there are additional

20  funds that are trying to be held by them.  We certainly don't

21  think that it's fair to -- that our funds are being held

22  and -- and they'll be used in this way, however, given how

23  this is affecting our companies, we wish to be supportive and

24  having those funds used to pay any part of the judgment that

25  we can so that this is resolved as quickly as possible.

1       THE COURT:  All right.  Mr. Stewart, briefly anything
2   in response?

3       MR. STEWART:  Well, Your Honor, I would certainly
4   address any of those myriad comments as the Court wishes.  I
5   can tell you, though, that in general, what you just heard
6   illustrates the problem that I've set myself against for the
7   last eight months, which is that Mr. Field and Ms. Pelissier
8   don't understand the law.

9       They don't understand a citation means when a
10  business is served like Malibu Media with a citation to
11  discover assets, it ceases to spend money hanging on other
12  creditors, on ordinary business expenses, or anything.  The
13  law demands that the judgment of this Court be paid first.  So
14  the predicament that they're feeling so hard today, and I
15  sympathize with them is a law -- is a result that the law
16  dictates.  It wants this Court's judgment paid before
17  anything.

18      And as you could see from the numbers, Malibu Media
19  always had the assets to pay this judgment.  It simply refused
20  to do so.  That's why we're here today.

21      If the Court would like me to address any of those
22  specific issues they've addressed, I'd be more than happy to
23  do so.  I have a motion to make.

24      THE COURT:  Pardon me?

25      MR. STEWART:  When the Court's finished addressing, I

1    don't know what -- if these are objections or comments or

2    whatever by Mr. Field and Ms. Pelissier, I have a motion to

3    make after that.

4              THE COURT:  All right.

5              MS. PELISSIER:  Could I clarify?

6              THE COURT:  No, no.  I think I'm done.  They are

7    comments because they -- the companies that are involved don't

8    have counsel.

9              How do you comment on their -- what they view as the

10   predicament that they can't hire counsel because they can't

11   pay for counsel because assets are restrained?

12             MR. STEWART:  Then -- then, the one thing they could

13   do, Your Honor, is cooperate in turning over the assets that

14   are available.  And this is one thing that they just -- that

15   neither Mr. Field nor Ms. Pelissier has done over the past few

16   months.  They never disclosed the funds that were with Epoch,

17   and they never did anything to get those monies paid over.

18   Everything that Mr. Mullins has received up to now has been

19   through Mr. Mullins' diligence and this Court's turnover

20   orders.  That's why Mr. Mullins has been paid up to now.

21             MS. PELISSIER:  I have been offering to pay the

22   entire amount -- I'm sorry, Your Honor, go ahead.

23             MR. STEWART:  And so I --

24             THE COURT:  Yeah.  Has Ms. Pelissier offered to pay

25   over the entire amount?  Had this been done months ago there

1  wouldn't be $45,000 of attorney's fees accrued.

2      MR. STEWART:  Your Honor --

3      THE COURT:  But go ahead.

4      MR. STEWART:  Just -- and as far as the settlement

5  goes, or any offers of settlement, we addressed this in our

6  response to the motion to vacate.  There has never been any

7  offer to settle, any dollars offered, any money offered,

8  never.  Up to today.  And I have said that in my declaration.

9      And, you know, I've demonstrated that there was never

10  any offer -- they thought a true settlement offer is

11  basically, you know, Mr. Field and Ms. Pelissier giving me the

12  proverbial sleeves off their vest, you know, we've

13  restrained -- you know, they've never offered any money.

14  Including, Your Honor, most recently the Court order of

15  Mr. Field to turn over the money that was on deposit in the

16  Wells Fargo account the day that they -- as the restraining

17  order was issued.

18      The money in that -- that Wells Fargo account by the

19  terms of the order should have been restrained and -- and --

20  but Mr. Field still hasn't turned that money over to the Clerk

21  of the Court pursuant to the Court's order.

22      THE COURT:  How much is in the Wells Fargo account?

23      MR. STEWART:  We don't know because Mr. Field still

24  will not produce the records showing how much is in that

25  account.

1      THE COURT:  Did you serve the citation on

2  Wells Fargo?

3      MR. STEWART:  Your Honor, I tried to serve a subpoena

4  on Wells Fargo.  I just found out two days ago that I served

5  it on the wrong address.

6      THE COURT:  All right.  Well --

7      MS. PELISSIER:  Mr. Field doesn't have the -- sorry.

8      THE COURT:  Hang on.

9      Mr. Field, are there funds in the Wells Fargo

10  account?

11      MR. FIELD:  I would need to check, Your Honor, to see

12  what the balance is.  I'm not sure.

13      THE COURT:  What's the approximate?

14      (Indiscernible crosstalk.)

15      MR. FIELD:  If I may say one thing.

16      THE COURT:  I had a question --

17      MR. FIELD:  Oh, yes.

18      THE COURT:  -- I had a question about the account and

19  then I'll hear your question.

20      What is the approximate amount in the Wells Fargo

21  account?

22      MR. FIELD:  I -- honestly, Your Honor, I don't know

23  the approximate amount.  I'd hate to throw a guess out there

24  without having any idea.

25      THE COURT:  Well --

1     MR. FIELD:  I know it's --

2     THE COURT:  Well, is it hundreds of dollars,

3  thousands of dollars, tens of thousands, hundred thousand?

4     MR. FIELD:  I know the last time -- Your Honor, the

5  last time I checked the balance it was negative $1200.

6     MS. PELISSIER:  Because Epoch was paid.

7     THE COURT:  All right.  Okay.  Mr. Field wanted to

8  say something.

9     MR. FIELD:  Yes.  I presented a -- sent a declaration

10  to the Court this morning, which includes as an attachment the

11  written offer via email to pay the full amount, and it

12  includes the response via email from Mr. Stewart rejecting

13  that offer.  So certainly, it's a fallacy that an offer hasn't

14  been made, (unintelligible).  (Unintelligible) offered to pay

15  the full amount, and lastly included in my declaration that

16  was submitted today, I included a settlement offer which lists

17  all of the dollar amounts, including the amended judgment

18  order for the (unintelligible) and postjudgment interests of

19  283 per month, and then it outlines how those funds could be

20  paid between including --

21     MS. PELISSIER:  I'm sorry.  Zo is not listed as a

22  judgment debtor here.  It's a separate company.  You're not

23  even on the lawsuit so --

24     THE COURT:  Stop.  Everyone stop, please.  Everyone

25  stop, please.

1          Emily, who's the magistrate judge on this case?

2          THE CLERK:  I'm pulling up the docket right now.

3          Judge Finnegan.

4          THE COURT:  Okay.  Well, Mr. Stewart, you said you

5 were going to make a motion?

6          MR. STEWART:  Yes, Your Honor.  So here's -- here's

7 the I think a predicament, and it's that as we layout in the

8 email that I sent the Court this morning, there's either

9 restrained or turned over about $42,000 against the judgment

10 amount of about 52,000 at this point.

11          Come November 4th or November 12th, the turnover

12 order and the restraining order is already in place, will lead

13 to the satisfaction of the original judgment amount.

14          What's happening here is that and -- is that -- is

15 that ZO -- ZO Digital is bargaining that the Court will simply

16 lose jurisdiction to order any further turnovers from Epoch

17 and that Malibu Media and ZO Digital can continue contesting

18 liability on the fees issue, and they can go back to running

19 their business because we just simply have an unsecured claim

20 for liability on the fees.

21          Our motion being made right now is a motion for the

22 Court to order a prejudgment attachment in addition to the

23 restraining order that's already been entered.  The

24 prejudgment order of attachment would function like this:  As

25 soon as -- as soon as Epoch has restrained or turned over

1   enough assets to satisfy the original $52,000 judgment, they

2   will continue to restrain the X-Art.com proceeds as security

3   under prejudgment attachment for Malibu Media's liability for

4   attorneys' fees.

5           It's proper under the prejudgment statute or Rule 64

6   under the applicable statutes for prejudgment attachment

7   because the claim for attorneys' fees is a claim for money,

8   and both Malibu Media and ZO Digital in the past have

9   demonstrated a penchant for both concealing assets, for not

10  cooperating with the Court's enforcement processes, and any --

11  and the Court can expect that any liability it finds for

12  sanctions for Malibu Media's conduct in this case is for

13  attorneys' fees or costs that -- the only thing the Court can

14  expect at this point based on previous conduct is that

15  Malibu Media and ZO Digital will continue to try to avoid

16  paying that and continue to complicate the Court's process.

17          So we can -- we would like to submit an order of an

18  attachment that would clarify that the restraint in this case

19  should continue by Epoch, and that those monies that continue

20  to be restrained for security for any liability for penalties

21  that Malibu Media should be held liable for going forward.

22          THE COURT:  All right.  Well, you should certainly

23  file that.  I'm not going to enter it.  Although the two

24  individuals on the phone can't legally represent the two

25  entities, I'll allow them to comment on it as interested

1  parties and then I'll consider the motion.

2       That's all I can do.  So go ahead and file your

3  motion.  If there's going to be any response to it by the --

4  Ms. Pelissier and Mr. Field, then that should be filed seven

5  days after you file your motion.  I'll consider it, and we'll

6  go from there.

7       Sounds like by operation of the order already entered

8  eventually the judgment will be satisfied, but had that been

9  done eight months ago when I ordered it, we wouldn't be in

10 this position where thousands and thousands of attorneys' fees

11 have had to have been expended by counsel for Mr. Mullins.

12 This is a self-inflicted wound.  So go ahead and do that.

13 File your motion.

14      When do you expect to file it?

15      MR. STEWART:  I expect to file that at latest by

16 Monday, Your Honor, and I would expect also, too, to file a

17 fee petition within 14 days.  To round out that issue as well,

18 so I think those are the two outstanding issues that, legal

19 issues that the Court needs to address at this point.

20      THE COURT:  All right.  Emily, 14 days from now is

21 when?

22      THE CLERK:  14 days from today is November 5th.

23      THE COURT:  All right.  And then I'll give the --

24 again, there's no legal counsel or no one can properly

25 represent ZO or Malibu, but Ms. Pelissier and Mr. Field can

1  file any response they want to those filings seven days after
2  that.
3          When's that, Emily?
4          THE CLERK:  November --
5          THE COURT:  What is it, Emily?
6          THE CLERK:  November 12th.
7          THE COURT:  Okay.  And then I'll consider what's been
8  filed.  I do encourage you, and I don't need to hear comment
9  from anybody right now, but I do encourage you to try and
10 reach some type of settlement on the attorneys' fees, but they
11 will be -- they have been incurred, they will be assessed, and
12 perhaps there's a way you can reach a resolution on that, but
13 the more time that's spent fighting about all this the more
14 fees Mr. Mullins has to incur, and the larger amounts are
15 going to have to be paid by the defendants.  So I encourage
16 you to try and get those resolved.
17         Right now the orders remain in place, and I'll look
18 at what Mr. Field filed apparently today or yesterday, and if
19 I need to take action on that, I will.  And that completes the
20 proceedings today.  Thank you, all.
21         MR. STEWART:  Thank you, Your Honor.
22         This is Joe Stewart.  Can we get a status for two
23 weeks from now?  Or for 30 days from now?
24         THE COURT:  We'll do a status in 30 days.
25         Emily, the date?

1    THE CLERK:  November 22nd at 9:00.

2    THE COURT:  Let's do it at 10:00.

3    THE CLERK:  At 10:00.

4    THE COURT:  Yeah.

5    MR. STEWART:  Thank you, Judge.

6    THE COURT:  10 o'clock.  Okay.  Thank you, all.

7  Bye-bye.

8       (Proceedings concluded at 10:57 a.m.)

9                         CERTIFICATE

10       I certify that the foregoing is a correct transcript from

11  the record of proceedings in the above-entitled matter.

12  */s/ Elia E. Carrión*            *4th day of November, 2021*

13  *Elia E. Carrión*                        *Date*
    *Official Court Reporter*

14

15

16

17

18

19

20

21

22

23

24

25