UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, )<br>)<br>Plaintiff-Judgment Debtor/ )<br>Citation Respondent, )<br>)<br>v. )<br>)<br>WILLIAM MULLINS, )<br>)<br>Defendant-Judgment Creditor, )<br>and )<br>)<br>COLETTE PELISSIER, )<br>)<br>Third-party representative of )<br>the corporate citation respondent. ) | No. 18 C 6447<br><br>Judge Thomas M. Durkin |

**JUDGMENT CREDITOR'S MOTION
FOR APPROVAL OF ATTORNEY FEES AND EXPENSES**

Judgment creditor, William Mullins, through The Peacock Law Group ("the Firm"), respectfully submits this application for allowance of fees and costs. The Firm represents William Mullins and prosecutes these post-judgment, supplemental proceedings. The Firm seeks allowance of $58,625 in fees and $989.52 for related nontaxable expenses pursuant Rule 54(d)(2) (claims for attorney's fee to be by motion) and Rule 69 (incorporating state law contempt rules providing for the recovery of fees). This motion encompasses services rendered and expenses paid or incurred from April through October 2021. The application is submitted with a motion to amend the judgment against Malibu Media for the awardable fees and costs.

**Summary of the Case**

1.     Malibu Media LLC had the resources to satisfy the February 2021 judgment in full, but it played "catch me if you can" and simply refused to pay. The court's judgment read in plain terms states Mullins may recover $48,656.73 from Malibu Media. Mullins served Malibu Media with a citation to discover assets, which undeniably ordered, as the law provides, that Colette Pelissier, Malibu Media's owner and manager, was <u>not</u> to transfer or allow the transfer of any Malibu Media assets until it satisfied Mullins' judgment (or put aside twice the amount of the judgment as security). Pelissier and Malibu Media ignored the citation and the law's command and continued doing business and transferring assets. Did Pelissier somehow believe Malibu Media's assets were "immune" from enforcement?  Since 2017, Malibu Media has diverted all its liquid assets to ZO Digital, Pelissier's husband's business. Mullins, however, uncovered the diversion, obtained a restraining order, and then obtained a turnover order for the diverted assets.  The turnover order is expected to yield an amount equal to the original judgment, with interest and costs, by November 11, 2021.

**Summary of the bill for services**

2.     The Firm submits the attached bill in the form of a spreadsheet setting forth in chronologic order the services rendered, and the costs expended in obtaining recovery on the judgment, which required the Firm repeatedly having to address and counter the numerous subterfuges engaged in by Pelissier and Brigham Field. Exhibit A. The bill is for the services of attorney Joseph Stewart, the Firm's principal

attorney. The bill provides the date (or dates) the services were provided, a brief description of the services, and the time expended in quarter-hour increments.

3. Mr. Stewart's hourly rate is $500 per hour and there is no discounted rate set forth in the Firm's retainer agreement with Mr. Mullins. Mr. Stewart has practiced in the area of remedies, including post-judgment remedies, for thirty years. For example, as one of the attorneys for the judgment creditor in 1998 he personally advocated for the rule established in the *Air Auto Leasing* case, which is cited throughout the briefs and orders entered by this court and illustrates the legal basis for the penalties now being levied against Malibu Media.

4. The bill is divided into parts "A" through "Q," and each part includes an action/legal-filing that counsel undertook as a necessary countermeasure to Pelissier and/or Malibu Media's efforts to hide assets (*e.g.*, Mullins obtained a restraining order to attach assets Malibu Media diverted to ZO Digital). Mullins provides below a narrative describing the time involved in the Firm delivering those necessary services.

5. The bill totals 117.25 hours of service the undersigned provided and by the lodestar method (number of hours times hourly fee) produces a fee bill of $58,625.

6. The bill for services further includes the e-mail volume associated with the case that speaks to the myriad tasks and activity that occurred and contributed to the result in this case. However, only a portion of this activity is ascribed billable hours; those hours ascribed typically are the actual time expended or a conservative

estimate of the overall time taken (over the indicated day or days) to complete the associated task.

7.     The bill includes related nontaxable expenses the Firm incurred totaling $989.52. Exhibit A. The firm also expended $764.90 in taxable costs it will seek to recover via a bill of costs.  Dkt 137.

**Narrative describing the services the Firm provided**

8.     As often said but worth remembering, courts are not collection agencies. Rather, when a "money judgment" is entered, the final judicial command is that the judgment creditor shall recover a sum certain from the judgment debtor,[1] and the court's final judgment enforcement remedies of Rule 69 are then put at the disposal of the judgment creditor. Fed. R. Civ. P. 69. These remedies are ministerial in nature and ordinarily require *no* judicial action whatsoever.[2]  The clerk issues a "citation to discover assets" under Rule 69 and that process requires certain statutorily-defined actions the judgment debtor and third parties *must* take or face court sanction. Principally, the process requires non-exempt assets to be restrained and information concerning assets to be produced under oath. Judicial action, one requiring legal

---

[1] *See* R. Millar, *Civil Procedure of the Trial Court in Historical Perspective* (Law Ctr. NYU 1952) 419 ("At common law the judgment in ordinary actions is not a direct command to the party; the court speaks objectively: 'It is considered that "A" recover of "B" such and such' is its usual formula.").

[2] *See Yazoo & M. v. R. Co. v. Clarksdale*, 257 U.S. 10, 19, (1921) (describing the ordinary process of enforcing a judgment as occurring "without order of the court," "ministerial" in nature, "and only com[ing] under judicial supervision on complaint of either party")

discretion, is only necessary "on complaint of either party." *Yazoo & M. v. R. Co. v. Clarksdale*, 257 U.S. 10, 19, (1921).

9.     The ordinary process essentially allowed Malibu Media to choose one of two courses: satisfy the judgment or produce certain information concerning assets. Malibu Media chose neither, repeatedly disobeying the court's process and causing Mullins multiple times to go to extraordinary lengths to obtain court orders of enforcement, which did nothing more than achieve the results that the court's *ordinary* process was intended to achieve *without* judicial intervention. Even once specifically ordered to comply, Malibu Media failed to do so.  For example, Pelissier failed to appear as ordered for the debtor examination of Malibu Media on August 23, 2021.  Dkt 133, ¶¶ 15-19.

10.     In terms of necessity, what the evidence overwhelmingly shows is that Malibu Media had assets far exceeding the $48,656.73 judgment amount.[3]  However, Malibu Media continuously hindered Mullins' lawyers, and in each case when confronted with its misconduct, Malibu Media had **_no_** excuse for non-compliance.

11.     Finally, each part of the bill constellates around the main, titled activity, like filing a given motion or other affirmative action. The other activity surrounding the main event, some billed-for activity and other activity not, are grouped around the main event. The bill demonstrates that Mullins' counsel engaged in a great deal

---

[3] The restraining order to Epoch has produced weekly net income of about $4,260 (Dkt. 125 at p. 20); extended over the course of a year yields Malibu Media a gross income of $221,520; and, using one conventional valuation technique of "three times yearly revenue," Malibu Media is thus worth about $665,000.

of preparation like efforts at settling differences where possible; verifying facts; and shoring up the asset restraining order where violations seemed possible. That effort was undertaken to avoid further court action (like trying to settle) or to lessen the burden on the court (by submitting verified and well edited motions and proposed orders).

### PART A — Finalize and execute retainer agreement along with offer to settle

12. Over the course of a month or so, meetings were held between attorney and the prospective client to exchange information, understand the potential engagement, and assess the effort required and the risks associated with recovering on the judgment against Malibu Media.

13. The attorney's fee budget was to be $5,000, an amount that assumed and anticipated a solvent judgment debtor and an adherence to post-judgment legal process. The prospects of a full recovery were rated to be good, and the Firm agreed to make an expeditious recovery and obtain its fees from recovered funds such that Mullins paid no retainer. If the budget of $5,000 were to be exhausted without any recovery, attorney and client would re-evaluate the recovery efforts and associated litigation to determine if continued prosecution was deemed cost-effective.

14. Mullins and the Firm correctly forecast that they would make a full recovery on the $48,656 judgment and have in fact recovered most of the judgment amount to date.

15. Two and one-half hours are ascribed to Part A services and no expenses for a total of $1,250.00.

**PART B — Amend judgment and obtain and serve citation**

16.     Prior to engaging in any effort to amend the judgment (which lacked an amount for the already-awarded pre-judgment interest) or any effort to draft and serve a citation, the undersigned communicated with counsel for Malibu Media and offered them an opportunity to satisfy the original judgment amount without interest, costs, or fees. Counsel advised Malibu Media would not pay but agreed to accept service of the citation to discover assets.

17.     The prejudgment interest calculation was complicated by having to gather the billing records of the three attorneys who had represented Mullins. A draft amended judgment was prepared and circulated to client and counsel and eventually entered by the court.

18.     In Part B, most time is spent drafting and submitting an appearance, an amended judgment order, a citation to discover assets, and a detailed email transmitting the citation to discover assets to opposing counsel. Dkt. 104.

19.     Two and one-half hours are ascribed to Part B services and no expenses for a total of $1,250.00.

**PART C — Response to Malibu Media Motion to Continue**

20.     Once the citation was served, Malibu Media moved to extend the May 12, 2021, return date. Dkt. 105.  Prior to filing the motion, the parties had been discussing an agreed order, but Malibu Media, without notice, filed a contested motion, then sought Mullins' agreement on the language of an order. Mullins took time to draft a proposed agreed order that included Malibu Media's explicit acknowledgement of the "restraining provision" of the citation to discover assets.

7

Malibu Media rejected this draft; Mullins relented and settled for an order for Pelissier to appear for Malibu Media's citation examination on a date certain with documents. Malibu Media's motion was dilatory. The court subsequently found Malibu Media deliberately failed to produce, at the very least, the "Epoch" documents showing the diversion of X-Art.com Proceeds to ZO Digital. Dkt. 117, Asset Restraining Order at ¶ 3.

21. The Firm expended time in numerous oral and written communications with opposing counsel to determine what compliance there had been to date with the citation (both about documents and the disposition of the website revenue).

22. Two and one-quarter hours are ascribed to Part C services and no expenses for a total of $1,125.00.

### PART D — Prepare and file rule to show cause and motion response

23. Pelissier did not produce records and continued to conduct Malibu Media's business (thus not complying with the citation's transfer prohibition). In the period from about July 6, 2021, through a July 23, 2021, hearing on a rule to show cause, the Firm tried to obtain Malibu Media's compliance with the citation to discover assets both outside of court and via preparing a motion for the issuance of a rule. Malibu Media's attorney provided nothing in the way of information or assurances as to future compliance, then abruptly moved to withdraw. Dkt. 109.

24. The Firm prepared and filed a six-page motion (Dkt. 110, Motion for Rule directed to Colette Pelissier as representative of MM) and seven-page declaration of counsel (*id*. at Ex. B), detailing Malibu and Pelissier's **non**-cooperation;

the declaration demonstrated Malibu Media's wholesale failure to act, hindering the proceedings. *Id*. at ¶¶ 6-9.

25.     Thirteen hours are ascribed to Part D services and no expenses for a total of $6,500.00.

**PART E — Drafted and sent settlement proposal**

26.     In a continuing effort to resolve this matter without burdening the court, Mullins emailed Malibu's outgoing attorney, Joel Bernier, and Colette Pelissier offering Malibu Media an opportunity to pay the judgment but dispute the liability for continuing legal fees.

27.     One-quarter hour is ascribed to Part E services and no expenses for a total of $125.00

**PART F— File amended motion for rule; attend hearing**

28.     Before the rule could be heard by the court, Mullins became aware of startling information that bore on the relief sought in the pending motion for a rule and necessitated the amendment of the rule to show cause. Mullins learned that Pelissier had been *sentenced* for criminal contempt of court for not disclosing Malibu Media financial records like Mullins had been seeking. Mullins also learned that Malibu Media was likely diverting its assets to ZO Digital.

29.      The Firm prepared and filed a six-page emergency motion (Dkt. 112) detailing and attaching a copy of Pelissier's sentencing order, detailing Malibu's asset diversion (as attested to in a sworn deposition Field had recently given), and seeking additional relief. At a July 23, 2021, hearing, the Firm obtained a rule to show cause requiring Pelissier to appear on August 23, 2021, or face arrest as well as additional

relief including obtaining information Joel Bernier possessed concerning Malibu Media's assets.

30.     Nine and one-quarter hours are ascribed to Part E services and no expenses for a total of $4,625.00.

**PART G—Prepare and file TRO motion; attend hearing**

31.     Pelissier had to know Mullins was aware of Malibu Media's asset diversion. Dkt. 112, ¶8 (filed 7/22, discussing diversion that formed basis for 8/11 *ex parte* TRO motion). Despite this knowledge, Pelissier did nothing to respond to Mullins' July 2021 settlement offer (*supra* Part E), and she, and consequently Malibu Media, made no effort otherwise to satisfy the judgment.

32.     On August 11, 2021, Mullins filed an *ex parte* motion for restraining order directed to Epoch.com, LLC and ZO Digital that sought to restrain the X-Art.com Proceeds being processed by Epoch and diverted to ZO Digital. The filing consisted of a 13-page motion, an 18-page declaration, and a 9-page proposed restraining order. Dkt. 115.

33.     The filing and the hearing on the restraining order required a substantial amount of research and writing to prepare court papers that were accurate, well-written, and would assist the court in its deliberations. The motion along with counsel's sworn declaration detailed the facts underlying the relief sought and it provided statutory and case authority substantiating the court's legal authority. That preparation reduced the court time required to adjudicate the restraining order; everything of substance alleged in the motion proved accurate, and

the restraining order entered on August 12, 2021, finally set these proceedings on a course to conclusion.

34.     Thirty-two hours are ascribed to Part G services and $200 in expenses (for a law clerk to perform legal research and proofread drafts) for a total of $16,200.

**PART H — Execute restraining order**

35.     Once the restraining order had been entered, the Firm needed to serve the restraining order. Over the course of the next week, the Firm communicated orally and in writing with Epoch and numerous employees, agents, and lawyers (mostly former lawyers) for Malibu Media and ZO Digital, casting a wide net and seeking to make them aware of the injunction and to thwart the possible transfer of assets. Communications with Epoch were the principal object as they immediately reported that they possessed and were restraining X-Art.com Proceeds, which have proved to be beneficial.

36.     Seven hours are ascribed to Part H services and no expenses for a total of $3,500.00.

**PART I—Prepare for and attend debtor examination**

37.     The court ordered Colette Pelissier to appear on August 23, 2021, in Chicago for the debtor examination of Malibu Media. She failed to appear, and that nonappearance is the subject of a pending contempt of court finding the court lodged against her. Dkt. 133, Order on Omnibus Motion, ¶¶ 15-19.

38.     Mullins' counsel spent time preparing for the examination, arranging for a court reporter and courtroom, copying exhibits, and attending court.

39.     Five and one quarter hours are ascribed to Part I services and no expenses for a total of $2,625.00.

### PART J — Make third offer of settlement to Malibu Media

40.     On August 20, 2021, after client consultations, counsel drafted a settlement proposal to both Collette Pelissier and Brigham Field that if acted upon could have brought these proceedings to a conclusion and obviated the need for Pelissier's deposition the following Monday.

41.     One-half hour is ascribed to Part J services and no expenses for a total of $250.00.

### PART K — Response to ZO Digital's motion to vacate TRO

42.     ZO Digital filed a Motion to Vacate the asset restraining order. Dkt. 120. The court ordered Mullins to respond to the motion in 48 hours. Dkt. 122.

43.     Mullins timely researched, prepared, and filed an 11-page response to ZO Digital's motion and an 11-page, third declaration of counsel. Dkt. 123. The declaration was necessary to document the subterfuges Pelissier used to avoid being examined under oath while giving the court the false impression she and her spouse were genuinely trying to settle. The court, following Mullins' recommendation, denied the motion to vacate. Dkt. 133 (Order on Omnibus Motion at ¶ 11).

44.     Ten hours are ascribed to Part K services and $250 in expenses (for a law clerk to cite check and proof the submissions) for a total of $5,250.00.

### PART L — Prepared and filed Mullins' Omnibus Motion; attend hearing

45.     Mullins' Omnibus Motion (Dkt 125) is an elaborate "turnover motion," which in ordinary cases is a *pro forma* motion uncontested by the debtor, garnishee,

or other third party. In the case of Malibu Media, however, obtaining a turnover order in the wake of the restraining order was anything but routine. Mullins nonetheless succeeded in obtaining a turnover order on October 12, 2021 (Dkt. 133), nearly eight months after the court entered judgment in the case and six months after these supplementary proceedings began.

46.     In the first place, a significant portion of the time ascribed to Part L involved communicating with Epoch and its previous counsel. Before Mr. Hefter's involvement, Epoch response to the court's restraining order was largely adversarial,[4] belying its role as a mere stakeholder in these supplementary proceedings. Mullins several times had to write lengthy emails notifying Epoch that it was in default of its obligations under the restraining order to produce documents and provide a sworn answer. Counsel re-drafted proposed discovery responses to documents and interrogatory answers to reflect Epoch's concerns. At one point, counsel engaged in a detour of sorts to achieve a "settlement" with Epoch, including making time to discuss the matter with Epoch's COO. All to no avail; only since Mr. Hefter filed an appearance has Epoch returned to the conventional role as stakeholder. After two hearings (one to accommodate new counsel), the court granted Mullins' Omnibus Motion in full and entered declaratory relief, a turnover order, and other injunctive orders. Dkt 133 (order on Omnibus Motion).

---

[4] *See* Dkt. 125, Omnibus Motion at ¶24 (reserving among other thing a claim for tortious interference with process).

47. Sixteen and one-half hours are ascribed to Part L services and $75 in expenses (for a law clerk to cite check and proof the submissions) for a total of $8,325.00.

## PART M — Prepare for and attend status hearing on turnover motion

48. In the period between the entry of the turnover order against Epoch and the next scheduled status, October 22, 2021, Mullins' counsel was engaged in executing that order, arranging for the delivery of funds, and several communications with Epoch and ZO Digital about the prospect of a default in their contract. Counsel also engaged legal research concerning a prejudgment attachment order and orally presented a motion for attachment at the status hearing, which was later put in writing and formally submitted to the court the following Monday. *See infra*, Part O.

49. Three and one-quarter hours are ascribed to Part M services and $89.52 in expenses (FedEx charges to obtain the check from Epoch) for a total of $1,714.52.

## PART N — Make fourth offer of settlement to Malibu Media

50. On October 20, 2021, after client consultations, counsel drafted a settlement proposal to both Collette Pelissier and Brigham Field that if acted upon could have brought these proceedings to a conclusion.

51. One hour is ascribed to Part N services and no expenses for a total of $500.

## PART O — Prepared and filed motion for prejudgment attachment

52. The payment of this bill for legal services was imperiled because of Malibu Media's prior conduct of diverting assets, not cooperating, and seeking to hinder these proceedings. To ensure funds would be available, Mullins was forced to

14

file a six-page motion for prejudgment attachment to safeguard this court's jurisdiction and to guarantee the Epoch stream of payments continued uninterrupted. Dkt. 135.

53. Six hours are ascribed to Part O services and no expenses for a total of $3,000.00.

## PART P — Bill preparation

54. Over the course of several days, Mullins' counsel assembled the attached six-page bill for eight months of legal services and expenses and this fee application.

55. Four hours are ascribed to Part P services and $250 in expenses (law clerk time to prepare draft bill) for a total of $2,250.00.

## PART Q — Motion to amend judgment

56. This fee application and attached bill are the centerpiece of Mullins' motion to amend the judgment to include the fees the court approves.

57. Two hours are ascribed to Part Q services and $125 in expenses (law clerk to research and edit) for a total of $1,125.00.

## PART R — Costs and expenses

58. The firm incurred $989.52 in related nontaxable expenses that are set forth in the attached. These are expenses that were necessary but not recoverable in Mullins' Bill of Costs. Dkt. 137 (seeking $764.90 in taxable costs).

59. The expenses are primarily to pay a law clerk, which as demonstrated throughout this application benefited counsel's provision of services and benefited the court with detailed and accurate submissions.

Wherefore, Mullins requests that this court find these services and expenditures necessary and reasonable, find Malibu Media is liable for the same, and accordingly reduce this claim to judgment for the fees and related expense in the amount of $59,614.52.

Respectfully submitted,

THE PEACOCK LAW GROUP

By: s/ Joseph A. Stewart
    JOSEPH A. STEWART
    Principal Attorney
    161 North Clark Street, Suite 1600
    Chicago, Illinois 60601
    (312) 741-1070
    joseph.stewart@thepeacocklawgroup.com

| Date | Emails | NOTES | Subtotal | Hours | Related Expense | Cost Item |
|------|--------|-------|----------|-------|-----------------|-----------|
| | | **A.** | | | | |
| 26-Feb | | Client intake conference - scheduling and holding briefing session among 4 lawyers for Mullins | | 1 | | |
| 23-Feb | 8 | Exchanging emails with client concerning fee agreement and due diligence concerning MM and its assets | | | | |
| 26-Feb | 7 | Exchanging emails with client concerning fee agreement and due diligence concerning MM and its assets and prior settlements | | | | |
| 27-Feb | | **Prepare and send client retainer letter** | | 0.5 | | |
| 4-Mar | 6 | Exchange of emails re scope of representation | | 0.5 | | |
| 8-Mar | 48 | Receiving and sending emails to finalize retention letter (3/4 to 3/8) | | 0.5 | | |
| | | **A. Finalize and execute retainer agreement** | 2.5 | | | |
| | | | | | | |
| | | **B.** | | | | |
| 9-Apr | 1 | Email to Bernier to open dialogue on satisfaction of judgment | | | | |
| 11-Apr | 1 | Email from client re retention letter | | | | |
| 12-Apr | 2 | Exchange of emails with courtroom deputy re procedures | | | | |
| 15-Apr | 13 | Exchange of emails with client concerning calculation of prejudgment interest for amended judgment (4/15-4/16) | | 0.5 | | |
| 9-Apr | 1 | Prepare and e-file appearance FOR MULLINS | | 0.25 | | |
| 19-Apr | 4 | Prepare motion, amended judgment order, e-filing and email communication with court re same | | 0.5 | | |
| 20-Apr | 2 | Prepare and submit citation to discover assets to clerk of court | | 0.5 | | |
| 20-Apr | 1 | Compose detailed transmittal email to opposing counsel and serving opposing counsel with citation to discover assets | | 0.75 | | |
| 20-Apr | 5 | Email with client concerning initiation of supplementary proceedings and what's next (4/20-23) | | | | |
| 23-Apr | | Cost:  Amata Law Offices for service of citation via Fed Ex | | | | 19.89 |
| | | **B. Amend Judgment, obtain and serve citation to discover assets** | 2.5 | | | |
| | | | | | | |
| | | **C.** | | | | |
| 23-Apr | 1 | Prepare transmittal (via email with legal services group Amata) and serve citations to discover assets to Malibu Media | | 0.25 | | |
| 26-Apr | 12 | Emails with opposing counsel seeking confirmation of service and consulting with client on next steps | | | | |
| 27-Apr | 3 | Email exchange with Bernier confirming receipt of citation | | | | |
| 28-Apr | 2 | Exchange of emails concerning MM's contemplated motion to extend return date on citation | | | | |
| 30-Apr | 1 | Email to Bernier re citation exam and documents | | | | |
| 1-May | 1 | Status email to client | | | | |
| 10-May | 1 | Email to Bernier seeking to discover client's intentions to produce documents, etc. | | 0.75 | | |
| 11-May | 2 | Email with opposing counsel re MM motion to extend and Conditions | | | | |
| 12-May | 5 | Exchange of emails with opposing counsel re conditions for extension. | | | | |
| 12-May | | Draft Mullins version proposed motion to include that warnings provided to Pelissier re contempt /transfer prohibition | | 0.5 | | |
| 13-May | 2 | Email from Bernier rejecting conditions and filing | | | | |
| 13-May | | Receipt and review of MM Motion to Extend. Dkt 105 | | 0.25 | | |
| 13-May | 6 | Reviewing MM Motion to Extend and exchanging emails with client re next steps | | | | |
| 18-May | 9 | Exchange of emails with opposing counsel and courtroom deputy re whether the motion is opposed and proposed order (5/14-5/18) | | 0.5 | | |
| 18-May | 1 | Extension order entered. Dkt 107 | | | | |
| | | **C. Response to Malibu Media's Motion to Continue** | 2.25 | | | |

| Date | Emails | NOTES | Subtotal | Hours | Related Expense | Cost Item |
|---|---|---|---|---|---|---|
| | | **D.** | | | | |
| 10-Jun | 3 | Exchange of emails with Bernier re "COMPLETED RIDER" compose and send response; and discuss with client | | 0.5 | | |
| 5-Jul | 1 | Email from client requesting update | | | | |
| 6-Jul | 1 | Email to opposing counsel about a call to proceedings | | | | |
| 7-Jul | 1 | Setting up call with opposing counsel | | | | |
| 7-Jul | | Prepare update email for client re MM non-response and client conference to discuss next steps | | 0.75 | | |
| 6-Jul | 1 | Update email to client | | | | |
| 8-Jul | | Prepare for and conduct telephone conference with J Bernier concerning MM's non-response | | 0.5 | | |
| 7-Jul | 5 | Setting up client conference | | | | |
| 8-Jul | 3 | Discussing MM case with Florida lawyer that litigated against MM | | | | |
| 8-Jul | | Prepare for and  conduct telephone conference with J Bernier concerning MM's non-response with follow up detailed email setting out issues | | 1.25 | | |
| 12-Jul | 1 | Bernier email about Wednesday call | | | | |
| 13-Jul | 1 | Response to Bernier | | | | |
| 13-Jul | 1 | Review Bernier's mot to withdraw and phone call with client to discuss next steps, including RTC motion with declaration | | 0.5 | | |
| 14-Jul | 10 | Discussion with Bernier re: withdrawal, discussion with client re: court rules, withdrawal opinions | | | | |
| 15-Jul | 10 | Discussion with Bernier re: withdrawal, discussion with client re: motion review | | | | |
| 16-Jul | 22 | Emails with both client and Bernier re: RTC motion | | | | |
| 16-Jul | | 7/12-7/16 - Researched and drafted declaration for RTC motion, including circulating drafts to client for review | | 3 | | |
| 16-Jul | | 7/12-16, researched and drafted motion for rule to show cause, including circulating drafts to client for review | | 6 | | |
| 16-Jul | | Making final edits and e-filing RTC / declaration | | 0.5 | | |
| | | **D. RULE TO SHOW CAUSE FILED 7/16/21 Dkt 110** | **13** | | | |

| Date | Emails | NOTES | Subtotal | Hours | Related Expense | Cost Item |
|---|---|---|---|---|---|---|
| | | **E.** | | | | |
| 16-Jul | 1 | **E.  Drafted and sent email to J. Bernier and C. Pelissier proposing settlement terms** | **0.25** | **0.25** | | |

| Date | Emails | NOTES | Subtotal | Hours | Related Expense | Cost Item |
|---|---|---|---|---|---|---|
| | | **F.** | | | | |
| 17-Jul | 8 | Exchange emails with client re upcoming hearing on RTC | | | | |
| 17-Jul | | Researching Malibu Media/CP litigation in preparation for 7/23 hearing | | 2 | | |
| 18-Jul | 2 | Email to JB and client re: terms to release client's opposition of JB's withdrawal motion | | 0.25 | | |
| 20-Jul | 1 | Email from source with past CP transcripts | | | | |
| 20-Jul | 3 | Scheduling conference call with client before CP telephone hearing | | | | |
| 21-Jul | 6 | Emails with source re MM assets | | | | |
| 22-Jul | | Prepare, review with client, and submit emergency motion to amend RTC motion | | 6 | | |
| 22-Jul | 8 | Exchange of emails with JB, then with client re: motion review | | | | |
| 22-Jul | | Amended Rule to Show Cause filed  7/22/21, Dkt 112 | | | | |
| 23-Jul | | Prepare for court hearing including client conference | | 0.5 | | |
| 23-Jul | | Attend RTC telephone hearing | | 0.5 | | |
| 23-Jul | 5 | Exchange of emails with client re follow up to RTC, obtaining transcript and costs | | | | |
| 23-Jul | | Cost:  7/23/21 hearing transcript fee | | | | 140.65 |
| | | **F. File Amended Motion for Rule to Show Cause and attend hearing** | **9.25** | | | |

| Date | Emails | NOTES | Subtotal | Hours | Related Expense | Cost Item |
|------|--------|-------|----------|-------|-----------------|-----------|
| | | **G.** | | | | |
| 24-Jul | 2 | Research credit grantor i/c/ X-art.com for service of process, including exchange of emails | | 0.25 | | |
| 26-Jul | 7 | Email exchange with client re strategy, with source re info for TRO and with opposing counsel re info req'd by the court | | | | |
| 27-Jul | 5 | Email with client scheduling conference call and discussing subpoena/strategy | | | | |
| 27-Jul | | Meeting with client to discuss next steps including ARO | | | | |
| 27-Jul | 1 | Subpoena email dispersed | | | | |
| 28-Jul | 10 | JB email to deputy re: clarification, emails with client re: transcripts and JB's email | | | | |
| 29-Jul | 21 | Correspondence with Epoch and Coinpayment; exchange between TPLG, JB, and deputy; email with client re: transcript delay | | | | |
| 30-Jul | 15 | JB clarification emails with JB and deputy, emails with Coinpayment rep, transcript discussion with client | | | | |
| 3-Aug | 1 | Email and call (7/26) and follow-up call on 8/3 with Murphy Rosen to determine if they represent MM as set forth in court | | 0.5 | | |
| 3-Aug | 4 | Emails with Epoch for service of process, emails with client re progress and with re Murphy Rosen | | | | |
| 4-Aug | 8 | Emails with client re: zelle and progress, emails about epoch, emails with JB re: MM | | | | |
| 5-Aug | 4 | JB email re: MM and 8/16, email with source re: records, email from client re: subpoena | | | | |
| 6-Aug | 8 | Discussion with client re: integrated draft, emails with Chief Law Clerk (CLC) re: Dexia and draft | | | | |
| 8-Aug | | Email exchange with client amending fee agreement | | 0.5 | | |
| 8-Aug | 2 | Draft notes from CLC and client | | | | |
| 9-Aug | 5 | Plan and schedule email with client, emails with CLC re: judge, rules research, new draft | | | | |
| 10-Aug | 6 | Emails with CLC re: draft, forms, and citation rules | | | | |
| 11-Aug | | 7/26-8/11 - Researched and drafted declaration for TRO RTC motion, including circulating drafts to client for review | | 4 | | |
| 11-Aug | | 7/26-8/11, researched and drafted TRO motion, including circulating drafts to client for review | | 24 | | |
| 11-Aug | | 7/26-8/11, researched and drafted proposed TRO, including circulating drafts to client for review | | 1 | | |
| 11-Aug | | **Ex Parte Motion for Asset Restraining Order, filed 8/11 Dkt 115 with supporting memo, 2d declaration of counsel and proposed order** | | | | |
| 11-Aug | 16 | CLC emails re: il sup court rule 6, cites, Amata email, and final edits; Amata email; email with client re: final edits and filing | | | | |
| 12-Aug | 18 | Exchanging emails with courtroom deputy about scheduling TRO motion for hearing and with client about hearing | | | | |
| 12-Aug | | Prepare for and attend TRO Hearing | | 1.5 | | |
| 12-Aug | | Revise proposed order re court instructions | | 0.25 | | |
| | | Expense: Law clerk to research law involving supplementary proceedings and edit briefs | | | 200 | |
| | | **G.  Research, prepare, and file Motion for asset restraining order and attend hearing** | 32 | | | |

| | | **H.** | | | | |
|------|--------|-------|----------|-------|-----------------|-----------|
| 13-Aug | 26 | Composing transmittal letters and placing restraining order for service (via  Amata law office services) and emailing restraining order to numerous parties including employees, attorneys, and agents of MM and ZO Digital | | 2 | | |
| 14-Aug | | Cost:  Amata Law Office - sending ARO by regular mail and FedEx | | | | 212.87 |
| 15-Aug | 1 | Email from client | | | | |
| 16-Aug | 28 | Sending and responding to numerous emails from enjoined parties, lawyers, client and other third parties re ARO | | 1 | | |
| 16-Aug | | T/c with Epoch, Adriana Dulic re ARO, document production, revenue stream, etc. | | 1 | | |
| 17-Aug | 18 | Sending and responding to numerous emails from enjoined parties, lawyers, client and other third parties re ARO | | 1 | | |
| 18-Aug | 20 | Sending and responding to numerous emails from enjoined parties, lawyers, client and other third parties re ARO | | 1 | | |
| 19-Aug | 16 | Sending and responding to numerous emails from enjoined parties, lawyers, client and other third parties re ARO | | 1 | | |
| | | **H.  Executed asset restraining order, respond to inquiries, and ascertaining results along with next steps** | 7 | | | |

| Date | Emails | NOTES | Subtotal | Hours | Related Expense | Cost Item |
|------|--------|-------|----------|-------|-----------------|-----------|
| | | **I.** | | | | |
| 20-Aug | | Rec'd telephone call from C Pelissier, discussed necessity of her coming to Chicago on Monday | | 0.5 | | |
| 20-Aug | 15 | Exchange of emails with C. Pelissier re necessity of appearing; with court reporter re time and place for deposition; with courtroom deputy courtroom for exam on 8/23 and from information source | | 0.5 | | |
| 22-Aug | 4 | Email with client re: MM email and plan moving forward | | 0.25 | | |
| 18-Aug | | Arrange for court reporter for 8/23 | | 0.25 | | |
| 22-Aug | | Cost: Copying exhibits for use at examination (part 1) | | | | 52.69 |
| 22-Aug | | Prepare for the debtor examination of Colette Pelissier including preparation of Exhibits | | 2 | | |
| 23-Aug | 23 | MM emails re: avoiding court and Field motions; client emails re: plan, scheduling call, and settlement letter; auto email from court re: field dec | | 1 | | |
| 23-Aug | | Attend court for debtor exam - debtor does not show; court reporter present and made record | | 1 | | |
| | | Cost: LA court reporting attend examination | | | | 203 |
| | | **I. Prepare for and attend the debtor examination of Malibu Media/Colette Pelissier** | **5.25** | | | |

| Date | Emails | NOTES | Subtotal | Hours | Related Expense | Cost Item |
|------|--------|-------|----------|-------|-----------------|-----------|
| | | **J.** | | | | |
| 20-Aug | 1 | **J. Consult with client, compose, and send offer of settlement to MM (3d attempt)** | **0.5** | **0.5** | | |

| Date | Emails | NOTES | Subtotal | Hours | Related Expense | Cost Item |
|------|--------|-------|----------|-------|-----------------|-----------|
| | | **K.** | | | | |
| 24-Aug | 16 | Emails to client discussing 8/23 CP no-show and next steps, efforts to settle; with court to unseal TRO motion and order and Epoch re compliance issues | | 0.5 | | |
| 25-Aug | 12 | Continuing convo/issues with client and continued efforts to get Epoch to comply with ARO/reporting | | 0.5 | | |
| 26-Aug | | Telephone call with counsel for Epoch re compliance with document production and reporting | | 0.5 | | |
| 26-Aug | 6 | Emails with client re: reading response and smoking gun involving CP emails to clerk | | | | |
| 27-Aug | 10 | Email from CLC with DEC edits, email from client re: DEC edits and bill | | | | |
| 27-Aug | | Prepare and submit response to motion to vacate ARO and third declaration of counsel | | 8.5 | | |
| | | Expense: services of Clerk to research, edit motions, briefs and declarations (and nothing else) | | | 250 | |
| | | **Mullins Response to ZO Digital Motion to Vacate filed 8/27/21 with 3d declaration of counsel** | **10** | | | |

| Date | Emails | NOTES | Subtotal | Hours | Related Expense | Cost Item |
|------|--------|-------|----------|-------|-----------------|-----------|
| | | **L.** | | | | |
| 28-Aug | 4 | Emails with client and with EPOCH re representation i/c/w documents produced | | | | |
| 30-Aug | 15 | Email with client re billing and re receipt of Epoch docs | | | | |
| 31-Aug | 10 | Email update with client, email with Epoch re: missing docs | | | | |
| 1-Sep | 5 | Missing docs and notice of default emails with Epoch | | 1 | | |
| 1-Sep | | Drafting and sending notice of default | | 0.25 | | |
| 2-Sep | 2 | Emails from Epoch with missing docs | | | | |
| 9-Sep | 2 | Update email with client, acknowledgment of doc receipt to Epoch | | | | |
| 10-Sep | 7 | Editing notices with CLC, sending notices to Epoch and ZO | | | | |
| 10-Sep | | Drafting and sending to epoch and zo digital notices of default | | 0.25 | | |
| 11-Sep | 1 | Plan email from Client | | | | |
| 13-Sep | 8 | Client email re: submitting future motions, Epoch emails re: post-notice steps and ZO info | | | | |
| 14-Sep | 2 | Notice of default sent to Epoch | | | | |
| 14-Sep | | Drafting notice to epoch, 9/14 phone call with epoch | | 0.25 | | |
| 15-Sep | 6 | CLC ZO documents and research re: *Chicago River* , Epoch emails scheduling call and continuing discussion from previous call | | | | |
| | | Expense:  law clerk, legal research and editing time total 3 hours times $25/hour. | | | 75 | |
| 16-Sep | 22 | Emails with client concerning Epoch "settlement" and with CLC re legal research on fee/penalty liability | | 1 | | |
| 16-Sep | | Call with client re Epoch "settlement" | | 0.25 | | |
| 16-Sep | | Call with epoch's counsel M McGuiness | | 0.25 | | |
| 17-Sep | 38 | Email with client re: Escrow Offer, drafting response and edits to response, sending response to Epoch | | | | |
| 17-Sep | | Call with client re Epoch "settlement" | | 0.25 | | |
| 17-Sep | | Drafting and sending response to epoch i/c/w proposing terms of an escrow | | 0.5 | | |
| 17-Sep | | Two calls with Epoch/McGuiness re escrow | | 1 | | |
| 20-Sep | 12 | Epoch emails rejecting offer and giving cure time, update to client, transcript emails | | 0.25 | | |
| 21-Sep | 2 | Spreadsheet emails with Epoch | | | | |
| 22-Sep | 5 | Update email with client and email with Epoch re: outstanding documents | | | | |
| 24-Sep | 1 | Status report with client and Omnibus Motion Draft | | | | |
| 27-Sep | 5 | Draft notes emails with client | | | | |
| 28-Sep | 16 | Motion sent to MM, updates with client and Epoch, Final edits and e-filing of Omnibus Draft Motion | | | | |
| 28-Sep | | Preparing, editing, and filing Omnibus Motion | | 8 | | |
| | | **Mullins Omnibus Motion for relief filed 9/28/21 with proposed order.** | | | | |
| 29-Sep | 8 | 10.8 hearing emails with court, emails re: motion form | | | | |
| 30-Sep | 8 | Sending notice of motion to Epoch and MM, emails with Amata re: hard copies, certificate of notice | | | | |
| 30-Sep | | Preparing, drafting, and sending notice of motion | | 0.25 | | |
| 1-Oct | 3 | Emails with epoch re: spreadsheet update and voicemail | | | | |
| 3-Oct | 1 | Email with Epoch re: COO call | | | | |
| 4-Oct | 3 | Update and chronology email with client | | | | |
| 4-Sep | | Call with Epoch's COO | | 0.5 | | |
| 5-Oct | 22 | Emails with court and new Epoch rep re: rescheduling 10/8 hearing, email updates with client | | | | |
| 5-Sep | | Tel call from Dan Hefter, new Epoch atty | | 0.25 | | |
| 6-Oct | 2 | Emails with Epoch | | | | |
| 7-Oct | 20 | Emails with Epoch re: Omnibus Motions amendments, submission of updated motion to court, updates with client re: amount and chronology | | | | |
| 7-Oct | | Amending Order on Omnibus Motion with Epoch's representative | | 0.5 | | |
| 7-Oct | | Attend Omnibus Motion hearing with Epoch and Judge Durkin | | 0.25 | | |
| 8-Oct | 11 | Emails with court re: attending hearing and amending omnibus motion per Judge instruction, transcript emails with client | | | | |
| 8-Oct | | Prepare and attend scheduled hearing on Omnibus Motion | | 0.5 | | |
| 8-Oct | | Amending and submitting revised order on omnibus motion | | 1 | | |
| | | Cost: 10.7 and 10.8 hearing transcripts | | | | 135.8 |
| | | **L.  Researched, prepared, and filed Mullins' Omnibus Motion, attended hearings, obtained turnover order for $35,000** | 16.5 | | | |

| Date | Emails | NOTES | Subtotal | Hours | Related Expense | Cost Item |
|------|--------|-------|----------|-------|-----------------|-----------|
| | | **M.** | | | | |
| 9-Oct | 1 | Prepare subpoena and email TO WELLS FARGO i/c/w ZO Digital account | | 1 | | |
| 12-Oct | 8 | Email from court with order, emails with Epoch re: order and payment, emails to MM and ZO with order | | | | |
| 13-Oct | 10 | Receipt of Epoch check, confirmation of receipt, update emails with client, emails with Curt re: CP Instagram and MM name change to Malibu Media Holdings | | 0.25 | | |
| 14-Oct | 10 | Emails with Epoch and Brigham re: Mastercard, emails with bank re: trust fund, weekly ZO report from Epoch | | | | |
| 15-Oct | 5 | Emails with Bank re: trust, update with client | | | | |
| 16-Oct | 5 | Emails about transcript and payment | | | | |
| 17-Oct | 5 | Receipt of new transcript, email from Brigham re: interrogatories | | | | |
| 18-Oct | 7 | Update email with 1-day lawyer, emails with 1-day lawyer and Brigham | | 0.25 | | |
| 18-Oct | | Call with 1-day lawyer for ZO Digital | | 0.25 | | |
| | | Expense: FedEx (Epoch check) | | | 89.52 | |
| 17-Oct | | Research and prepare for status incl research on PJA order | | 0.5 | | |
| 18-Oct | | Attend status hearing on 10/12 order compliance | | 1 | | |
| | | **M.  Researched, prepared for and attended status hearing on compliance with 10/12/21 turnover order** | 3.25 | | | |

| Date | Emails | NOTES | Subtotal | Hours | Related Expense | Cost Item |
|------|--------|-------|----------|-------|-----------------|-----------|
| | | **N.** | | | | |
| | | **N. Settlement try 4** | | | | |
| 20-Oct | | **N. Consulted with client, drafted and sent email to B. Field and C. Pelissier proposing settlement terms** | 1 | 1 | | |

| Date | Emails | NOTES | Subtotal | Hours | Related Expense | Cost Item |
|------|--------|-------|----------|-------|-----------------|-----------|
| | | **O.** | | | | |
| 19-Oct | 2 | Email with Epoch and Amata re: FedEx | | | | |
| 20-Oct | 2 | Email from Amata re: FedEx, email to MM and ZO re: their intent toward omnibus motion | | | | |
| 21-Oct | 12 | Emails re: FedEx payment, latest numbers, coordinating phone calls, potential MM attorneys | | | | |
| 21-Oct | | Telephone call with potential MM attorneys | | 0.5 | | |
| 21-Oct | | Call with Epoch | | 0.25 | | |
| 22-Oct | 10 | Email with court and MM/ZO re: Brigham declaration, summary of report, emails from ZO with "offers" | | | | |
| 22-Oct | | Attend status hearing via telephone | | 1 | | |
| 23-Oct | 3 | Emails re: transcript, response to MM/ZO claim of offers | | | | |
| 23-Oct | | E-mail court re corrected briefing schedule | | 0.25 | | |
| 24-Oct | | Research , prepare, and file motion for prejudgment attachment (10/24-25) | | 4 | | |
| 24-Oct | 2 | Emails with CLC re: prejudgment attachment edits | | | | |
| 25-Oct | 7 | Emails with CLC and client with more draft edits and finalization, email to court submitting proposed prejudgment attachment order | | | | |
| 26-Oct | 15 | Email from Brigham asking amount needed to pay, emails with client planning and drafting a response | | | | |
| 27-Oct | 14 | Emails with client planning response to MM/ZO re: settlement, sending settlement offer to MM/ZO | | | | |
| 28-Oct | 2 | Email to epoch re: weekly ZO report, email to client re: current bill status | | | | |
| | | **O. Research, prepare and file motion for pre-judgment attachment order** | 6 | | | |

| Date | Emails | NOTES | Subtotal | Hours | Related Expense | Cost Item |
|------|--------|-------|----------|-------|-----------------|-----------|
| | | **P.** | | | | |
| 28-Oct | | Attorney time spent preparing bill (10/27- 10/28) | | 4 | | |
| | | Expense: Clerk time assisting in assembling time and other data | | | 250 | |
| | | **P. Bill preparation** | 4 | | | |

| Date | Emails | NOTES | Subtotal | Hours | Related Expense | Cost Item |
|------|--------|-------|----------|-------|-----------------|-----------|
| | | **Q.** | | | | |
| 28-Oct | | Attorney time preparing and filing motion to amend judgment and fee application (10/29 - 11/4) | | 2 | | |
| | | Expense: Clerk time assisting in legal research, editing brief and filing motion and fee application. | | | 125 | |
| | | **Q. Motion to amend judgment, fee application** | 2 | | | |

| | | NOTES | Subtotal | Hours | Related Expense | Cost Item |
|------|------|-------|----------|-------|-----------------|-----------|
| | | **GRAND TOTALS** | | | | |
| | 929 | | 117.25 | 117.25 | 989.52 | 764.9 |