UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| | ) |
| Plaintiff-Judgment Debtor/ | ) |
| Citation Respondent, | ) |
| | ) |
| v. | ) |
| | ) No. 18 C 6447 |
| WILLIAM MULLINS, | ) |
| | ) Judge Thomas M. Durkin |
| Defendant-Judgment Creditor, | ) |
| and | ) |
| | ) |
| COLETTE PELISSIER, | ) |
| | ) |
| Third-party representative of | ) |
| the corporate citation respondent. | ) |

**MULLINS' SECOND OMNIBUS MOTION FOR**
**AN AMENDED JUDGMENT ORDER AND OTHER RELIEF**

Judgment creditor, William Mullins, through the Peacock Law Group, pursuant to Fed. R. Civ. P. 69 (incorporating 735 Ill. Comp. Stat. Ann. 5/2-1402(f)(1) and Ill. S. Ct. R. 277(h)), moves the court for an amended judgment order for compensatory civil contempt penalties of $83,439.56 and to fix the judgment liability as joint and several against Malibu Media, Colette Pelissier, *and* Zo Digital LLC; and for the approval of certain costs. In support of his motion, Mullins states:

## BACKGROUND COMMON TO ALL REQUESTS

1. Mr. Mullins wishes to express his appreciation to the court for its assistance in issuing its several injunctive orders: Dkt. 113 (Order for Rule to Show Cause Directed to Colette Pelissier); Dkt. 117 (Asset Restraining Order); Dkt. 133 (Order on Omnibus Motion for Turnover Order, etc.); and Dkt. 140 (Order on Motion for Prejudgment Attachment). He is confident that by no later than November 22, 2021, the next scheduled status in this case, the orders the court entered will have produced funds remitted or restrained by Epoch equaling the *original* judgment amount interest, and costs.

2. Mr. Mullins is now relieved of his financial liability for the services of his lawyers that defended Mullins in what, by the court's previous award of prevailing party fees (Dkt. 99), must be considered a ***meritless*** lawsuit brought by Malibu Media against Mullins. Mullins shouldered that financial and emotional burden of the unpaid fees for over three years. The captioned suit was filed in September 2018, and the court entered the "prevailing party" judgment twenty-nine months later, in February 2021. Dkt. 101. The satisfaction of that original Malibu Media judgment for attorney's fees will occur no sooner than thirty-eight months since Malibu Media sued William Mullins.

3. Although Mullins is relieved of that original liability for fees, Malibu Media "taxed" Mullins' fee award by hindering and delaying these proceedings, causing Mullins to incur liability for even *more* attorney's fees. For Mullins, the

supplementary proceedings to enforce the court's judgment has been "one step forward and two steps back."

4. Malibu Media could not be bothered to even cooperate in the supplementary proceedings, never once assisting in the production of documents, never responding to countless emails and offers to settle, and not assisting in getting assets obviously belonging to Malibu Media turned over to Mullins once the restraining order was entered.

5. Mullins will not repeat the litany of Malibu Media's obstructions, dodges, and defaults. The court need only to look at the last hearing. Dkt 138, 10/22/21 Hrg. Trans. Despite being barred from objection (Dkt 133 at ¶¶ 12 and 19), the court graciously allowed Pelissier and Field to speak. Their comments were each dilatory, addressing not a single error or omission in the court's orders. More to the point, neither addressed the court's clear finding that the X-Art.com Proceeds belonged to Malibu Media. Instead, Pelissier and Field continued to assert, without evidence, that the proceeds belong to Zo Digital. Worse yet, neither Pelissier nor Field so much as mentioned Mullins or apologized for their contemptuous behavior, which the court already found injured Mullins. Dkt. 133, October 21, 2021 Order on Omnibus Motion.

6. At the October 22, 2021, hearing the only thing Pelissier and Field discussed was "our business" and the burden the restraining order—operating no differently than the restraining provision of the citation served in April 2021—was

3

having on their business. No concern or acknowledgement for Mullins' losses was ever expressed by them individually or collectively.

### *Malibu Media's liability for compensatory civil contempt penalties*

7. "[A] court may award attorneys' fees as part of the penalty under §5/2-1402(f)(1))."[1] *W. Bend Mut. Ins. Co. v. Belmont State Corp.*, 712 F.3d 1030, 1035 (7th Cir. 2013) (*citing Mid-American Elevator Co. v. Norcon, Inc.*, 287 Ill. App. 3d 582, 591, 679 N.E.2d 387, 223 Ill. Dec. 202 (1996)). *Id*. That is to say one basis for the assessment of compensatory civil contempt penalties is any damage flowing from a party's failure to restrain assets otherwise subject to the citation to discover assets and encumbered by the court's judgment lien. *City of Chi. v. Air Auto Leasing Co.*, 697 N.E.2d 788, 792 (Ill. App. 1998) (ordering trial court "to hold respondent liable for the amount he transferred out of defendants' checking accounts after the City had established its judgment lien on defendants' property").

8. Pelissier and Malibu Media violated the restraining provision of the Malibu Media citation seventeen times. After the citation was served, Pelissier allowed Epoch.com, LLC, the company processing X-Art.com's credit card receipts

---

[1] In relevant part 2-1401(f)(1) provides:

The court may punish any party who violates the restraining provision of a citation as and for a contempt, or if the party is a third party may enter judgment against him or her in the amount of the unpaid portion of the judgment and costs allowable under this Section, or in the amount of the value of the property transferred, whichever is lesser.

735 Ill. Comp. Stat. Ann. 5/2-1402(f)(1).

4

("X-Art.com Proceeds"[2]) to transfer to her husband's company, ZO Digital, LLC all the net revenue that website generated. Epoch's books and records indicate that between February 17, 2021, when this court entered its judgment, and August 14, 2021, when it was served with the restraining order, Epoch paid ZO Digital a total of $125,397.07 (net of fees and charges) from the X-Art.com Proceeds. Dkt 125 at ¶ 13. Moreover, from the time Mullins served Malibu Media with a citation to discover assets—April 20, 2021—and a judgment lien arose as a matter of law on all Malibu Media assets, Epoch paid ZO Digital **$83,210.64** (which is a subset of the previously stated $125,397.07 and which Epoch paid out seventeen payments made from 4/22/21 through 8/12/21). *Id.*; Dkt 133, Order on First Omnibus Motion at pp. 5-6.

9. Mullins has demonstrated that Malibu Media and Pelissier violated section 2-1402(f)(1)'s transfer prohibition seventeen times, and he has done so by clear and convincing evidence, thus satisfying that liability threshold for compensatory civil contempt penalties. *Goluba v. School Dist. of Ripon*, 45 F.3d 1035, 1037 (7th Cir. 1995) (civil contempt must be proven by clear and convincing evidence). *See also Chi. Reg'l Council of Carpenters Pension Fund v. Van Der Laan (In re Van Der Laan*, 556 B.R. 366, 379 (Bankr. N.D. Ill. 2016) ("each transfer of Company funds in violation of the Citation constituted an injury—and liability could be imposed for each in the form of a judgment for amounts transferred").

---

[2] "X-Art Proceeds" is a term under the court's asset restraining order defined as "the proceeds of X-Art.com's website's commercial activity." Dkt. 117 at ¶ 5.

10. When confronted with the alleged transfer violations, Pelissier, on behalf of Malibu Media, and Field, on behalf of ZO Digital, did not deny the transfers, but attempted unsuccessfully to explain them away. Dkt 133, Order on First Omnibus Motion at ¶¶ 1-4 (declaring as a matter of law that X-Art.com Proceeds are Malibu Media's property).

11. Finally, this court found that "ZO Digital received, post-citation, $83,210.64 in funds encumbered by Mullins' judgment lien and to which Mullins had and has a superior interest." *Id*. at pp. 5-6.

### *Malibu Media's transfer violations caused Mullins losses of $83,439.56*

12. Throughout these proceedings, counsel for Mullins warned Malibu Media and Pelissier repeatedly about *no*t violating the transfer prohibition and on four different instances throughout these proceedings Mullins gave Malibu Media an opportunity to settle, which simply goes to show that Pelissier and Malibu Media had numerous opportunities to purge their contempt but did not, qualifying the offense for damages. *FTC v. Trudeau*, 579 F.3d 754, 770 (7th Cir. 2009) (to be genuinely civil and compensatory, contemnor must have had the opportunity to purge the contempt for such a "sanction to stand").

13. Obviously, when Pelissier and Malibu Media failed to restrain assets (Dkt 133, Order ¶ 16), and then hid those assets from Mullins by not producing documents relevant to the processing and disposition of X-Art.com Proceeds ((*id*. at ¶ 15), both violations compelled Mullins and Mullins' counsel to move for and obtain not one but four injunctive orders. *Supra* ¶ 1.

14. Mullins incurring liability for the attorney fees set forth in Requests One and Two below was the *direct* result of Malibu Media and Pelissier's seventeen violations of the citation to discover asset's transfer prohibition totaling over $83,000. Had the funds been restrained pursuant to law, Mullins' original judgment would have been satisfied months ago, and it would have been satisfied without the extraordinary efforts of the attorneys for Mullins. *In re Van Der Laan*, 556 B.R. 366, 380 (each transfer constitutes a "continuing injury to the legal rights" of the judgment creditor).

### *Malibu Media is also liable for fees under the Copyright Act*.

15. The court previously awarded Mullins prevailing party costs under the Copyright Act. Dkt. 99 (relying upon 17 U.S.C. § 505).

16. As an extension of the law and logic of court's memorandum opinion, it makes sense to award Mullins fees for post-judgment fees.

17. No Seventh Circuit practice can be detected, but in the Ninth Circuit, the award of post-judgment fees appears common. *WB Music Corp. v. Royce Int'l Broad. Corp.*, 2020 U.S. Dist. LEXIS 247679, at *6 (C.D. Cal. Nov. 20, 2020) ("because Section 505 does not bar post-judgment fees, other Ninth Circuit district courts have awarded post-judgment costs and fees in copyright actions") (citing cases).

18. It is logical to include the legal "costs of collection" of a prevailing party for to do otherwise undermines the prevailing party's judgment and the district court's authority to enter dispositive rulings. Malibu Media and Pelissier's actions in this case provide a vivid demonstration of why such a rule is necessary. Not awarding

a prevailing Copyright Act party costs of collection in post-judgment proceedings incentivizes bad behavior and unnecessarily taxes the prevailing party with unnecessary costs and subjects the prevailing party to extortion. *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 626 (7th Cir. 2013) (without prospect of fee award, prevailing defendants are forced into "nuisance settlement" or deterred from exercising rights). Such a calculus does not change before or after judgment.

19. Consequently, the award of fees in this case is merited from both a substantive standpoint (Copyright Act) and from a procedural standpoint (Rule 69 and supplementary procedures governed by contempt jurisprudence).

## REQUESTS AND DISCUSSION

**Request One — To amend the judgment to award attorney's fees**

20. Along with this motion to amend the judgment, movant also filed a Motion to Approve Attorney's Fees and Expenses for The Peacock Law Group (the "Firm"). Dkt. 141. That motion requests the reimbursement to the Firm of fees and related expenses in the total amount of $59,664.52.

21. In each part of that fee request, Mullins demonstrated that the work the Firm performed, and the services it provided were necessary under the adverse circumstances created by Pelissier and Malibu Media's contempt.

22. Mullins requests that according to the court's ruling on the companion Motion to Approve Attorney's Fees and Expenses, the court enter judgment for Mullins in that same amount "for the use and benefit of The Peacock Law Group."

**Request Two — To amend the judgment to award Mullins additional fees**

23. Mullins' prior counsel—Lisa Clay, Susan Malter, and Curt Edmondson—assisted undersigned counsel throughout these supplementary proceedings. The recovery of these fees will ultimately benefit those attorney by their contract with Mullins, and they had significant history and case background to assist the Firm.

24. When the original fee application was made, those three attorneys voluntarily discounted their fees, as a show of good faith, by $13,853. Dkt. 91, Fee Petition at 14. Thereafter, the court ruled that Mullins could not recover for work, otherwise unobjectionable, performed after November 19, 2019, and that caused Mullins to reduce his fee request by $22,772.90, from $69,008.35 (*id.*) to the ordered amount of $46,235.45. Dkt 104.

25. Prior counsels' earned-but-uncompensated fees serve as substitute for the losses of their time assisting the undersigned in preparing numerous court papers, discussing goals and strategy, and providing case facts and history. Moreover, there ought to be compensation for the uncertainty and anxiety Malibu Media caused Mullins as to the payment of a just debt as well as the lost opportunity costs that Mullins' prior counsel endured by having to pay unnecessary, time, attention, and energy to Pelissier and Malibu Media's shenanigans that caused nine months of added litigation.

26. Mullins requests that the court restore the lost fees of $22,772.90 plus prejudgment interest of $1,002.14 for a total penalty of $23,775.04, and that the court

9

enter judgment for Mullins in the amount of $23,775.04 "for the use and benefit of Lisa Clay, Susan Malter, and Curt Edmondson."

**Request Three — To reduce to judgment to a total penalty of $83,439.56**

27. Mullins requests a combined final civil penalty of $83,439.56 the sum of request one and two, and that civil penalty be reduced to an enforceable judgment against Malibu Media and Colette Pelissier and payable from the restrained Epoch stream of payments and any other non-exempt assets of the judgment debtors once the original judgment is satisfied.

28. The $83,439.56 sum is equivalent to and therefore within the scope of losses defined by the 17 violative transfers totaling $83,210.64.

29. On its face, Mullins penalty request is therefore reasonable and substantiated by the actual losses of the Firm and by Mullins' prior counsel.

**Request Four — To approve Mullins' Bill of Costs**

30. Mullins submitted a bill of costs. Dkt 137. However, the rules governing litigation costs do not on their face allow for the ministerial approval by the Clerk's Office. Rule 69, incorporating 735 Ill. Comp. Stat. Ann. 5/2-1402(h) and Illinois Supreme Court Rule 277(i), provide for the award of costs.

31. In his submitted bill of costs, Mullins seeks reimbursement of ordinary costs of serving the citation and asset restraining orders ($232.76), hearing transcripts ($479.45), and copying exhibits ($52.69), totaling $764.90.

32. Mullins requests that the court approve the costs or direct the Clerk's Office to review and approve those costs.

**Request Five — To hold ZO Digital, LLC jointly and severally liable**

33. Mullins requests that the court hold ZO Digital jointly and severally liable for any judgment the court enters against Malibu Media and Colette Pelissier for any amount up through and including the amount the court found that "ZO Digital received, post-citation, $83,210.64, funds encumbered by Mullins' judgment lien and to which Mullins had and has a superior interest." Dkt 133, Order on Omnibus Motion at pp. 5-6.

34. The court already ordered a conditional judgment be entered against ZO Digital in the amount of $51,333, the outstanding amount of the original judgment at the time of the order, as a statutory sanction for defaulting on its response to the asset restraining order's requirement to produce documents and a sworn answer but gave ZO Digital an opportunity to purge the default. *Id.* at ¶ 14. Zo Digital emailed a response to the court and counsel, but the response was deficient in not producing all documents requested (claiming a "privacy" exception to production of corporate records) and failed to identify X-Art.com Proceeds in a certain Wells Fargo account. *Id.*

35. Because Zo Digital has not remedied the violations that led to the conditional judgment, the court is allowed to make "the conditional order final." *Anthony Marano Co. v. A. Stallone, Inc.*, 2002 U.S. Dist. LEXIS 24656, at *19 (N.D. Ill. Dec. 23, 2002).

36. The conditional judgment should be made final in the amount of the amended judgment against Malibu Media and Colette Pelissier.

37. The final judgment is warranted against ZO Digital not only for the procedural defaults the court has already found and allowed ZO Digital to remedy, but substantively, ZO Digital received $83,210.64 rightfully belonging to Mullins. Entering judgment against ZO Digital is thus warranted by the law and equity.

WHEREFORE, for the reasons set forth above, the judgment creditor requests that the court grant the specified relief in each of the five parts.

                Respectfully submitted,

                THE PEACOCK LAW GROUP

                By: s/ Joseph A. Stewart
                    JOSEPH A. STEWART
                    Principal Attorney
                    161 North Clark Street, Suite 1600
                    Chicago, Illinois 60601
                    (312) 741-1070
                    joseph.stewart@thepeacocklawgroup.com